IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST
VIRGINIA

IN RE:   LEVINE, DAVID ANDREW
         LEVINE, MONICA LARSON        BK. NO. 3:19-bk-1048

Thomas H. Fluharty, Trustee of
   the Bankruptcy Estate of David Levine and
   Monica Levine,

         Plaintiff,

Martin P. Sheehan, Trustee of
   the Bankruptcy Estate of Geostellar, Inc.,

         Co-Plaintiff,

         v.                           AP No. 3:21-ap-00019

Philadelphia Indemnity Insurance
Company and David A. Levine,

         Defendants.

**PLAINTIFF TRUSTEES' REPLY TO PHILADELPHIA INDEMNITY INSURANCE COMPANY'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR A BRIEFING SCHEDULE**

Philadelphia Indemnity Insurance Company (PIIC) filed a Preliminary Response to the Motion for a Preliminary Injunction ("Prelim. Resp.")(ECF No.11), then a more final "Response" (ECF No. 15), PIIC's Response to Motion for Preliminary Injunction and Request for a Briefing Schedule. Since they raise many of the same arguments, Trustees respond to both ECF No. 11 and ECF No. 15.

{00188514.1}

TRUSTEES REMAIN LIKELY TO PREVAIL ON THE MERITS

No one disputes that Debtor Geostellar purchased from PIIC an "eroding" limits policy. ECF No. 11, pp. 12, 13. Defendants argued (through Counsel Varner) at the first telephonic hearing that Levine, rather than Geostellar, is the "first-party" claimant under the policy, as opposed to Geostellar, which has advanced the well accepted law principle that a bankruptcy estate consists of all assets of the bankrupt estate, pursuant to 11 U.S.C. § 541(a). *See also* below at 7, discussing *Allied Digital.*

In any event, the argument of PIIC is of no account where Trustee Fluharty, on behalf of the Levine Estate, and Trustee Sheehan, on behalf of the Geostellar Estate, jointly seek the instant injunction — if Trustee Sheehan lacks standing (which he disputes) for Geostellar, with respect to the PIIC D & O policy, Trustee Fluharty does not, on behalf of the Bankruptcy Estate of Levine. Consistent with that authority, Trustee Fluharty has joined in this Declaratory Judgment Claim because both Trustees assert, correctly, that it is Trustee Fluharty, not Levine personally, who has the dominion over the bankrupt estate, including the relevant insurance policy and the right to consent to settlement. For that reason, Defendants' arguments as to who is the "first-party" claimant are without merit, although Trustees will take up their specific arguments in that respect in this reply. Suffice it to say that whether or not both Trustees stand in the place of "first-party" claimants, one of them will surely retain the rights to a bad faith claim against the insurance carrier to the extent that its whole exercise in resisting Trustee Fluharty's right to "provide consent," rather than Levine personally, is, Trustees believe, evidence of bad faith in

collusion with "Levine" to prevent a fair and reasonable settlement of this claim; or otherwise in bad faith.[1]

With respect to the aforementioned *Allied* case, which appears to be the case chiefly relied upon by Defendants in opposition to the Court's granting of the injunction, it is not on point. *Allied* does not involve an attempt to get an injunction on the issue of "consent." It stands only for the proposition that a Trustee cannot get an order from the Bankruptcy court to stop a D&O carrier from paying the defense costs in an "eroding," or "wasting" policy. Plaintiffs herein are not seeking any injunction to stop PIIC from paying Levine's defense costs under the policy. In fact, Trustee Sheehan has signed an agreed order approving just that. (ECF No. 186, No. 3:18-bk-00045). The *Allied* case is as inapposite to the issues presented in this injunction proceeding as the *Baird* case is on point. Defendants have failed to show how *Baird* is not presently the latest and best pronouncement of the law governing the parties' present injunction request.

