# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re:<br><br>LEVINE, DAVID ANDREW<br>LEVINE, MONICA LARSON<br><br>Debtors.<br><br>_____<br><br>THOMAS H. FLUHARTY, Trustee of the Bankruptcy Estate of David Levine and Monica Levine,<br><br>Plaintiff,<br><br>MARTIN P. SHEEHAN, Trustee of the Bankruptcy Estate of Geostellar, Inc.<br><br>Co-Plaintiff,<br><br>v.<br><br>PHILADELPIA INDEMNITY INSURANCE COMPANY and DAVID A. LEVINE,<br><br>Defendants. | Bankruptcy Case No.: 3:19-bk-1048<br><br><br><br><br><br><br><br>Adversary Proceeding No. 3:21-ap-00019 |

## PHILADELPHIA INDEMNITY INSURANCE COMPANY'S
## MOTION TO DISMISS ADVERSARY COMPLAINT

**COMES NOW** Philadelphia Indemnity Insurance Company ("PIIC") by and through Counsel and moves pursuant to Fed. R. Civ. P. 12(b)(1) and (6) which are incorporated into bankruptcy procedure by Fed. R. Bankr. P. 7012(b) to dismiss the Adversary Complaint filed by co-Plaintiffs Thomas Fluharty, Trustee of the Bankruptcy Estate of David Levine and Monica Levine (the "Levine Trustee") and Martin P. Sheehan, Trustee of the Bankruptcy Estate of

Geostellar, Inc. (the "Geostellar Trustee") (collectively, "Plaintiffs"). The reasons in support of the Motion are in the attached Memorandum of Law. For the reasons therein stated, PIIC asks this Court to Dismiss the Adversary Complaint with Prejudice and to Enter the Attached Order.

Dated this 13th day of September, 2021.

**Defendant, PHILADELPHIA INDEMNITY INSURANCE COMPANY
By Counsel:**

*/s/ Debra Tedeschi Varner*

Debra Tedeschi Varner (WV State Bar #6501)

Varner & Van Volkenburg PLLC
360 Washington Avenue
Clarksburg, WV 26301
Telephone: (304) 918-2840
Facsimile: (304) 566-1161

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

IN RE:

| | |
|---|---|
| DAVID ANDREW LEVINE<br>and MONICA LARSON LEVINE,<br><br>    Debtors. | Bankruptcy Case No. 3:19-BK-01048<br>Chapter 7 |
| THOMAS FLUHARTY,<br>Trustee of the Bankruptcy Estate of<br>David Levine and Monica Levine,<br>- and -<br>MARTIN P. SHEEHAN,<br>Trustee of the Bankruptcy Estate of<br>Geostellar, Inc.,<br><br>    Plaintiffs,<br><br>v.<br><br>PHILADELPHIA INDEMNITY<br>INSURANCE COMPANY,<br>and DAVID A. LEVINE,<br><br>    Defendants. | Adv. Proc. No. 3:21-AP-00019<br>Judge: Becker McKay Wyckoff Mignault |

## CERTIFICATE OF SERVICE

Service of the foregoing ***PHILADELPHIA INDEMNITY INSURANCE COMPANY'S MOTION TO DISMISS ADVERSARY COMPLAINT*** was had upon the parties, as set forth below, by electronic notification via the Court's CM/ECF system, and/or by mailing a true copy hereof, by United States Mail, postage prepaid, this 13th day of September, 2021:

Thomas H. Fluharty, Esquire
thfdebtatty@aol.com
wv12@ecfcbis.com
*Plaintiff*

Martin P. Sheehan, Trustee
sheehanparalegal@wvdsl.net
sheehanassistant@wvdsl.net
sheehanbankruptcy@wvdsl.com
wv05@ecfcbis.com
*Plaintiff*

David Andrew Levine
2426 Steamboat Run Road
Shepherdstown, WV 25443-4115
*Defendant*

Patrick S. Cassidy, Esquire
pcassidy@walslaw.com
kch@walslaw.com
Timothy F. Cogan, Esquire
tfc@walslaw.com
smh@walslaw.com
***Counsel for Plaintiff, Martin P. Sheehan***

