**IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

IN RE: DAVID LEVINE and
     MONICA LEVINE,                         **Bankruptcy Case 3:19-bk-1048**

     **Debtors**


Thomas H. Fluharty, Trustee of the Bankruptcy Estate of
David Levine and Monica Levine


And

Martin P. Sheehan, Trustee of the
Bankruptcy Estate of Geostellar, Inc.,


v.                                     **A. P. No. 3:21-AP-0019**

Philadelphia Indemnity Insurance Co.  and
David A. Levine


### Response of Plaintiffs to Motion to Dismiss

     Now comes Thomas H. Fluharty, Trustee of the Bankruptcy Estate of David Levine and Monica Levine, by his attorney, Thomas H. Fluharty, Esq., and comes Martin P. Sheehan, Trustee of the Bankruptcy Estate of Geostellar, Inc., by his attorneys, Patrick S. Cassidy, Esq., and Timothy Cogan, Esq., and Cassidy, Cogan, Shapell & Voegelin, L.C. and Martin P. Sheehan, Esq., and Sheehan & Associates, PLLC and file this Response to the Motion to Dismiss filed by Philadelphia Indemnity Insurance Co.

     1.     This new Adversary Proceeding has become necessary to resolve the instant dispute over who held the right to consent to settlement under the terms of a policy of insurance.

     2.     As set forth below, what is at stake is whether or not the Bankruptcy Estate of David Levine, or David Levine personally controls the right to consent to settle under a policy of insurance that provides for consent. This is an issue of what is property of the Bankruptcy

Estate of David Levine.

3.      This issue arises "in a bankruptcy proceeding" and jurisdiction exists under *11 U.S.C. § 157(a)*. The issue specifically arises pursuant to *11 U.S.C. § 541*. As such, this case involves a core issue under *28 U.S.C. § 157(b)(2)(E)*, and an order to turn over property of the estate. It may also be a core issue under *28 U.S.C. § 157(b)(2)(A), and (O)*.

4.      PIIC has attempted to argue that the Bankruptcy Court does not have jurisdiction over this adversary proceeding, and that such a matter is not a core bankruptcy matter in reliance on *Roman Catholic Diocese of Rockville Centre v. Arrowood Indemnity Co.,* No. 21-Civ- 71 (S.D. N.Y. September 3, 2021). There the Court was considering whether an insurance company that had extended director's and officer's liability coverage to individuals could be made the subject of a bankruptcy court adversary proceeding to use such coverage as part of a potential plan in a Chapter 11 case. The District Court did not find no Court had jurisdiction. The District Court simply decided to withdraw the reference under 28 U.S.C. §1334 to be sure that jurisdiction existed somewhere. This is an odd basis on which to claim a case should be dismissed for lack of jurisdiction.

5.      The instant case is remarkably different. There are two plaintiffs with somewhat different allegations regarding standing.

6.      First, Mr. Fluharty, as the Trustee of the Bankruptcy Estate of David and Monica Levine, is attempting to verify that he, as the Levine Trustee, controls the right to consent to settlement under 11 U.S.C. § 541. There can be little doubt that what is and is not property of the bankruptcy estate is a core matter over which this Court has jurisdiction.

7.      Mr. Fluharty relies on *Olah v. Baird (In re: Baird)*, 537 F.3d 1207 (10th Cir. 2009). *Olah* is one of, and perhaps the only, case to address ownership and control of the right to consent to settlement under an insurance policy by the bankruptcy trustee of the insured. Mr.

Fluharty has made adequate factual and legal arguments to support his cause of action. It is a core issue under 28 USC 157(b)(2)(E). The motion to dismiss must be denied.

8.      Mr. Sheehan, as the Trustee of the Bankruptcy Estate of Geostellar, Inc., might ordinarily be just a third party claimant against an eroding insurance policy. Were he seeking only money, perhaps his standing would be dubious. But, in his Complaint, he claims more. He claims to also be the beneficiary of a promise to "promptly mediate" claims under the underlying policy. He identifies that promise in a document filed with this Court.

9.      Clearly Mr. Sheehan sought the promise on which he now relies to limit the erosion of a policy of insurance which contains an eroding feature. But tying his motivation merely to money understates his position. He alleges he received that promise in return for withdrawing his objection to a motion for stay relief.