As Trustees have argued, this unresolved issue presents irreparable harm to the Trustees in attempting to fulfill their duty of marshalling the assets of the estate. Pursuant to 11 U.S.C. § 704(a)(1), a Chapter 7 Trustee is to collect and reduce to money property of the Bankruptcy Estate as expeditiously as possible. In *In re: Hutchinson*, 5 F.3d 750 (4th Cir. 1993) the Court of Appeals for the Fourth Circuit identified doing so promptly was among the most important duties of a Chapter 7 Trustee. Prompt resolution of issues pertaining to insurance policies would aid the ability of both of the Chapter 7 Trustees to perform their statutory functions. The position of PIIC is an interference with Trustee Fluharty and his control over assets of that estate.

---

[1] It strikes Plaintiffs as odd that Defendant Levine is objecting to Trustee Sheehan's Motion for Leave to file an Amended Complaint in the underlying adversary pleading, which largely removes allegations of intentional wrongful conduct on the part of Levine, upon which PIIC has relied to argue that Levine's conduct is not "covered" by the policy.

An agreed order was tendered to the Court to resolve the objection of the Geostellar Trustee. (Docket Entry 186). That proposed order indicated that the Geostellar Trustee would withdraw his objection in return for an agreement to promptly mediate the underlying dispute in AP 3:19-AP-0024. That has been stymied by the current position of PIIC.

The interposition of what the Trustee's perceive to be an unwarranted position regarding ownership of the right to consent is interfering with mediation. In the last few weeks, the United States Supreme Court held in *Alabama Association of Realtors v. Department of Health and Human Services,* Case No. 21A23, August 26, 2021, that the Realtor Associations and Property Managers in Alabama and Georgia were entitled to an injunction against a moratorium issued by the Center for Disease Control free of a stay. The Court noted that the harm to landlords was increasing. A harm dependent, not on the collection of rent, but dependent on the inability to evict persons who had not paid rent. Slip at 7. The Court specifically held the interests were "not merely financial." Slip opinion at 6.

The Geostellar Trustee had obtained a promise from the Insurer to "promptly mediate." PIIC does not have to agree to settle or pay, but it needs to mediate. It needs to do so in good faith. W.Va. Code § 33-4-(9). Asserting that David Levine and not the Levine Trustee controls the right to consent, is the equivalent of not mediating. It is the assertion of what the Geostellar Trustee would view as an unwarranted impediment, particularly in light of *Olah.*

PIIC has admitted that the only case directly addressing this issue is *Olah v. Baird (In re Baird)*, 567 F.3d 1207 (10th Cir. 2009)[2]. It squarely holds that the right to approve a settlement under an insurance policy is an asset of the Bankruptcy Estate pursuant to 11 U.S.C. § 541 and

---

[2] While the opinion was written by Judge McConnell, the panel included now-Justice Gorsuch.

passes to the Bankruptcy Estate of the Debtor. As such it may only be administered by the Trustee, as the business judgment of the Trustee dictates.

PIIC seems to believe that *Baird/Olah* is an anomaly. ECF No. 15, p. 12, 15, 20, 21. *The Restatement* puts *Baird* in context, noting that its holding on assignment represents the majority rule, not followed by but a few jurisdictions.

> For those jurisdictions following the majority rule and permitting post-loss assignment of payment for a specific claim, see **Ohio v. Baird, 567 F.3d 1207, 1214 (10th Cir. 2009)** (applying Utah law) (finding that an anti-assignment clause is no longer enforceable once the event giving rise to the claim has occurred); Colo. Cas. Ins. Co. v. Safety Control Co., 230 Ariz. 560, 565–566 (Ariz. Ct. App. 2012); Glenn v. Fleming, 247 Kan. 296 (Kan. 1990) ("[A]n insured's breach of contract claim for bad faith or negligent refusal to settle may be assigned."); Wehr Constructors Inc. v. Assur. Co of Am., 384 S.W.3d 680, 683 (Ky. 2012) (stating that once the loss has occurred, the chose in action can be assigned, notwithstanding the existence of an anti-assignment clause, as such a clause would be void as against public policy); Egger v. Gulf Insurance Co., 903 A.2d 1219, 1229 (Pa. 2006) (holding that "whether or not the assignment was made prior to the jury verdict is irrelevant, as the obligation … arose on the date of the occurrence…."); In re Ambassador Ins. Co., 965 A.2d 486, 490–491 (Vt. 2008) (holding that the post-loss assignment of a claim is permissible regardless of an anti-assignment clause because once the event triggering the claim occurs, the risk to the insurer does not change).