*/s/ Debra Tedeschi Varner*

3

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re:<br><br>LEVINE, DAVID ANDREW<br>LEVINE, MONICA LARSON<br><br>Debtors.<br><br>―――――――――――――――――<br><br>THOMAS H. FLUHARTY, Trustee of the Bankruptcy Estate of David Levine and Monica Levine,<br><br>Plaintiff,<br><br>MARTIN P. SHEEHAN, Trustee of the Bankruptcy Estate of Geostellar, Inc.<br><br>Co-Plaintiff,<br><br>v.<br><br>PHILADELPIA INDEMNITY INSURANCE COMPANY and DAVID A. LEVINE,<br><br>Defendants. | Bankruptcy Case No.: 3:19-bk-1048<br><br><br><br><br><br><br><br>Adversary Proceeding No. 3:21-ap-00019 |

## PHILADELPHIA INDEMNITY INSURANCE COMPANY'S
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Philadelphia Indemnity Insurance Company ("PIIC") moves to dismiss the Adversary Complaint filed on August 13, 2021 to commence this case by co-Plaintiffs Thomas Fluharty, the Chapter 7 Trustee of the Bankruptcy Estate of David Levine and Monica Levine (the "Levine Trustee") and Martin P. Sheehan, the Chapter 7 Trustee of the Bankruptcy Estate of Geostellar, Inc. (the "Geostellar Trustee") (collectively, "Plaintiffs"). The Adversary Complaint concerns issues in

regard to insurance coverage for Defendant David A. Levine, under Private Company Protection Plus Policy No. PHSD1249816 (the "Policy") issued by PIIC to Geostellar, Inc. which was in effect for a Policy Period of May 31, 2017 to May 31, 2018. Mr. Levine is being defended by PIIC as an "Individual Insured" under the Policy in the Lawsuit captioned *Sheehan v. Levine*, Bankruptcy Case No. 3:19-ap-00024 (the "Geostellar Lawsuit"), which is also pending in this Court.

In most basic terms, in the Complaint the Levine Trustee alleges that he is entitled to take control of Levine's rights as an insured party under a directors and officers liability insurance policy issued by PIIC to Geostellar. The Geostellar Trustee alleges that he is in support of the Levine Trustee's action because that would allow the Levine Trustee to settle litigation that the Geostellar Trustee has brought against Levine. However, neither Plaintiff has pleaded any facts that would establish standing for either to pursue this declaratory judgment action.

## Standards For A Motion To Dismiss

Fed. R. Civ. P. 12(b)(1) and (6) are incorporated into bankruptcy procedure by Fed. R. Bankr. P. 7012(b). A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the

2

defendant is liable for the misconduct alleged." *Id*. Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; see also *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

In the instant Adversary Complaint, neither Plaintiff states factual allegations that are sufficient to give them standing to proceed against PIIC. The Fourth Circuit in *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019), instructs: "But '[s]tanding is a jurisdictional issue we must consider independently.' The 'irreducible constitutional minimum of standing' requires the petitioner to allege a concrete injury that is 'actual or imminent, not conjectural or hypothetical.'" (citations omitted) In the insurance context, the 4th Circuit has held that declaratory judgments about matters concerning indemnity are outside of the court's jurisdiction because any injury is hypothetical, pending a finding of liability in a trial court. *Id*. ("Thus, suits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains undetermined.") See also *Lear Corp. v. Elec.Ltd.*, 353 F.3d 580, 583-85 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established.")

**I.    Plaintiffs Do Not Establish Actual Or Imminent Injury**

Plaintiffs allege nothing in the Complaint that could be deemed an injury at all. At most Plaintiffs contend that entry of the requested declaration will change which parties may enter into a settlement in the Geostellar Lawsuit. Plaintiffs imply that they will settle the Geostellar Lawsuit

should the court enter the declaration which they seek. Fundamentally, however, there are no allegations whatsoever that a failure to compel settlement of that matter will result in any injury to any party. The Geostellar Lawsuit is ongoing. There has been no finding of liability against Levine. Thus, any claims about resolution of the Geostellar Lawsuit dispute are purely hypothetical and do not meet the standard set by the Fourth Circuit in *Trustguard*, 942 F.3d at 199-200.