10.     While the Geostellar Trustee may not have been entitled to limit erosion under the terms of the policy, the claim by the Geostellar Trustee that the promise to promptly mediate did augment the Levine Bankruptcy is sound. That promise added to the Geostellar bankruptcy estate pursuant to 11 U.S.C. § 541(a)(7) (property acquired by the Bankruptcy Estate is property of the Bankruptcy Estate).

11.     The allegation of a harm to that promise by Mr. Sheehan has a tangible quality. He was at the prompt mediation. The mediator reported that resolution of the identity of the holder of the right to consent is essential to mediation continuing. The Geostellar Trustee is apparently desirous of returning to a prompt mediation, where the rights of the participants have been clarified. Certainly, that is a good public policy. It is within the core jurisdiction of the Bankruptcy Court pursuant to 28 USC 157(b)(2)(A) (matters of administration) and (O) matters affecting liquidation.

12.     This claimed right is clearly as tangible as the right to control the attorney-client

privilege. The Supreme Court held in *Commodities Futures Trading Commission v. Weintraub,* 471 U.S. 343 (1985) that is a right controlled by the Bankruptcy Trustee.

13.     At this stage of the pleadings, on a motion to dismiss the pleadings, the allegation of the acquisition of an interest in prompt mediation is a factual allegation. As such, the truth of that allegation must be accepted. The Geostellar Trustee has plead sufficient facts. His legal position is sufficiently plausible under the rubric of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) to state a claim. The motion to dismiss must be denied.

14.     The insurance policy attached to the Complaint was originally filed by the Philadelphia Indemnity Insurance Co., (hereinafter the Insurer or PIIC) as part of a Motion for Relief from Stay discussed below. The remaining allegations are primarily legal.

15.     The Insurer originally filed a Motion for Relief from Stay in the case of Geostellar, Inc. 3:18-bk-45 (Docket Entry 159[1]). The Bankruptcy Trustee of that case, Martin P. Sheehan, (hereinafter the Geostellar Trustee) objected. (Docket Entry 163.) So too did two other persons. (Docket Entries 164 and 165).

16.     In the Motion for Relief from Stay, the Insurer sought to pay costs of providing Mr. Levine a defense in an Adversary Proceeding filed in the Geostellar case, by the Geostellar Trustee against Mr. Levine and Indeco Union, 3:19-AP-0024.

17.     The Geostellar Trustee objected that the policy was an eroding policy, that is that payments from the policy for costs of defense would reduce the net available coverage under the policy. The Geostellar Trustee desired to preserve and maximize those benefits for the Geostellar Bankruptcy Estate.

18.     The Insurer responded. (Docket Entry 172). Hearings were scheduled and

---

[1] References to Docket Entry alone shall mean the Docket Sheet of Geostellar, Inc., Case No. 3:18-bk-45. Docket Entries from other matters shall contain additional language.

rescheduled.

19.     An agreed order was tendered to the Court to resolve the objection of the Geostellar Trustee. (Docket Entry 186). That proposed order indicated that the Geostellar Trustee would withdraw his objection in return for an agreement to promptly mediate the underling dispute in AP 3:19-AP-0024.

20.     Subsequently a hearing was held. (Docket Entry 190). The proposed Agreed Order was relied upon as resolving the dispute between the Geostellar Trustee and the Insurer.

21.     Because the proposed order did not resolve the objections of the other two objecting parties, the Court reviewed all matters and issued its own Order. (Docket Entry 192) Unlike the proposed Agreed Order, the Order which was entered did not incorporate the agreement concerning prompt mediation.[2]

22.     However, the parties accepted said agreement on prompt mediation as consideration for the Trustee's withdrawal of his "objection," and consequently, mediation was scheduled before United States Magistrate Judge Aloi on the schedule in as proposed in the Agreed Order. (Docket Entry 47 in AP 3:19-AP-24).

23.     On the eve of mediation, the Geostellar Trustee became aware that Mr. Levine and PIIC took the position that the policy was a consent policy[3] and that the right to consent to settlement was held by David Levine.

24.     The Geostellar Trustee made known his disagreement with that conclusion. The Geostellar Trustee took the position that the right to consent had ceased to be personal property of David Levine, and had become property of the Bankruptcy Estate of David Levine. If the Geostellar Trustee were correct, the right to consent was now held by Thomas H. Fluharty as

---

[2] Nonetheless, the agreement to mediate was in writing and filed with the Court.
[3] In a consent policy, the insured has a right to consent to any settlement and the insurance company may not settle without such consent.