Restatement of the Law of Liability Insurance § 37 PFD No. 1 (2017)(emphasis added). But assignment is not the relevant idea. The Bankruptcy Code provides in 11 U.S.C. 541 that a bankruptcy estate "consists" of what the Debtor had at filing. That occurs by operation of law and without transformation of those rights. *Peet v. Checkett (In re: Peet)* 819 F.3d 1067 (2016).

The authoritative *Couch on Insurance 3D* states in confirmation to *Baird*, that "Bankruptcy is significant to the assignment of insurance contracts in several respects, most prominently: (1) possibly operating as an assignment by operation of law to make an involuntary transfer of the insured's policy to his or her trustee in bankruptcy," 35:23 *citing Jennings v. Prudential Ins. Co.* 402 So.2d 1367 (Fl. Dist. Ct. App., 1981). *See also Section 35:25*, that "[t]he trustee in bankruptcy

is entitled to any rights which have accrued under the policy to the insured…." Section 35.26 (Disability policy).

PIIC argues that the policy in this case has not been assigned to the Levine Trustee, because "it is not and never will be the personal property of Levine, and will never be used to satisfy any of his personal debts" (ECF No. 11, pp. 13-14). This is an argument foreclosed by the broad language of Section 541. *See e.g. Peet.* However, given Levine's lack of consent, and PIIC's concurrence, together they have brought Trustee's underlying Adversary Proceeding to a halt, and have allowed continued unnecessary defense fees and costs to "erode" the limits of the policy.

PIIC further suggests that the policy is not part of the Levine estate. "Mr. Levine's coverage under the Policy, confined to his conduct and liability as an Individual Insured, does not create a pool of funds for his personal creditors, and its availability or lack of availability will have no impact upon the assets that are part of his personal estate." ECF No. 15, p. 15.

If the consent rights are property of the Bankruptcy Estate of Levine, as *Baird* suggests, the Levine Trustee has those rights. The rights are not shared with Mr. Levine. The consent rights are actually of no economic value to Mr. Levine although those rights may be valuable to the Levine Bankruptcy Estate.

Mr. Levine has a discharge. He can no longer be held personally financially accountable for a judgment rendered against him in the Adversary Proceeding brought by the Geostellar Trustee.

The Adversary Proceeding continues to vindicate the rights of the Geostellar Trustee under *Anderson v. Robinson*, 186 W.Va. 92, 411 S.E.2d 35 (1991). There the West Virginia Supreme Court held that the bankruptcy of a tortfeasor did not create a windfall for an insurance company.

Consistent with the policy, the limits of the policy would remain available to a Plaintiff/Tort Victim.

It is not Mr. Levine who is at risk, it is PIIC. PIIC may defend on the grounds Mr. Levine did not commit a tort, and on the grounds that if he did commit a tort, it is not tort for which policy provides coverage.

Recognizing that the Levine Trustee controls the consent rights is of economic value to the Levine Estate. The Geostellar Trustee has done more than sue Mr. Levine, the Geostellar Trustee has also filed a proof of claim against the Levine Bankruptcy Estate.

In doing so, the Geostellar Trustee has retained the ability to seek a recovery beyond the policy limits against the Levine Estate. Those issues are not strictly before the Bankruptcy Court in the Adversary Proceeding brought by the Geostellar Trustee against David Levine, because the Levine Trustee is not participating in the Adversary Proceeding which is limited to recovery of insurance, if any. The claim of the Geostellar Trustee against the Levine Estate will be separately resolved in the claims adjudication process for claims in the Levine Bankruptcy.