**II.     The Levine Chapter 7 Trustee Has Not Alleged Facts That Would Establish Standing**

The Levine Trustee is seeking to exercise Mr. Levine's contractual right of consent to a potential settlement of the Geostellar Lawsuit, even though a settlement or lack of a settlement of Claims against Mr. Levine will not impact the Levine Chapter 7 bankruptcy proceeding. Crucially, the Geostellar Lawsuit is an adversary proceeding in the Geostellar bankruptcy, not the Levine bankruptcy. Because all claims against Levine for his personal liability have been discharged in his Chapter 7 bankruptcy proceeding, the Geostellar Lawsuit cannot possibly create any liability for the personal bankruptcy estate of Mr. Levine and his wife that would fall within the scope of the Levine Trustee's duties, and the Levine Trustee therefore has no standing to coopt Mr. Levine's right of consent.

In regard to the Levine Trustee's standing, it is not only critical to note that the Geostellar Lawsuit is an adversary proceeding as to the *Geostellar* bankruptcy proceeding, but also to bear in mind the purpose for a determination of Mr. Levine's liability in the Geostellar Lawsuit. Plainly the discharge of a Chapter 7 debtor such as Mr. Levine does not serve to shield third parties for their obligations that may arise from the activities of Mr. Levine. A contractually responsible liability insurer must still pay defense costs or indemnity on behalf of a discharged debtor that is an insured in the event that the debtor is liable for loss that falls within the discharged debtor's insurance coverage. See, *e.g.*, First Fidelity Bank v. McAteer, 985 F.2d 114 (3rd Cir. 1993). It is

black letter law that the permanent discharge injunction under 11 U.S.C. § 524(a)(2) does not prevent the filing of a lawsuit against the debtor solely to determine liability in order to collect from the debtor's (or another entity's) insurer. See generally, *e.g.*, *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3rd Cir. 1993); *Green v. Welsh*, 956 F.2d 30 (2nd Cir. 1992); *In re Shondel*, 950 F.2d 1301 (7th Cir. 1991); *In re Walker*, 927 F.2d 1138 (10th Cir. 1991).

Thus, the bankruptcy code provides that it is permissible to commence or proceed with prosecution against a debtor, such as Mr. Levine, with such litigation taking place outside the debtor's bankruptcy, and with the debtor named as a nominal defendant, if such action is necessary to prove liability as a prerequisite to recovery against a liability insurer.[1] In such a case it is emphasized, however, that no collection action may be taken against the debtor through the bankruptcy. *Pettibone Corp. v. Hawxhurst*, 163 B.R. 989 (N.D. Ill 1994), aff'd, 40 F.3d 175 (7th Cir. 1994).

Because the Geostellar Lawsuit is proceeding outside of the Levine bankruptcy proceeding and because Mr. Levine is involved solely for the purpose of determining his liability, the Levine Trustee has no interest in the litigation or in the relevant insurance policy. The key point here is that the purpose of the litigation carried on outside the bankruptcy proceeding is to determine what Mr. Levine's liability would be on a debt that would be indemnified by another party, notwithstanding Mr. Levine's discharge. *In re Schultz*, 251 B.R. 823, 828 (Bankr. E.D. Tex. 2000) (holding that while the discharge injunction protects a discharged debtor from being adjudged personally liable, it does not "preclude a determination of [a] debtor's liability on the basis of which

---

[1] Indeed, many state laws require that the debtor be a named party. See generally, e.g., *In re Edgeworth*, 993 F.2d 51 (5th Cir. 1993).

5

indemnification would be owed by another party") (quoting *In re Shondel*, 950 F.2d 1301, 1306 (7th Cir. 1991)); *In Re Gibson*, 172 B.R. 47, 49 (collecting cases) (Bankr. W.D. Ark 1994).