Trustee of the Bankruptcy Estate of David Levine. (See allegations in the Complaint in the Instant Adversary Proceeding at Paragraphs 22-25).

25.     Upon information and belief, Magistrate Judge Aloi reported to the Bankruptcy Court that before mediation could proceed, the identity of the holder of the right to consent to settlement needed to be determined before mediation could resume. (See Sealed Mediation Report at Docket Entry 56 of AP 3:21-AP-29).

26.     In moving to dismiss, the Insurer is now attempting to unduly limit what is property of the Bankruptcy Estate of David Levine.

27.     The definition of Property of the Estate in *11 U.S.C. § 541(a)(1)* expansively provides that a bankruptcy estate shall consist of all legal and equitable interests of the debtor in property at the time of the filing of a bankruptcy case.

28.     Mr. Levine was covered under a policy of insurance when he and his wife filed for bankruptcy relief on 8/22/20. He had been sued by the Geostellar Trustee on 5/20/19. The legal and economic rights enjoyed by Mr. Levine under that policy are what is now at issue.

29.     In *Peet v. Checkett (In re: Peet).* 529 B.R. 718 (8th Cir. BAP, 2015), *affirmed* 819 F.3d 1067 (2016), the BAP explained that while what is property is defined by reference to state law, to the extent such interests become property of the bankruptcy estate is determined at federal law. That is also the law in this jurisdiction. See *Durnal v. Borg-Warner Acceptance Corp. (In re: DeMarco),* 114 B.R. 121 (Bankr. N.D. W.Va.1990) relying on *Chicago Board of Trade v. Johnson,* 264 U.S. 1 (1924).

30.     In reaching the same conclusion later reached by the *Peet* Courts, both the BAP and the Court of Appeals for the Eighth Circuit, *DeMarco* also relied on *Greenblatt v. Ford,* 638 F.2d 14 (4th Cir.1981) *affirming In re: Ford,* 3 B.R., 559 (Bkrtcy. D. Md.1980). There the Court of Appeals said,

The trustee merely obtains and retains custody of the debtor's undivided interest consisting of the same unities, intact and unaltered, as they existed immediately prior to the filing of the petition, until such time as that interest, still intact and unaltered, is exempted from the estate under § 522(b)(2)(B) . . .

31.     In *Peet* the BAP explained that while the Bankruptcy Act defined what became property of the bankruptcy estate by transfer, the Bankruptcy Code eliminated that concept. Now, as the language of section 541 makes clear, a Bankruptcy Estate "consists" of all property held by a debtor at filing. There is no transfer. What was the debtor's property now becomes property of the estate. The property is unchanged in this shift.

32.     Contingent rights are property of the Bankruptcy Estate. *In re: Neuton*, 922 F.2d 1379 (9th Cir. 1990).

33.     Rights under insurance policies are property of the Bankruptcy Estate. *In re Estate of Leelock v. Prudential Ins. Co. of America,* 811 F.2d 186 (3rd Cir. 1987). *See also, In re: St. Clare's Hospital and Health Center,* 934 F.15 (2nd Cir. 1991).

34.     More specifically, whatever argument may be made about whether the right to consent is a property right has been addressed in *Olah v. Baird (In re: Baird),* 537 F.3d 1207 (10th Cir. 2009). This case, the apparent only case on this issue, holds that the consent rights under a consent policy are property of a Debtor's estate and not property of a Debtor.[4]

35.     To prevail on a motion to dismiss, the Insurer needs to show there are no circumstances where the Levine Trustee does not hold the right to consent as an asset of the Bankruptcy Estate. The lack of a tangible economic interest is not the standard for what is

---

[4] While recognizing that this is not a binding decision as it is not a decision of the United States Court of Appeals for the Fourth Circuit, this decision comes from an appellate court.

The Plaintiffs are aware that the Insurer suggests there are some policy differences between the instant policy and the policy in *Olah*, and that may be true. But *Olah* remains compelling precedent that "consent rights" under insurance policies are property of the Bankruptcy Estate.

property of the bankruptcy estate. For example, in *Commodity Futures Trading Corp. v. Weintraub,* 471 U.S. 343 (1985), the Supreme Court unanimously held that the corporate attorney-client privilege was property controlled by the Bankruptcy Estate.