The Levine Trustee thus has an economic interest in causing a resolution of the Adversary Proceeding against Levine in such a manner as would also resolve the claim of the Geostellar Trustee against the Levine Estate. It is not difficult to imagine, for example, that the Levine Trustee would grant consent to settle the Adversary Proceeding against Levine for full remaining policy limits, so long as the Geostellar Trustee would agree to withdraw or otherwise limit a claim against the Levine Estate. *See Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990).

A contrary conclusion, that Mr. Levine personally holds the consent rights would permit him to act out of mischief or spite. Without any economic interest at stake, Mr. Levine could

withhold consent randomly or in bad faith to create a windfall for PIIC to the detriment of the Bankruptcy Estate. This is a poor policy choice under the circumstances.

PIIC has not persuasively pointed to any exemption contained in 11 U.S.C. § 541, such that would be exempt from the insurance policy from the inclusivity in that section. Instead, the policy and its consent passes to Fluharty, for the law is against PIIC. Insurance policies of a debtor are "property of the estate" because, regardless of who the insured is, the debtor retains certain contract rights under the polices themselves; any rights a debtor has against insurer, whether contractual or otherwise, become property of the estate. *Matter of Edgeworth,* 993 F.2d 51 (5th Cir. 1993) rehearing denied. Debtors' rights under its insurance policies are "property of estate." *In re St. Clare's Hosp. and Health Center*, 934 F.2d 15 (2nd Cir. 1991).

Products liability policies issued in debtor's name qualified as "property of the debtor's estate," even though policy proceeds would not flow directly into coffers of estate but merely serve to reduce claims against debtor. *In re Titan Energy, Inc.*, 837 F.2d 325 (8th Cir. 1988).

> *In re Bialac,* 712 F.2d 426 (9th Cir.1983), stated that section 541(a)'s definition of property "was intended to be broad and all-inclusive." *Id.* at 430. **More recently, that circuit defined a debtor company's directors and officers liability policy as property of that debtor's estate because the estate "is worth more with them than without them."** *In re Minoco Group of Companies, Inc.,* **799 F.2d 517, 519 (9th Cir.1986).** The First, Fourth and Fifth Circuits have characterized a debtor's insurance policy as property of a debtor's estate as well. *See Tringali v. Hathaway Mach. Co.,* 796 F.2d 553 (1st Cir.1986) (holding that the language of section 541(a)(1) is broad enough to cover an interest in liability insurance); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.1986); *In re Davis,* 730 F.2d 176 (5th Cir.1984); *see also In re Johns-Manville Corp.,* 40 B.R. 219 (S.D.N.Y.1984).

*Titan Energy*, 837 F.2d, at 329 (emphasis supplied).

*See also Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985)(insurance policy was "property of debtor's estate," not merely claim yet to be resolved, where policy was owned by corporate and individual debtor.).

At oral argument on August 19, 2021, Trustees raised the possibility that Levine might refuse to consent to a settlement, yet in writing he trumpets his willingness to participate in settlement discussion. ECF No. 15, p. 20. This motion for preliminary injunction is congruent with the sentiment in *Allied Digital* and as expressed by the Response. Like the sentiment in the Response, the Trustees agree that the "settlement…process," ECF No. 15, p. 7, should be promoted and it will be if Levine's veto over settlement is removed.

### A CASE HEAVILY RELIED UPON, *IN RE ALLIED DIGITAL TECHNOLOGIES CORP.*, IS INAPPLICABLE AT THIS STAGE OF THE BANKRUPTCY PROCEEDING

Defendant Levine relies heavily upon *Allied Digital Technologies Corp.*, 306 BR 505, 512-513 (Bank D. Del 2004), ECF No. 15, pp. 6 -7, 19. It permits payment to attorneys representing directors under a D&O policy. That issue may seem a familiar memory to the Court, for the Trustee conceded that issue, that attorneys representing Levine could be paid under a D&O policy that was paid for by the Estate and owned by it. Thus Levine relies heavily upon a case that states that PIIC can do what the Estate already agreed could happen. It is axiomatic that the holding of the case, unlike a court's comments, are central to the case, and that holding can only be understood in light of the procedural posture of the case at the time. Indeed, *Allied Digital* recognizes this: "the case is controlled by the language and scope of the policy at issue **not by broad general statements.**" 306 B.R. at 509.