Consistent with this principle, bankruptcy courts have found that there is no reason to reopen a Chapter 7 bankruptcy to allow a party to proceed against the debtor solely for the purpose of determining indemnity to be paid by a third party. Indeed, several courts addressing this issue have determined that it is unnecessary to reopen a bankruptcy case or to enter an order "modifying" the discharge injunction allowing a party to proceed with a lawsuit under § 524(e). See, *e.g.*, *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 550 (B.A.P. 9th Cir. 2002) ("The assumption … that a bankruptcy court order is required any time an action is taken nominally against a debtor after discharge is . . . incorrect."); *Patronite v. Beeney (In re Beeney)*, 142 B.R. 360, 363 (B.A.P. 9th Cir. 1992) (holding that "reopening [a] case is unnecessary because . . . an action naming the debtor solely to establish the debtor's liability in order to collect on an insurance policy is not barred by . . . § 524"); *In re Christian*, 180 B.R. 548, 550 (denying the creditor's motion to reopen "for the purpose of modifying the injunctive provisions of the Order of Discharge . . . as moot"); *Gibson*, 172 B.R. at 50 (denying creditors' motion to reopen "as it does not present a justiciable issue for the Court"). The Chapter 7 Trustee can have no interest beyond that in the bankruptcy proceeding.

Thus, because the Geostellar Lawsuit against Levine is taking place entirely outside of Levine's personal bankruptcy proceeding, and because the sole purpose of the Geostellar Lawsuit is to determine indemnity that would be provided by a third party which is available for that limited purpose only, the Levine Trustee cannot have an interest in the Geostellar Lawsuit or in the Policy as it relates to any liability that is to be determined by the Geostellar Lawsuit.

### III. The Geostellar Trustee Has Not Alleged Any Facts That Would Give Rise To Standing

The only basis for standing provided by the Geostellar Trustee is that he has filed an adversary proceeding against Mr. Levine in connection with the Geostellar bankruptcy. This is not sufficient to establish that the Geostellar Trustee has standing to assert a right under the Policy.

In this case the Geostellar Trustee is conflating his role as a claimant – by which he is seeking to bring a cause of action on behalf of the Geostellar Estate for its creditors – with a role of an Insured under the Policy, for which he asserts the coverage is "first party" insurance. While Geostellar itself is indeed an "Insured" under the Policy, as the "Private Company," it is not acting as an Insured when it sues its own directors or officers such as Levine. In *In re Allied Digital Technologies Corp.,* 306 B.R. 505, 512-513 (Bankr. D. Del. 2004), the court explained the importance of this distinction, finding:

> Here, the Trustee brought the action against the directors and officers. The policy in question provides direct coverage to the directors and officers for claims and defense costs (which are real), and indemnification coverage to the company for amounts paid to the directors and officers (which is hypothetical). The Trustee has made no credible showing that the direct coverage of Allied Digital under Clause B(i) for securities claims has any continuing vitality. *The Trustee's real concern is that payment of defense costs may affect his rights as a plaintiff seeking to recover from the D&O Policy rather than as a potential defendant seeking to be protected by the D&O Policy. In this way, Trustee is no different than any third party plaintiff suing defendants covered by a wasting policy.* No one has suggested that such a plaintiff would be entitled to an order limiting the covered defendants' rights to reimbursement of their defense costs.
>
> The bottom line is that the Trustee seeks to protect the amount he may receive in his suit against the directors and officers while limiting coverage for the defense costs of the directors and officers. This is not what the directors and officers bargained for. In bringing the action against the directors and officers, the Trustee knew that the proceeds could be depleted by legal fees and he took that chance. The law does not support the Trustee's request to regulate defense costs.
>
> (Emphasis added.)