36.      Likewise, the Insurer needs to show there is no impact on the post-petition promise to mediate given to the Geostellar Trustee. That promise is property of the Geostellar Bankruptcy Estate pursuant to *11 U.S.C. § 541(a)(7).* Given the report of Magistrate Aloi that mediation cannot proceed without such a determination, that seems a futile claim.

37.      Under *11 U.S.C. § 704(a)(1)* a Chapter 7 Trustee is obligated to reduce assets of a bankruptcy estate to cash, and to distribute that case as "expeditiously" as possible. The United States Court of Appeals for the Fourth Circuit indicated in *In re: Hutchinson*, 5 F.3d 750 1993) that promptness was a Trustee's primary responsibility.

38.      The Insurer agreed with the Geostellar Trustee to engage in prompt mediation.

39.      That agreement is being undercut by the interposition of what the Trustees perceive to be an unwarranted legal position regarding ownership of the right to consent and that position is now interfering with mediation.

40.      In the last few weeks, the United States Supreme Court held in *Alabama Association of Realtors v. Department of Health and Human Services,* Case No. 21A23 (August 26, 2021), that the Realtor Associations and Property Managers in Alabama and Georgia were entitled to an injunction against a moratorium issued by the Center for Disease Control free of a stay. The Court noted that the harm to landlords was increasing.  They were unable to proceed to eviction. This increase in harm was dependent not on money issues but on the nature of the relationship between tenants and landlords. Freezing the inability to evict persons who had not paid rent changed that relationship. Slip op. at 7. The Court specifically held the interests were "not merely financial." Slip op. at 6.

41.     Alternatively, to the extent that PIIC argues that this cases is merely about money and money cannot amount to irreparable harm, Justice Breyer, dissenting in *Association of Realtors*, characterized the holding of the majority as that losing rent money can amount to irreparable harm. *5.

42.     That old chestnut about money and irreparable harm does not apply where the fund at issue is decidedly limited.  *In re Netia Holdings S.A.,* 278 B.R. 344 (SD NY 2002), applies the exception to the "rule." Debtors established  requisite irreparable harm from dissipation of their limited assets, together with likelihood of success on, or serious questions going to, merits, that preliminary injunction would issue to preserve the status quo.

43.     Further regarding the Motion to Dismiss (MTD) argument about irreparable injury, this adversary proceeding is not merely about money. It is about something more subtle: the control of a right to consent to settle under an insurance policy. That right might lead to money, it is true. But the right to evict a tenant is about the balance of the landlord-tenant relationship in *Association of Realtors* The real threat of eviction may cause tenants to pay rent, but the property interest in the right to evict is not simply a matter of money. At its essence, it is about the nature of the relationship.

44.     Regarding the MTD argument about lack of standing, if the consent rights are property of the Bankruptcy Estate of Levine, as *Olah* holds, the Levine Trustee has those rights. The rights are not inherently personal, such as a license to practice medicine. The consent rights are not even shared with Mr. Levine. The consent rights are actually of no economic value to Mr. Levine although those rights may be valuable to the Levine Bankruptcy Estate.

45.     PIIC seems to believe that *Olah,* is some sort of outlier. *The Restatement* puts *Olah* in context, noting that its holding on assignment represents the majority rule, not followed by but a few jurisdictions.  *Restatement of the Law of Liability Insurance* § 37 PFD No. 1 (2017)

The authoritative *Couch on Insurance 3d* states in confirmation to *Olah* that "Bankruptcy is significant to the assignment of insurance contracts in several respects, most prominently: (1) possibly operating as an assignment by operation of law to make an involuntary transfer of the insured's policy to his or her trustee in bankruptcy," § 35:23 *citing Jennings v. Prudential Ins. Co.* 402 So.2d 1367 (Fl. Dist. Ct. App., 1981). *See also Section 35:25*, that "[t]he trustee in bankruptcy is entitled to any rights which have accrued under the policy to the insured…."

46.     Mr. Levine has a discharge. He can no longer be held personally financially accountable for a judgment rendered against him in the Adversary Proceeding brought by the Geostellar Trustee.