PIIC quotes at length the "broad, general statements" that the *Allied Digital* court made, ECF No. 15, p. 6, contrary to such cases as *Allied Digital* and *United States v. Texas E. Transm. Corp.*, 923 F.2d 410 (5th Cir. 1991)("the facts and procedural posture of each case are important, and it is often true that 'general rules and past decisions cannot provide uniformly dependable guides.'" *Id.* at 412). *See Kelly v. Lopeman,* S.D.Ohio No. C-3-85-930, 1989 WL 281903 ("if the

case before the Court has the proper procedural posture, the district court has no discretion," at *1). The West Virginia Supreme Court of Appeals pointed to the importance of this factor in a fairly recent case, not cited by PIIC.

Regarding *Allied Digital*, the cases cited relate, by the Response's own terms, to paying defense costs. ECF No. 15, p. 7. As well, single differences appear between this case and that in *Allied Digital*. There is no sign in the relied-upon case that the Estate paid for the policy, nor that it belongs to the Estate. The case is inapplicable.

> It is fundamentally unfair to hold that when Mr. Thomas Loudin filed his administrative claim with National, he was not owed a duty of good faith and fair dealing in resolving that claim as a first-party claimant. Such an outcome essentially treats Mr. Thomas Loudin as a nonpremium paying claimant seeking coverage under a third-party's policy, when he, in fact, **paid the premiums for the policy in question.**

*Loudin v. Natl. Liab. & Fire Ins. Co.*, 228 W.Va. 34, 41, 716 S.E.2d 696, 703 (2011), emphasis added, to the effect that the party paying the premium was a first party claimant.

PIIC states that reputational harm is the reason for the consent provision is included in this type of policy, ECF No. 15, p. 22-24, relying heavily upon Louisiana law as well as upon the original complaint, *id.* p. 23, for which an amended complaint has been sought to be substituted.

That reputational harm, *see id.* pp. 22-23, applies most particularly to cases such as medical malpractice, where doctor face collateral consequences from medical malpractice award, such as subject them to administrative sanctions or even threaten their license. *Baird/Olah*, clearly adverse to PIIC's argument, is such a case. It deals with a medical malpractice claim and thus resolves the concern of reputational harm. Conversely, the statement in the briefing, *id.* p. 23, that "[t]he doctor's liability was fully discharged," is far too broad, ignoring that that his reputation in *Baird/Olah* was also exposed to collateral consequences. Medical malpractice law often provides that a physician with too many successful claims risks losing his or her license. Here, as noted in

footnote 1, PIIC's newly found interest in Levine's reputation is self-serving only, where Levine himself resists Trustee Sheehan's motion for leave to file an amended complaint deleting allegations of actual fraud and other intentional misconduct.

### DISSIPATION OF A LIMITED FUND CAN AMOUNT TO IRREPARABLE HARM

Trustees concede that often money loss in and of itself does not represent irreparable harm. But here there is interference with property of the Estate of Levine. There was a promise to mediate with Trustee Sheehan. The United States Supreme Court held in *Alabama Ass'n of Realtors v. DHHR* that denying landlords the ability to evict tenants for non-payment of rent amounted to "irreparable harm" 594 U.S.___, 21A23, __WL___(August 26, 2021)(per curiam). This recent decision acknowledges squarely that interference with intangible rights that may lead to money lost can amount to irreparable harm. There the Supreme Court vacated a stay of an injunction on precisely those grounds. The dissent by Justice Breyer also focused upon the loss to the landlords who prevailed before the Supreme Court. It represents dollars lost.