The court's approach in *In re Allied Digital Technologies Corp.* has been widely adopted by courts in other jurisdictions. See, *e.g., In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (D. S.C. 2011) (citing *Allied Digital* in rejecting the plaintiff trustee's argument that defendants should not be able to receive their defense costs paid from the policy because by doing so it would reduce the trustee's recovery as a plaintiff); *In re Laminate Kingdom LLC*, 2008 Bankr. LEXIS 1594, **10-**11 (Bankr. S.D. Fla. Mar. 13, 2008) (following *Allied Digital* in another matter involving a trustee seeking to prevent the payment of defense costs for an individual insured's defense in a lawsuit filed by the trustee); *Miller v. McDonald (In re World Health Alternatives, Inc.)*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (citing *Allied Digital* for the proposition that the Trustee is no different from any other third party when seeking recovery from an Insured that has a wasting policy); and *In re Licking River Mining, LLC*, 2016 Bankr. LEXIS 2211 (Bank. E.D. KY. Jun. 6, 2016) ("In looking to preserve a funding source to satisfy a judgment, the Trustee is not seeking to preserve estate assets. As such, there is no reason she should be treated differently than any other third-party plaintiff suing the Movants").

Once it is understood that the Geostellar Trustee's role in the Geostellar Lawsuit is that of a third party claimant, and that the rights he is seeking to assert in the Geostellar Lawsuit are not rights possessed by Geostellar as an "Insured" under the Policy, it then becomes clear that the Geostellar Trustee is improperly seeking to assert a direct action against PIIC, which would be contrary to West Virginia law. West Virginia is not a direct-action state, and a claimant that has brought a lawsuit against an insured under a liability policy under West Virginia law may not bring an action against an insurance company until it obtains a judgment against the insured. The Geostellar Trustee, as a mere claimant against Levine, has no right to bring a direct action against

PIIC. He is not yet a judgment creditor and liability of Mr. Levine is not established, as is a prerequisite for a claimant – not suing as an Insured – to bring a claim directly against PIIC.

The coverage afforded to Geostellar as an Insured "Private Company" under the Policy is coverage either for its own liability, which it certainly is not seeking to establish in its own lawsuit, or coverage for its indemnification of its directors' or officers' liability, which it is certainly not providing to Mr. Levine for the Geostellar Lawsuit. Geostellar is not making a "first-party" insurance claim; it is asserting liability as a claimant allegedly damaged by Mr. Levine's alleged "Wrongful Acts." The Policy affords only third-party liability coverage, and not first-party coverage (such as life or property insurance) for Geostellar.

While the Geostellar Lawsuit may give rise to coverage for Mr. Levine, it is not a "Claim" against Geostellar falling within any of the Policy's Insuring Agreements that insure Geostellar, as opposed to Mr. Levine. The Policy provides coverage for Claims *against* the Insureds for their "Wrongful Acts." See definition of "Claim" under Part 4, COMMON POLICY DEFINITIONS, Item B. (defining "Claim," in pertinent part, to be "*against* an Insured for a Wrongful Act") (emphasis added) and the Insuring Agreements under Part 1 (Insuring "Individual Insureds," such as Mr. Levine, for Claims *against* them under Part 1, Section I., INSURING AGREEMENTS, Subsection A., while insuring Geostellar, as the "Private Company," either under Part l, Section I., Subsection B. for its indemnification of an Individual Insured's "Loss" (which Geostellar is *not* providing for Mr. Levine) or under Section I., Subsection C., for Claims *against* Geostellar itself for its own conduct (which are not involved in the Geostellar Lawsuit); or under Part 2, which likewise provides coverage for Geostellar solely for Claims *against* it, for its own conduct (which are not involved in the Geostellar Lawsuit). Dckt. No. 1, Ex. 1, pp. 48, 42, 44-45.