47.     The Adversary Proceeding filed by the Geostellar Trustee continues to vindicate the rights of the Geostellar Trustee under *Anderson v. Robinson,* 186 W.Va. 92, 411 S.E.2d 35 (1991). There the West Virginia Supreme Court held that the bankruptcy of a tortfeasor should not and did not create a windfall for an insurance company. Consistent with the policy, the limits of the policy would remain available to a Plaintiff/Tort Victim.

48.     It is not Mr. Levine who is at risk.  It is the Insurer. The Insurer may defend on the grounds Mr. Levine did not commit a tort, and on the grounds that if he did commit a tort, it is not tort for which policy provides coverage. Absent such a showing, the Insurer would pay.

49.     Recognizing that the Levine Trustee controls the consent rights is also of economic value to the Levine Trustee. This requires reflection on the relationship of the two Bankruptcy Estates.

50.     The Geostellar Trustee has done more than sue Mr. Levine. The Geostellar Trustee has also filed a proof of claim against the Levine Bankruptcy Estate.  Note that when Judge Flatley stated that certain claims in the previous complaint were arbitrable, he stayed that ruling to see what claims were filed.  The filing of said claim against the Levine estate by the

Geostellar estate further illustrates why Judge Flatley's order is now moot.  This is particularly true since the Amended Complaint filed in the "underlying" suit in no way relies upon the employment contract of Geostellar with Levine.  This Court recognized that in granting leave to Trustee Sheehan to file said Amended Complaint.

51.     In filing a proof of claim, the Geostellar Trustee has retained the ability to seek a recovery beyond, or perhaps outside, the policy and the limits of that policy against the Levine Estate.

52.     Those issues are not strictly before the Bankruptcy Court in the Adversary Proceeding brought by the Geostellar Trustee against David Levine, because the Levine Trustee is not participating in the Adversary Proceeding. The Adversary Proceeding has been effectively limited to recovery of insurance, if any. The claim of the Geostellar Trustee against the Levine Estate will be separately resolved in the claims adjudication process for claims in the Levine Bankruptcy.

53.     The Levine Trustee thus has an economic interest in causing a resolution of the underlying Adversary Proceeding against Levine in such a manner as would also resolve the claim of the Geostellar Trustee against the Levine Estate.

54.     It is not difficult to imagine, for example, that the Levine Trustee would be willing to consent to settle the Adversary Proceeding against Levine for full policy limits, so long as the Geostellar Trustee would agree to withdraw or otherwise limit a claim against the Levine Estate. *See Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990)(insurer may be liable beyond policy limits in certain circumstances)

55.     A contrary conclusion, that Mr. Levine personally holds the consent rights, would permit him to act out of mischief or spite. Without any economic interest at stake, Mr. Levine could withhold consent randomly or in bad faith. This result would provide a poor, and irrational,

policy choice at odds with the language of *Section 541*. It would also frustrate the well-articulated and universal public policy, on both the state and federal level, of encouraging settlements of legal claims. "The law strongly favors settlements*." Vaughns v. Bd. of Educ. of Prince George's Cty.,* 18 F.Supp.2d 569, 578 (D.Md.1998).   The "law encourages settlements,"*Bragg v. Robertson*, 54 F.Supp.2d 653, 660 (S.D.W.Va.1999)(Haden, C.J.)(citing *United States v. State of North Carolina,* 180 F.3d 574, 581 (4th Cir.1999), "[T]he general policy of the law… favors settlements." *Equal Emp. Opportunity Commission v. Gen. Elec. Co.,* 532 F.2d 359, 379 (4th Cir. 1976)(Widener, J., dissenting).

56.     As noted, the Geostellar Trustee had obtained a promise from the Insurer to "promptly mediate." The Insurer does not have to agree to settle or pay, but it needs to mediate. It needs to do so in good faith. *W.Va. Code § 33-11-4(9), "Unfair Claims Settlement Practices."*

57.     Asserting that David Levine and not the Levine Trustee controls the right to consent, equates to not mediating. It asserts an unwarranted impediment, particularly in light of *Olah.*

58.     While there may be no direct right of action against the Insurer by the Geostellar Trustee, victims of a tortfeasor often intervene in disputes between an insured and its carrier. *See N. River Ins. Co. v. O&G Industries, Inc.,* 315 F.R.D. 1, 6 (D.Conn. 2016), where the court granted victims of explosion the right to intervene under *FedRCivP 24* in dispute between insurance company and tortfeasor over coverage. In any event, Trustee Fluharty, is the owner of the insurance policy in question, and has no impediment to bringing this "first-party" claim against the insurance carrier, and is why he joined as plaintiff to the present action.