Thus that dictum about money and irreparable harm does not apply where the fund at issue is decidedly not unlimited, but is impacted by related rights; ultimately here what Trustees believe is a failure to properly evaluate, and attempt settlement of the underlying claim on the merits. Thus *In re Netia Holdings S.A.,* 278 B.R. 344 (SD NY 2002) found irreparable harm from the described interference and dissipation of their limited assets, together with likelihood of success on the merits, and that a preliminary injunction would issue to preserve the status quo.

### THIS REMAINS A FIRST PARTY CLAIM

PIIC states that this is not a first party claim, ECF No. 15, p. 9, and that Trustees have no standing to assert claims, such as for Injunctive Relief. This offends the facts of this case: the

inference clearly is that they are first party to a policy that they own, *see Loudin*, above, under which they are an insured, *id.* p. 8. It is suing, contrary to PIIC, *id.* at 9, for damage to itself by Levine's actions, not as a stranger to the policy, as in the cases cited, such as *Robinson v. Cabell Huntington Hosp.*, 201 W.Va. 455, 498 S.E.2d 27 (1997), which case described plaintiffs as claimed third-party beneficiaries.

PIIC generally limits its claim to the standing of Trustee Sheehan. However, even if Sheehan did not have standing, Fluharty certainly does have standing, for he is the successor to all property and assets of Levine, who is undeniably an insured under the insurance policy, as PIIC admits. *See above* at 5-6.

PIIC suggests that if the Trustees were "suing as an insured," ECF No. 15, p. 8, they would have standing. Again, *Allied Digital* resolves, an issue already resolved in this case and warns against an application of its broad statements beyond the facts of the case.

West Virginia has essentially limited third party claims but has not limited first party claims, instead giving an expansive gloss to such claims.

> The terms "first-party" and "third-party" have distinctively different meanings in the context of bad faith settlement actions against insurers. For definitional purposes, a first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured. A third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor.
>
> *State ex rel. Allstate Ins. v. Gaughan*, 203 W. Va. 358, 369, 508 S.E.2d 75, 86 (1998) (footnotes omitted).
>
> This Court has recognized two types of first-party bad faith claims:
>
> One such action may arise when the insurer fails to use good faith in settling a claim by someone the insured harmed or injured. ... However, the second type of first-party bad faith action against an insurer concerns a claim brought by the insured against the insurer, e.g., house burned down.

*Id.* at 370 n.17, 508 S.E.2d at 87 n.17.

*State ex rel. State Auto Property Ins. Cos. v. Stucky*, 2016 WL 3410352, *3–4 (Memo 6/14/16).

PIIC relies upon *Robinson v. Cabell Huntington Hosp., Inc.* It vastly differs from this case. It holds that patients "are not entitled to maintain a direct suit against Dr. Terlizzi's liability insurer as a third-party beneficiary of the insurance contract." Instead there is *Loudin*, where Justice Davis stated:

> A third party claimant has no contract with the insurer ..., has not paid any premiums, has no legal relationship to the insurer or special relationship of trust with the insurer, and in short, has no basis upon which to expect or demand the benefit of the extra-contractual obligations imposed on insurers ... with regard to their insureds.

*Loudin v. Natl. Liab. & Fire Ins. Co.,* 228 W.Va. 34, 41, 716 S.E.2d 696, 703 (2011)(quoted sources omitted).

Contrary to standing argument, ECF No. 15 pp. 7-15, it maintains the crucial distinction that the D&O policy, unlike the medical malpractice policy in *Baird*, is not for his personal benefit. However, if the coverage is intended to benefit Geostellar rather than, or even additional to, Levine, that would easily confer standing upon the Trustees.

Regarding the "priority of payments" section of the briefing, ECF No. 15 pp. 16-17, PIIC claims that the purpose of the policy is that an insurer can defend itself, *id.* pp. 17-18, forgetting that the greater purpose of indemnity insurance, as reflected in the name of PIIC, Philadelphia Indemnity Insurance Company, is to provide indemnity. "[I]nsurance is characterized by the concept of indemnity," *Couch on Insurance* 3d, Section 1:8 (citations omitted).