The West Virginia Supreme Court of Appeals held in *Robinson* v. *Cabell Huntington Hosp., Inc.*, 201 W.Va. 455, 460, 498 S.E.2d 27 (1997), that an injured party suing an insured tortfeasor has no standing to bring a direct action against the defendant's insurance company, with two narrow exceptions. *Robinson v. Cabell Huntington Hosp., Inc.*, 201 W.Va. 455, 460, 498 S.E.2d 27 (1997), quoting *Mazon v. Camden Fire Ins. Ass'n*, 182 W.Va. 532, 533, 389 S.E.2d 743 (1990). Those exceptions are: (1) where the insured fails to pay a judgment entered in a personal injury action (*see Broy v. Inland Mut. Ins. Co.*, 160 W.Va. 138, 233 S.E.2d 131 (1977)), and (2) "where the defendant's insurer has denied coverage" (see *Christian v. Sizemore*, 181 W.Va. 628, 383 S.E.2d 810 (1989)). *Robinson*, *supra*, 201 W.Va. at 460.[2] The court in *Robinson* expressly held that such claimants are not "third-party beneficiar[ies]" of the insurance contract. *Id*.

The first exception obviously is not relevant in this case – as there is no unpaid judgment on behalf of Geostellar against Levine. Moreover, there has been no "denial of coverage." In *Christian v. Sizemore*, 181 W.Va. 628 (1989), the court held, in Syllabus Point 3, that "[a]n injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage before obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has *denied* coverage." (Emphasis added.) In *Christian*, the plaintiff brought an action for injuries she suffered in an automobile accident. The defendants' insurance carrier denied coverage on the ground that the policy had lapsed before the accident occurred. *Id.* at 629. Under these circumstances, the court found that a declaratory judgment count against the insurance company could properly be joined with the action against the

---

[2] *Robinson* identified a third exception, involving third party bad faith claims. However, such claims were eliminated with the enactment of W.Va. Code § 33-11-4a in 2005, such that the third exception identified in *Robinson* no longer exists. *Whittaker, LLC v. Nationwide Mut. Ins. Co.*, No. CIV. A. 2:07-963, 2008 WL 2063548, at *3 (S.D.W.Va. May 13, 2008).

policyholders. The court acknowledged the principle that, in general, an action against a defendant's insurance carrier should not be joined in an action against the insured, so as to avoid the prejudice inherent in the possible mention of insurance coverage at trial. *Id.* at 630. However, because in the case before it the insurance carrier had *denied* any obligation to pay a judgment against the defendant, the court found it appropriate to seek early resolution of the coverage dispute:

> Declaratory judgment … provides a prompt means of resolving policy coverage disputes so that the parties may know in advance of the personal injury trial whether coverage exists. This facilitates the possibility of settlements and avoids potential future litigation as to whether the insurer was acting improperly in denying coverage. Moreover, as this case demonstrates, the use of declaratory judgment protects the plaintiff from an insured who has no independent assets and is not concerned about insurance coverage.

*Id.* at 632.

These concerns are not present here. The *Christian* court noted that where "the coverage question" is separable from the issues in the underlying action, "it should ordinarily be decided first." *Id.* at 632-633. This action to coopt Mr. Levine's right to consent, is not a "coverage question" for the Geostellar Trustee, who is not entitled to coverage under the Policy for liability in the Geostellar Lawsuit as an Insured. The Geostellar Trustee does not allege that PIIC has denied coverage for the Geostellar Lawsuit for the Insured defendant – Mr. Levine. Coverage issues may ultimately exist in regard to the Damages sought in the underlying Geostellar Lawsuit, if liability is determined, but this Adversary Proceeding is not seeking to resolve such a coverage question, which would be premature in the absence of any showing of liability.

A tort claimant such as the Geostellar Trustee does not have a right to file a direct action under West Virginia law in the circumstances for this case. Post *Christian*, the West Virginia Supreme Court of Appeals in *Anderson v. Robinson*, 186 W. Va. 92, 411 S.E.2d 35 (1991), permitted the plaintiff to proceed in a direct action against the tortfeasor's insurer to satisfy a judgment, which had already been obtained, where the bankruptcy court modified the automatic

stay in order for the plaintiff's lawsuit to proceed to the extent of available insurance coverage. The critical factor in *Anderson*, however, was that a judgment had already been obtained by the plaintiff. In rendering its ruling, the Court noted it was only in certain circumstances that an injured plaintiff may proceed against the tortfeasor's insurer. In this case, not only has a judgment not yet been obtained, but the status of the Geostellar Trustee's operative complaint remains the subject of an objection asserted by Mr. Levine, such that neither PIIC nor Levine even know at this time what the allegations in the Geostellar Lawsuit are going be. (*Sheehan v. Levine*, 3:19-ap-00024, Dckt. Nos. 57-66).