59.     PIIC relies heavily upon *Allied Digital Technologies Corp*., 306 BR 505, 512-513 (Bank D. Del 2004). It reflects the axiom  that the holding of the case, unlike a court's comments, are central to the case, and that holding can only be understood in light of the

procedural posture of the case at the time: "the case is controlled by the language and scope of the policy at issue not by broad general statements." 306 B.R. at 509.    PIIC quotes "broad, general statements" that that court made,  contrary to *Allied Digital* and *United States v. Texas E. Transm. Corp.*, 923 F.2d 410 (5th Cir. 1991)("the facts and procedural posture of each case are important, and it is often true that 'general rules and past decisions cannot provide uniformly dependable guides.'" *Id.* at 412).

60.    Signal differences appear between this situation and *Allied Digital*.  There is no sign there that the Estate paid for the policy, nor that it belongs to the Estate.  The West Virginia Supreme Court of Appeals pointed to the importance of this factor in a fairly recent case, not cited by PIIC.

> It is fundamentally unfair to hold that when Mr. Thomas Loudin filed his administrative claim with National, he was not owed a duty of good faith and fair dealing in resolving that claim as a first-party claimant. Such an outcome essentially treats Mr. Thomas Loudin as a nonpremium paying claimant seeking coverage under a third-party's policy, when he, in fact, **paid the premiums for the policy in question.**

*Loudin v. Natl. Liab. & Fire Ins. Co*., 228 W.Va. 34, 41, 716 S.E.2d 696, 703 (2011)(emphasis supplied)

61.    PIIC maintains that Levine has remaining exposure in that allegations in the original complaint could result in damages that are not dischargeable in bankruptcy.  This is balder dash.  The discharge eliminates the claim again Mr. Levine personally.

62.    To state the argument also shows that it ignores the amendment.  The allegations of the amended complaint do not state claims that are non-dischargeable but rather claims of breach of fiduciary duty, Count I; negligence Count II; Constructive Fraud, Count III; and violation of the Uniform Trade Secrets Act, Count IV, that have been discharged.

63.    At this time no allegation of a violation of W.Va. Code § 33-4-9 has been, or is being made. But plaintiffs believe that both plaintiffs, or at least Trustee Fluharty reserve the

right to pursue such a claim, if necessary, and depending on the carrier's continuing obstruction of the Trustee's duties in seeking resolution of the "underling case" on the merits, including by unwarranted interference with the Trustees' duties to administer their respective estates.

64.     Both the Levine Trustee and the Geostellar Trustee have stated a cause of action.

WHEREFORE THE PLAINTIFFS ASK THAT THE MOTION TO DISMISS BE DENIED AND FOR OTHER APPROPRIATE RELIEF.


Respectfully submitted,


s/ Thomas H. Fluharty
Thomas H. Fluharty, Esq.
WV Bar No.: 1231
408 Lee Avenue
Clarksburg, WV 26301
(304) 624-7832
THFAAL@aol.com
*for the Trustee of the Bankruptcy Estate*
*Of David Levine and Monica Levine*


s/ Timothy F. Cogan
Patrick S. Cassidy, Esq.
(WV State Bar No. 671)
Timothy F. Cogan, Esq.
(WV State Bar No. 764)
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L. C.
The First State Capitol
1413 Eoff Street
Wheeling, WV 26003
P: (304) 232-8100
F: (304) 232-8200
pcassidy@walslaw.com
tfc@walslaw.com
*for the Trustee of the Bankruptcy Estate*
*of Geostellar, Inc.*

Martin P. Sheehan, Esq.
WV State Bar No. 4812
SHEEHAN & ASSOCIATES, PLLC
1 Community Street, Ste 200
Wheeling, WV  26003
P:  (304) 232-1064
F:  (304) 232-1066
sheehanparalegal@wvdsl.net

## CERTIFICATE OF SERVICE

Service of the foregoing was had upon the parties by electronic notification send via the

Court's CM/ECF system this 1st day of October, 2021 on Brian Blickerstaff at

bblickerstaff@turnerjohns.com and Debra Varner at dtvarner@vv-wvlaw.com

s/ Timothy F. Cogan

{00189015.1}                                                    16