## THIS IS A CORE PROCEEDING

A new Adversary Proceeding became necessary to resolve the instant dispute. As set forth below, what is at stake is whether or not the Bankruptcy Estate of David Levine, or David Levine controls the right to consent to settle under a policy of insurance that provides for consent. This is an issue of what is property of the Bankruptcy Estate. It arises "in a bankruptcy proceeding" and jurisdiction exists under 11 U.S.C. § 157(a). The issue specifically arises pursuant to 11 U.S.C. § 541. As such, this case involves a core issue under 28 U.S.C. § 157(b)(2)(E), an order to turn over property of the estate. It may also be a core issue under 28 U.S.C. § 157(b)(2)(A), and (O).

Unlike *Roman Catholic Center*, upon which PIIC relies at ECF No. 15 pp. 24-25, the Levine bankruptcy is now "relatively new, and the bankruptcy court here is "much more familiar with the claims and issues in this matter" than the district court. 20211978560 at *8*. Also, the diocese in *Roman Catholic Center* had nearly $100 million in assets apart from the insurance policy. N. 13.

Another significant issue alluded to was arbitration <u>regarding coverage issues</u>. While this court, by Judge Flatley, ordered arbitration of the previous complaint, he stayed that ruling (such that if the Court wished to send the matter to arbitration it would need to take the affirmative action of lifting the stay).

As well, the claims made in the amended complaint do not rise to claims covered by the arbitration clause. PIIC notes that the arbitration clause in the insurance contract at issue only goes to coverage disputes. ECF No. 11, p. 14. While this has the effect of a denial of coverage, PIIC states that it has not denied coverage. ECF No. 11, p. 8. There is no such dispute to arbitrate, since it is far too late to deny coverage now.

WHEREFORE, Trustees seek that the Court grant the preliminary injunction requested regarding consent.

        *s/* Thomas H. Fluharty_____
         Thomas H. Fluharty, Esq. WV Bar No.: 1231
        408 Lee Avenue Clarksburg, WV 26301
        (304) 624-7832
        *for the Trustee of the Bankruptcy Estate of David Levine and Monica Levine*

        */s/* Martin P. Sheehan_____
        Martin P. Sheehan, Esq.
        WV State Bar No. 4812
        SHEEHAN & ASSOCIATES, PLLC
        1 Community Street, Ste 200
        Wheeling, WV 26003
        P: (304) 232-1064
        F: (304) 232-1066
        sheehanparalegal@wvdsl.net

        */s/* Patrick S. Cassidy
        Patrick S. Cassidy, Esq. (WV State Bar No. 671)
        Timothy F. Cogan, Esq. (WV State Bar No. 764)
        CASSIDY, COGAN,
        SHAPELL & VOEGELIN, L. C.
        The First State Capitol
        1413 Eoff Street
        Wheeling, WV 26003
        P: (304) 232-8100
        F: (304) 232-8200
        pcassidy@walslaw.com
        tfc@walslaw.com
        *for the Trustee of the Bankruptcy Estate of Geostellar, Inc.*

**CERTIFICATE OF SERVICE**

Service of the foregoing was had upon the parties by electronic notification send via the Court's CM/ECF system this 10th day of September, 2021 on Brian Bickerstaff at bbickerstaff@turnerjohns.com and Debra Varner at dtvarner@vv-wvlaw.com.

                                                                    */s/* Patrick S. Cassidy
Patrick S. Cassidy, Esq. (WV State Bar No. 671)
Timothy F. Cogan, Esq. (WV State Bar No. 764)
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L. C.
The First State Capitol
1413 Eoff Street
Wheeling, WV 26003
P: (304) 232-8100
F: (304) 232-8200
pcassidy@walslaw.com
 tfc@walslaw.com