The Geostellar Trustee's concern in this case is that because the Policy insuring Mr. Levine is an eroding Policy, the provision of a defense for Mr. Levine will reduce the Limit of Liability available to satisfy a judgment at some point if a judgment is at some point rendered in favor of the Geostellar Estate in the Geostellar Lawsuit. However, the Policy that Geostellar purchased from PIIC is written as an eroding policy, by which the payment of Defense Costs for insured directors and officers serves to reduce the Limit of ability. Dckt. No. 1, Ex. 1, p. 54, Part 6, COMMON POLICY CONDITIONS, Section 1, LIMITS OF LIABILITY, Subsection D. Such a policy is less expensive than a non-eroding policy, which would maintain a separate source of funds for defense versus liability. See *West Virginia Mutual Insurance Co. v. Vargas*, 933 F. Supp. 2d 847, 858 (N.D.W. Va. 2013) ("To adopt Vargas's argument and foreclose carriers of tail insurance from including defense costs within the available liability limits upon an insured's default, would, by judicial dictate, increase the cost of tail insurance in West Virginia and run afoul of the legislature's stated goal of promoting stable and affordable tail insurance premiums. This the Court declines to do. The defense within limits provision in West Virginia Mutual's tail policy therefore does not violate the public policy of West Virginia.").

12

Because the Policy on its face is an eroding policy that entitles Mr. Levine to his Defense Costs without regard to the impact upon the Limit of Liability, the "predicament" giving rise to the Geostellar Trustee's filing of this proceeding does not give rise to a valid cause of action by the Geostellar Trustee. Moreover, even the "predicament" is itself a completely speculative scenario, and not a circumstance validly subject to a declaratory judgment. The Limit of Liability provided by the Policy is a significant amount of funds, either $3 million or $1 million, depending upon the Insuring Agreement that would apply, and although the total amount may be impacted by its use for the defense of Mr. Levine, provision of his defense does not eliminate the entire Limit of Liability, which may nevertheless be sufficient to address potentially insured liability (if any). Creditors who ultimately stand to recover in a lawsuit against Mr. Levine for alleged conduct as a director or officer of Geostellar may, *if* they establish liability, then be entitled to a recovery for such liability from the balance available under the Policy.

Purchasers of an eroding Policy – or their successors such as the Geostellar Trustee – cannot rewrite the insurance contract, either to eliminate the provisions of the Policy that allow directors and officers to obtain their defense, or to give creditors a right to recover any amount of the Limit of Liability without first actually establishing liability of an Insured under the Policy. If Geostellar had wanted to purchase a policy providing for the defense of its directors and officers on top of the Limit of Liability available to satisfy a judgement, Geostellar could have done so, but it would have then needed to pay a higher premium for such a product. See *West Virginia Mutual Insurance Co. v. Vargas*, 933 F. Supp. 2d 847, 858 (N.D.W. Va. 2013); see also, *e.g.*, *Fed. Ins. Co. v. Singing River Health Sys.*, 850 F.3d 187, 202 (5th Cir. 2017) (noting generally an insured's option to purchase coverage providing for defense costs in addition to the limit of liability).

The Geostellar Trustee, and Geostellar's creditors, may not like that Mr. Levine has access to the limit of liability for his defense, but that is the contract that was purchased – a contract that incentivizes a claimant to take into consideration that protracted litigation will eliminate the source of funds available to satisfy a judgment. See *In re Allied Digital Technologies Corp.,* 306 B.R. 505, 512-513 (Bankr. D. Del. 2004) (noting that risk of reduction of settlement funds is a risk that any plaintiff seeking recovery from an insured with an eroding policy must contend with).

## CONCLUSION

Because neither Trustee has standing to pursue a declaratory judgment action against PIIC, this adversary Complaint should be dismissed with prejudice.

Dated this 13th day of September, 2021.

**Defendant, PHILADELPHIA**
**INDEMNITY INSURANCE COMPANY**
**By Counsel:**

*/s/ Debra Tedeschi Varner*

Debra Tedeschi Varner (WV State Bar #6501)

Varner & Van Volkenburg PLLC
360 Washington Avenue
Clarksburg, WV 26301
Telephone: (304) 918-2840
Facsimile: (304) 566-1161

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

IN RE:

DAVID ANDREW LEVINE  
and MONICA LARSON LEVINE,

      Debtors.

Bankruptcy Case No. 3:19-BK-01048  
Chapter 7

THOMAS FLUHARTY,  
Trustee of the Bankruptcy Estate of  
David Levine and Monica Levine,  
- and -  
MARTIN P. SHEEHAN,  
Trustee of the Bankruptcy Estate of  
Geostellar, Inc.,

      Plaintiffs,

v.

PHILADELPHIA INDEMNITY  
INSURANCE COMPANY,  
and DAVID A. LEVINE,

      Defendants.

Adv. Proc. No. 3:21-AP-00019  
Judge: Becker McKay Wyckoff Mignault

## CERTIFICATE OF SERVICE

    Service of the foregoing ***PHILADELPHIA INDEMNITY INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS*** was had upon the parties, as set forth below, by electronic notification via the Court's CM/ECF system, and/or by mailing a true copy hereof, by United States Mail, postage prepaid, this 13th day of September, 2021:

Thomas H. Fluharty, Esquire  
thfdebtatty@aol.com  
wv12@ecfcbis.com  
*Plaintiff*

Martin P. Sheehan, Trustee  
sheehanparalegal@wvdsl.net  
sheehanassistant@wvdsl.net  
sheehanbankruptcy@wvdsl.com  
wv05@ecfcbis.com  
*Plaintiff*

David Andrew Levine  
2426 Steamboat Run Road  
Shepherdstown, WV 25443-4115  
*Defendant*

Patrick S. Cassidy, Esquire  
pcassidy@walslaw.com  
kch@walslaw.com  
Timothy F. Cogan, Esquire  
tfc@walslaw.com  
smh@walslaw.com  
***Counsel for Plaintiff, Martin P. Sheehan***

                                      */s/ Debra Tedeschi Varner*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| In re:<br><br>LEVINE, DAVID ANDREW<br>LEVINE, MONICA LARSON<br><br>    Debtors.<br>_____<br><br>THOMAS H. FLUHARTY, Trustee of the Bankruptcy Estate of David Levine and Monica Levine,<br><br>    Plaintiff,<br><br>MARTIN P. SHEEHAN, Trustee of the Bankruptcy Estate of Geostellar, Inc.<br><br>    Co-Plaintiff,<br>v.<br><br>PHILADELPIA INDEMNITY INSURANCE COMPANY and DAVID A. LEVINE,<br><br>    Defendants. | Bankruptcy Case No.: 3:19-bk-1048<br><br><br><br><br><br>Adversary Proceeding No. 3:21-ap-00019 |

## ORDER OF COURT

AND NOW, this ____ day of _____, 2021, upon consideration of Philadelphia Indemnity Insurance Company's Motion to Dismiss the Adversary Complaint and Plaintiffs' Response thereto, it is hereby **ORDERED** Defendant's Motion to Dismiss the Adversary Complaint is **GRANTED** and the Adversary Complaint is dismissed with Prejudice.

ENTER: _____

_____
U.S. Bankruptcy Judge

PREPARED BY:

*/s/ Debra Tedeschi Varner*
Debra Tedeschi Varner (WV State Bar #6501)
Varner & Van Volkenburg PLLC
360 Washington Avenue
Clarksburg, WV 26301
Telephone: (304) 918-2840
Facsimile: (304 566-1161
***Counsel for Defendant***
***Philadelphia Indemnity Insurance Company***