IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:  GEOSTELLAR, INC.                         BK. NO. 3:18-BK-0045

MARTIN P. SHEEHAN, Trustee of
the Bankruptcy Estate of Geostellar, Inc.,
                                                  CIVIL NO. 3:19-AP-00024
         Plaintiff,

v.

DAVID A. LEVINE, and
INDECO UNION, a Delaware Corporation,

         Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND STRIKE**

NOW COMES Plaintiff Martin P. Sheehan, by his counsel Patrick S. Cassidy and Timothy F. Cogan and CASSIDY, COGAN, SHAPELL & VOEGELIN, L.C. and respectfully submits his response to Defendants' Motion to Dismiss and Strike and its accompanying Memorandum in Support, as follows.

INTRODUCTION

Defendants Levine and Indeco Union have moved (ECF Doc. 8, 8-1) to dismiss and strike.

Their introduction focuses heavily on two arguments, first that an arbitration clause in a document that Defendant Levine wrote requires arbitration of all claims. The second is that a forum selection clause requires that such claims be raised in Delaware. However, the body of the memo, Doc. 8-1, raises additional bases to dismiss.

Defendants give lip-service to the doctrine that all well-pled facts are construed in favor of the opponent to the MTD. The memo for example and without citation states that "APL was

{00172377.1}

created to develop cryptocurrency backed by a wide variety of assets." Doc. 8-1, p. 5, presumably to attempt to rebut Plaintiff's specific allegations of fraud as hereinafter set out.

Containing 61 paragraphs, the complaint includes a wealth of facts and needs no "factual enhancement," see 8-1 p. 9, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(addl. cits. omitted) prior to discovery. The specifically-detailed complaint raises the following claims:

   a. Fraud ¶¶ 32, 33, 35, 42;

   b. Breach of fiduciary duties ¶¶ 17, 25, 35, 37, 42, 45, 53, 61;

   c. Civil conspiracy ¶¶ 42, 53, 57, 59; and

   d. Breach of employment contract ¶¶ 18, 21, 42, 45, 61.

The motion to strike claims a lack of standing. The Employment Agreement sends to arbitration claims **arising from or relating to** the enforcement, breach, performance, or interpretation of this Agreement, the Executive's employment, or the termination of the Executive's employment, 7.11. This covers the breach of contract claim only.

The Assignment of Inventions agreement sends to Delaware only **any issue or dispute arising** under the Assignment of Inventions Agreement." 7.11 at 12.

The fraud, breach of fiduciary duties claims, and civil conspiracy claims neither arise from those agreements, nor do they fall into any of those categories. Accordingly, they may proceed in this Court.

As to the employment agreement claim, which incorporates the "Assignment of Inventions Agreement," this Court may in its discretion retain this claim for resolution in this court as well; and not require referral for arbitration, upon the authority of *Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir.2015)(per curiam).

In a fractured decision in *Moses*, the Fourth Circuit announced a general rule, "that bankruptcy courts *generally* have no discretion to refuse to arbitrate a non-core claim." 781 F.3d at 83 (emphasis in original). However, the Court found it was correct for the court <u>not to refer to arbitration</u> a "core" claim.

Defendant Levine here filed a claim against the bankrupt estate for wages, and accordingly, Geosteller's employment claim may be considered a "counterclaim" and thus constitutes a "core" proceeding not susceptible to "arbitration." As Judge Davis also stated in *Moses* in a concurring and dissenting opinion, the Bankruptcy Court has substantial discretion "where arbitration would 'substantially interfere[]with the debtor's efforts to reorganize'….[which] occurs when the resolution of the claim will necessarily affect reorganization in a significant way, and arbitration will thus inherently conflict with the purposes of the Bankruptcy Code." *Id.* at 85 (citing *Phillips* 403 F.at 370, also known as *In re White Mountain Mining, L.L.C.,* 403 F.3d 164 (4th Cir 2005)). There both the core and adversary proceedings "presented issues that were 'critical to [White Mountain's] ability to formulate a plan or reorganization' and therefore trumped the arbitration." *Moses*, 781 F.3d at 93.

### REGARDING LEVINE'S EMPLOYMENT CONTRACT CLAIM

While an employment agreement existed when Levine was CEO and chairman of the BOD, his employment contract related to his service as the Chief Executive Officer of Geostellar, Inc. (<u>See</u> Ex. A. to the Complaint at Paragraph 1.2).

Nothing in that contract pertains to Mr. Levine's former service as a director, or his former service as Chairman of the Board of Directors. Mr. Levine held the position of director as a result of having voted shares he owned in Geostellar, Inc., for himself. His position as Chairman of the Board was a consequence of voting by members of the Board.

Mr. Levine purports to have terminated all of these positions, on different dates, prior to filing Geostellar, Inc., having filed for bankruptcy relief. Still he appears to have continued to be involved with Geostellar, Inc. post-petition. He appeared as the representative of Geostellar, Inc., at both the meeting of creditors held in the Chapter 11 case and at the meeting of creditors following conversion to Chapter 7.

Neither the employment agreement, nor the arbitration clause have applicability to Mr. Levine's conduct as a member of the board, as Chairman of the Board, as a "post-petition volunteer," or as the owner/sponsor of a competitor. Nor is there a claim of an independent right to arbitration by Indeco Union.

The employment arbitration clause excludes issues or disputes arising under the Assignment of Inventions Agreement: "Notwithstanding anything herein to the contrary, the provision of this Section 7.11 shall not apply to any issue or dispute arising under the Assignment of Inventions Agreement." 7.11 at 12.  The assignment of inventions agreement intends that any "invention of an employee, Levine, to become property of Geostellar, Inc.

The employment agreement refers to the "Assignment of Inventions Agreement" as "Exhibit A – Geostellar, Inc. Employee Proprietary Information, Inventions, Non-solicitation and Non-Competition Agreement." Sections 2.1-2.7 are titled "Assignment of Inventions." Ex. A to the Employee Agreement, ¶ 3 at 4.  As the "Assignment of Inventions Agreement" is incorporated into Levine's contract of employment, the forum issue of Delaware is related to the same claim (employment contract claim) that may require arbitration, but for the court's analysis in *Moses.*

There is no dispute in Plaintiff's Complaint about the Assignment of Inventions Agreement. Plaintiff's claims of fraud, civil conspiracy, and breach of fiduciary duties neither

arise from this agreement, nor are they dependent upon it, as they allege separate and independent torts as further defined hereinafter.

Defendants address the exclusion from arbitration language of the Assignment of Inventions Agreement only to argue that the forum selection clause bars this Court's consideration of Plaintiff's claims. 8-1, pp. 6-7. But having failed to undertake additional arguments on scope of that exclusion in their opening brief, *Id.*, Defendants have waived any such arguments which cannot be raised for the first time in a reply brief.

> Under the decisions of this and the majority of circuits, an issue first argued in a reply brief is not properly before a court of appeals. See *Hunt v. Nuth,* 57 F.3d 1327, 1338 (4th Cir.1995) (citing *United States v. Caicedo–Llanos,* 960 F.2d 158, 164 (D.C.Cir.1992)), cert. denied, 516 U.S. 1054, 116 S.Ct. 724, 133 L.Ed.2d 676 (1996); 9 James Wm. Moore, Moore's Federal Practice ¶ 228.02[2–3] (1995) ("The case law is to the effect that the appellant cannot raise new issues in a reply brief...."). That the question was raised in the district court is immaterial. The Cavallos' omission of the issue from their initial brief denied Star an opportunity to respond, so considering it now "would be unfair to the appellee and would risk an improvident or ill-advised opinion on the legal issues raised." *Hunt,* 57 F.3d at 1338.

*Cavallo v. Star Enter.,* 100 F.3d 1150, 1152 (4th Cir. 1996).

See also *Buffington v. Baltimore County,* 913 F.2d 113, 121 (4th Cir 1990)(federal civil rights claim)(a party should raise all issues that it wants considered in his or her initial brief; "an error…should not be asserted for the first time in the reply brief"). Plaintiff Geostellar would not have any opportunity to respond to such "sandbagging."

The employment agreement sends to arbitration only those claims **arising from or relating to** the enforcement, breach, performance, or interpretation of the Agreement, the Executive's employment, or the termination of the Executive's employment, 7.11. This only covers the breach of contract claim alleged by Geostellar herein.

Assignment of Inventions agreement (made part of the employment agreement) sends to Delaware **any issue or dispute arising** under the Assignment of Inventions Agreement. 7.11 at 12.

The fraud, breach of fiduciary duties claims, and civil conspiracy do not fall into either of these categories.

First, they clearly do not arise under the Assignment of Inventions Agreement.

As to the Employment agreement, the fraud claim neither arises nor relates to his performance as Executive. His actions were not within the scope of his duties but contrary to the duties imposed upon anyone not to misrepresent, see *infra*.

The breach of fiduciary duties claims do not arise or relate to his duties as executive. They arise from his duties to the corporation as a member of the board.

The civil conspiracy claims against Levine and Indeco arise from the "fraud" claim, and do not otherwise fall into either category and can be resolved here. Defendant Levine was not functioning as "the executive" when Levine conspired with Indeco, by creating it to harm Geostellar.

The fraud, breach of fiduciary duties and civil conspiracy claims are properly brought in this Court.

## REGARDING DEFENDANT INDECO

While Defendants argues that the claims against Indeco are barred because they are inextricably intertwined with claims against Levine, plaintiffs have demonstrated that, if applicable, this argument should be extended no further than to the question of Plaintiff's employment contract breach claim against Levine, and its incorporated Assignment of Inventions Agreement. There is no bar to Indeco being required to defend Plaintiff's allegations arising

from "civil conspiracy" and any other independent torts not arising from either agreement.

Defendants blur the issues by first arguing exclusion from arbitration, for example, issues arising from the Assignment of Inventions Agreement, ignoring the selection by the parties of West Virginia law as applicable to the employment contract, but then seek to bootstrap that into an argument that Delaware is the proper forum for all claims. (Doc. 8-1 at p. 3, citing Compl. Ex. A at 11-12, though the "Assignment of Inventions Agreement" states that Delaware law applies to it at 12.1).  Since Defendants make no claim that the choice of law clause in the employment agreement is ineffective, West Virginia law should apply to Plaintiff's employment law claim, and Defendants have waived any claim that it does not apply.

### EVEN IF THE FORUM SELECTION CLAUSE APPLIES TO THE EMPLOYMENT CONTRACT CLAIM, THE CLAUSE MAY BE DEEMED BY THIS COURT AS UNENFORCEABLE UNDER THE DOCTRINE OF *"FORUM NON CONVENIENS"*

While containing the word "exclusively," the forum selection clause does not, as some mandatory clauses do, waive *forum non conveniens*, it is thereby "less mandatory."  See *Vault, LLC v. Dell Inc.*, 2019 WL 113726, *3 (Jan. 4, 2019), where the clause "waive[d] any objection to venue or convenience of forum." Therefore the burden remains on defendant under *BAE, infra*.

> In the typical case, the defendant invoking *forum non conveniens* "bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 549 U.S. 422, 430…(2007). In particular, the defendant must prove that an alternative forum is available, adequate, and more convenient (in light of the public and private interests involved) than the forum selected by the plaintiff. *See DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 800–01 (4th Cir. 2013).

*BAE Systems Technology Sol. & Services, Inc. v. Republic of Korea's Defense Acquisition Program Administration*, 884 F.3d 463, 470–71 (4th Cir.2018), as amended (Mar. 27, 2018), cert. denied sub nom. *Republic of Korea's Defense Acquisition Program Admin. v. BAE Systems Sol. & Services, Inc.,* 139 S.Ct. 209(2018).

Assuming *arguendo* that the forum selection clause is mandatory, Plaintiff bears a burden of showing that the forum selection clause should not be enforced, but *BAE* indicates that this is not a heavy burden, for it contrasts the heavy burden a Defendant bears for a permissive forum selection clause and that a Plaintiff bears under a mandatory clause.

> that framework is modified, the *Atlantic Marine* Court explained, in the context of a valid forum selection clause. Most importantly, a forum selection clause reverses the presumptions that would otherwise apply: instead of heavily favoring the plaintiff's chosen forum and placing the burden on the defendant, the forum selection clause is "given controlling weight in all but the most exceptional cases," and the plaintiff bears the burden of proving why it should not be enforced.

*BAE Systems* 884 F.3d at 471.

Defendants provide no analysis of its claim, Doc. 8-1 at p. 8, fully ignoring that the forum of Delaware is unreasonable.

Showing that Wilmington, Delaware provides an inconvenient forum for claims under the "Assignment of Inventions Agreement" are the following:

1. Since Bankruptcy was filed in this district, the Court here is familiar with the company (and its arcane, changed focus, cryptocurrency); a Delaware court would spend additional time familiarizing itself with the bankruptcy. Such public interests provide particular fuel, *Vault, LLC v. Dell Inc.,* 2019 WL 113726, *4 (M.D.N.C. Jan. 4, 2019).

2. The papers and records reside here at the main office of Geostellar, Inc., except to the extent that they are now in the office of the trustee, in Wheeling, West Virginia.

3. Since the work of Geostellar was focused around its home office in terms of solar installations, witnesses regarding that would be expected to be much closer to this point of holding court than Delaware.

4. The forum selection clause, even if mandatory, is not global as to claims involving Levine and Geostellar; it refers only to claims brought under the "Assignment of Inventions Agreement".

5. The arbitration designation, to the extent it affects <u>any</u> claim in this this proceeding, is in this district, reflecting Levine's agreement that claims should be conveniently resolved here.

6. The Assignment of Inventions Agreement, even if mandatory, does not specify the bankruptcy context in which this litigation arises.

7. The trustee's office is in this forum and costs to the estate would increase if the matter is transferred to Delaware, and those costs would increase even more if some of it were transferred. *E & I Holdings, LLC v. Bellmari Trading USA, Inc.,* 2018 WL 6173884, *2 (S.D. W.Va.Nov. 26, 2018)(refusing to sever the claims).

## THE FRAUD CLAIM IS AN INDEPENDENT TORT NOT DEPENDENT ON PLAINTIFF'S CONTRACT BREACH CLAIM

Directors who appropriate assets are guilty of fraud in law. *Chounis v. Laing*, 125 W.Va. 275, 23 S.E.2d 628 (1942), Syl Pt 3 (in part).

The West Virginia Supreme Court of Appeals, after setting forth elements of the tort, turned its focus upon its intentional aspect:

> Perhaps more instructive to the resolution of this issue is our acknowledgment that " 'an action for fraud can arise by the concealment of truth.' " *Teter* [*v Old Colony*] 190 W.Va.[711] at 717, 441 S.E.2d [728] at 734 [1994] (quoting *Thacker v. Tyree,* 171 W.Va. 110, 113, 297 S.E.2d 885, 888 (1982)). Such a basis for a claim of fraud is possible because "[f]raud is the concealment of the truth, just as much as it is the utterance of a falsehood." *Frazier v. Brewer,* 52 W.Va. 306, 310, 43 S.E. 110, 111 (1902). *See also Van Deusen v. Snead,* 247 Va. 324, 328, 441 S.E.2d 207, 209 (1994) ("'[C]oncealment always involves deliberate nondisclosure designed to prevent another from learning the truth. A ... party's willful nondisclosure of a material fact that he knows is

unknown to the other party may evince an intent to practice actual fraud.' (quoting *Spence v. Griffin,* 236 Va. 21, 28, 372 S.E.2d 595, 598–99 (1988))).

*Kessel v. Leavitt,* 204 W.Va. 95, 127–28, 511 S.E.2d 720, 752–53 (1998). The lead case, *Kessell* did cite the case cited by Defendants, *Lengyel v Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981), cited at 8-1, p. 9, though without noting that *Lengyel* reversed summary judgment in favor of defendants. *Kessel* stressed that the plaintiff need not preface every action with "fraudulently."

The U.S. Supreme Court also broadly defined "fraud." It focused upon fraud's intentional aspect, there in the bankruptcy context:

> "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Neal v. Clark,* 95 U.S. 704, 709… (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Ibid.* Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."
>
> Although "fraud" connotes deception or trickery generally, the term is difficult to define more precisely. See 1 J. Story, Commentaries on Equity Jurisprudence § 189, p. 221 (6th ed. 1853) (Story) ("Fraud ... being so various in its nature, and so extensive in its application to human concerns, it would be difficult to enumerate all the instances in which Courts of Equity will grant relief under this head"). There is no need to adopt a definition for all times and all circumstances.

*Husky Intern. Elecs., Inc. v. Ritz,* 136 S.Ct. 1581, 1586–87 (2016).

The complaint clearly articulates this "scienter." The complaint states, *inter alia,*

On or about August 11, 2017, David A. Levine caused the filing of a form C, as required by 17 C.F.R. § 227.100, et seq., with the Securities and Exchange Commission in connection with efforts to obtain Crowdfunding for Geostellar, Inc. ¶ 29.

As part of that form, it was represented that Geostellar, Inc., was developing a cryptocurrency. ¶ 30.

This supplies the beginning stages of several aspects of the fraud.

The complaint alleges further,

   a. Levine misrepresented the relationship between of a cryptocurrency as an "asset,"

      in this context, as a "watt of solar power," and did so in a presentation on 9/21/17

      to the Geostellar BOD, ¶ 31-33.

   b. Levine formed APL ¶¶ 35, 36, 37 and Indeco to compete with Geostellar, and which did compete with Geostellar. For example Form C regarding APL used the name –Zydeco– that Geostellar was going to develop, ¶ 38.

   c. Levine falsely alleged, *inter alia,* that APL had an arrangement with Geostellar, ¶ 36, such that it would,

> leverage the capabilities of Geostellar's solar energy platform through a master license agreement" when no such arrangement existed sufficient "to cause Geostellar to supply intellectual property to APL or to Indecco.

*Id.*

    Ignoring all this, Defendants argue that a failure to identify another document accompanying the presentation, set forth in detail, constitutes a failure to state "with particularity the circumstances constituting fraud," *FedR.Civ.P. 9(b).* Levine falsely represented by a presentation, supported at least in part by a document, that Geostellar would develop a cryptocurrency with intrinsic value because it was related to a "watt of solar power" (Zydeco). Complaint ¶¶ 31-33. Defendants cite no authority for the proposition that such a document need be identified or provided and have waived any further specificity.

    Thus looking at this specific falsity, we have the who and where (to the BOD), the what (false presentation), and the how (by presentation to the BOD).

<u>Defendants Fail To Demonstrate That The "Gist Of The Action" Theory Bars This Claim Or That Of Breach Of Fiduciary Duty</u>

Defendants erroneously claim that all the claims are based upon contract. Doc. 8-1, p. 2.

Defendants' rely upon a "gist of the action" theory, citing a per curiam case, *Gadd*y (not so described by Defendants, <u>see</u> p. 12).

In seeking to prevent the recasting of a contract claim as a tort claim, courts often apply the "gist of the action" doctrine. Under this doctrine, recovery in tort will be barred when any of the following factors is demonstrated:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.
>
> *Star v. Rosenthal,* 884 F.Supp.2d 319, 328–29 (E.D.Pa.2012); *accord Backwater Props., LLC v. Range Resources–Appalachia, LLC,* No. 1:10CV103, 2011 WL 1706521 at *6 (N.D.W.Va.2011) (recognizing that "[u]nder the 'gist of the action' doctrine, a tort claim arising from a breach of contract may be pursued only if the action in tort would arise independent of the existence of the contract") (internal citations omitted and quoting Syl. Pt. 9, in part, *Lockhart v. Airco Heating & Cooling, Inc.,* 211 W.Va. 609, 567 S.E.2d 619 (2002)); *Cochran v. Appalachian Power Co.,* 162 W.Va. 86, 92–93, 246 S.E.2d 624, 628 (1978) (stating that "where the gist of the action is the breach of contract ... additional averments ... will not convert the cause of action into one for tort") (quoting 1 Am. Jur. 2d *Actions* § 8 (1962)).

*Gaddy Eng. Co. v. Bowles Rice McDavid Graff & Love, LLP,* 231 W.Va. 577, W.Va.586, 746 S.E.2d 568, 577 (2013)(per curiam).

<u>Defendants Cannot Show That Liability Arises Solely From The Contract</u>

Regarding fraud, even if Geostellar had no written agreement with Levine, he would nonetheless be liable to it. As the district court explained, Weckesser's claims "do not depend on any provision" of that agreement. *Weckesser v. Knight Enterprises S.E., LLC,* 735 Fed.Appx. 816, 823 (4th Cir.2018)*(*citing *Weckesser v. Knight Enters. S.E., LLC*, 228 F.Supp.3d 561, 567 (D.S.C. 2017).

This contrasts with *Gaddy*, where the entire liability derived from an agreement between the parties.

Regarding BFD, even absent any agreements, Levine's status as CEO and Board member (not to say as its chair) owed a fiduciary duty to Geostellar.

### Defendants Have Not Shown That Duties Breached Came From The Contract

Levine's duties come not from the employment agreement but from his status, like the commissioner of employment programs. The Supreme Court of Appeals stated:

> This Court agrees with the petitioner that the Commissioner has a fiduciary obligation to maintain the workers' compensation fund. We have not hesitated on prior occasions to recognize the fiduciary obligation of officers who oversee state funds set up for the benefit of designated classes of individuals.

*State ex rel. Affiliated Const. Trades Found. v. Vieweg,* 205 W.Va. 687, 693, 520 S.E.2d 854, 860 (1999)(per curiam).

### Defendants Have Little Discharged Their Burden to Demonstrate That All Liability Comes From The Contract

Officers and directors of a corporation occupying a fiduciary relationship *Masinter v. WEBCO Co.*, 164 W.Va. 241, 247–48, 262 S.E.2d 433, 438 (1980)(there specifically to minority shareholders)(cits omitted); *Felsenheld v. Tobacco Co.*, 119 W.Va. 167, 192 S.E. 545; *Staker v. Reese*, 82 W.Va. 764, 97 S.E. 641).

### Defendants Have Not Shown That The Tort Claim, In The Language Of *Gaddy,* Simply Rephrases The Contract Duties

"An action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract." *Lockhart v. Airco Heating & Cooling, Inc.,* 211 W.Va. 609, 614, 567 S.E.2d 619, 624 (2002)(citing 86 C.J.S. *Torts* § 4 (1997). In *Lockhart*, Plaintiff tried to use contract language to show that a heating company assumed special duties to ensure that a customer was not damaged by its actions.  Here the duty arises elsewhere.  E.g. *Masinter.* That a contract also imposes such duties does not extinguish the common law duty arising from the relationship of the parties. "Tort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." *Lockhart at Id.* Again it is here Levine's relationship to Geostellar by virtue of the several positions he held. See

{00172377.1}                                  13

*Good v. Am. Water Works Co., Inc.*, 2016 WL 5441035 (S.D.W.Va.Sept. 27, 2016)(the Supreme Court of Appeals of West Virginia has explicitly distinguished instances in which the gist of the action doctrine governs all claims from those in which tort duties are also at stake, at 7).

### THE CIVIL CONSPIRACY CLAIM, LIKE THE FRAUD CLAIM, ARISES FROM INDEPENDENT FRAUD, AND NOT FROM THE "CONTRACT"

Allegations are clearly set forth at ¶¶ 42, 53, 57, 59.

Defendants erroneously claim that Geostellar has failed to allege an underlying tort. Doc. 8-1, p. 14.

The Supreme Court of Appeals observed that fraud, *supra*, is often accompanied by civil conspiracy, at least in allegation.

> In framing his cause of action for fraud, John also has alleged that the defendants' fraudulent conduct constituted a civil conspiracy. The law of this State recognizes a cause of action sounding in civil conspiracy. At its most fundamental level, a "civil conspiracy" is "a combination to commit a tort." *State ex rel. Myers v. Wood,* 154 W.Va. 431, 442, 175 S.E.2d 637, 645 (1970) (citing 15A C.J.S. *Conspiracy* § 1 (1967)). In *Dixon v. **754 *129 American Indus. Leasing Co.,* 162 W.Va. 832, 834, 253 S.E.2d 150, 152 (1979), we provided a more detailed definition of this theory of liability:
>
>> [A] civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.
>
> (Citing 15A C.J.S. *Conspiracy* § 1(1) and 16 Am.Jur.2d *Conspiracy* § 44). Given the tort-based liability of participants in a civil conspiracy, a plaintiff can maintain such a claim provided he/she satisfies the enumerated standard: "In order for civil conspiracy to be actionable it must be proved that the defendants have committed some wrongful act or have committed a lawful act in an unlawful manner to the injury of the plaintiff[.]" Syl. pt. 1, in part, *Dixon v. American Indus. Leasing Co.,* 162 W.Va. 832, 253 S.E.2d 150. *See also* Syl. pt. 7, *Cook v. Heck's Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986) (same). *Cf.* Syl. pt. 3, *West Virginia Transp. Co. v. Standard Oil Co.,* 50 W.Va. 611, 40 S.E. 591 (1901) ("Where several

> combine and agree to do a lawful act, violative of no duty to another due from them, it is not an unlawful conspiracy subjecting them to an action by him, though the act injure him, and was so intended."); Syl. pt. 2, *Porter v. Mack,* 50 W.Va. 581, 40 S.E. 459 (1901) ("There can be no conspiracy to do that which is lawful in a lawful manner.").
>
> Additionally, individuals who have conspired with one another to orchestrate and/or carry out a *fraudulent* plan or scheme can be held liable for their conduct. *See* 37 Am.Jur.2d *Fraud and Deceit* § 301, at 397 (1968) (stating that "everyone who engages in a fraudulent scheme forfeits all right to protection, either at law or in equity" (citing *Densmore v. County Court,* 106 W.Va. 317, 145 S.E. 641 (1928))); 37 Am.Jur.2d *Fraud and Deceit* § 305, at 403 & 405 (1968) (noting that relief from fraud may be had only against those who were "parties to the fraud," but explaining that "in order to establish liability, any person or persons sought to be charged need not have benefited from the transaction, have had any interest therein, or have colluded with the person benefited"; recognizing further that "[o]ne who participates in a fraud is of course guilty of fraud, and one who, with knowledge of the facts, assists another in the perpetration of a fraud is equally guilty" (footnotes omitted) (citing *Lincoln v. Claflin,* 74 U.S. 132, 7 Wall. 132, 19 L.Ed. 106 (1868))). *See also Frazier v. Brewer,* 52 W.Va. at 310, 43 S.E. at 111 ("He who adopts the results adopts also the means by which they are brought about.").

*Kessel v. Leavitt,* 204 W.Va. 95, 128–29, 511 S.E.2d 720, 753–54 (1998).

Appropriation of Geostellar's intellectual assets by Indeco is set forth at complaint ¶¶ 23, 40, 44. Defendants seem to argue that Levine is immune from suit for conspiracy since he acted with another company, that he also created, Indeco. If this were true, this marks a clever way for someone to insulate him or herself: create another corporation to disadvantage a previous corporation to which they owed loyalty, then act through the second corporation and claim immunity under the enterprise conspiracy doctrine. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984(a parent corporation and its wholly owned subsidiary were not legally capable of conspiring with each other under section 1 of the Sherman Act). State courts have rejected that theory, including Delaware.

> Like the test for civil conspiracy, the test for stating an aiding and abetting claim is a stringent one, turning on proof of scienter—a plaintiff must prove: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3)

> knowing participation in that breach by the non-fiduciary.[42] In this case, Allied has pled an aiding and abetting claim against all defendants other than Sun I GP and that entity's officers and directors (against whom they have pled simple breach of fiduciary duty claims). The defendants have not moved to dismiss the aiding and abetting claim. The functional identity of that claim and the conspiracy claim render this motion therefore almost without real-world purpose.

*Allied Capital Corp. v. GC-Sun Holdings,* L.P., 910 A.2d 1020, 1038–39 (Del.Ch.2006).

"That factual foundation is that the parent and subsidiary share common economic interests" *Id.*

Other courts as well have limited the doctrine; some have on the difference between a partially owned subsidiary and a wholly owned subsidiary. *Louisiana Power & Light Co. v. United Gas Pipe Line Co.,* 493 So.2d 1149, 1151 (La.1986)(reversing Court of Appeal, which relied on *Copperweld*...which "held that a parent corporation and its *wholly owned* subsidiary are not legally capable of conspiring with each other under § 1 of the Sherman Act")(italics in original).

## LEVINE CAUSED GEOSTELLAR TO BREACH ITS CONTRACT WITH MATADOR

Defendants claim that Geostellar has no standing to assert this claim because any losses from being forced to violate its contract with Matador are speculative. See Doc. 8-1, n. 3, p. 9. In a footnote, Defendants argue that the lack of such a claim yet being alleged is fatal to its standing since any lawsuit "likely will never be filed." *Id*. Defendants provide no basis whatsoever for such a prediction but Matador claimed that the bankruptcy case was filed in bad faith. 2/15/18 Motion to Convert, ECF No. 24 (which order was granted 4/26/18)(and served discovery) and moved for relief from state regarding intellectual property, ECF No. 103 (granted by ECF No. 135).

WHEREFORE, for all the forgoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.

RESPECTFULLY SUBMITTED,

MARTIN P. SHEEHAN, Trustee of the Bankruptcy Estate of Geostellar, Inc.

By: /s/ Patrick S. Cassidy, Esq.

Patrick S. Cassidy, Esq. (WVSB #671)
Timothy F. Cogan, Esq. (WVSB #764)
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.C.
1413 Eoff St.
Wheeling, WV 26003
P: 304-232-8100
F: 304-232-8200
pcassidy@walslaw.com
tfc@walslaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: GEOSTELLAR, INC.          BK. NO. 3:18-BK-0045

MARTIN P. SHEEHAN, Trustee of
the Bankruptcy Estate of Geostellar, Inc.,

         CIVIL NO. 3:19-AP-00024

    Plaintiff,

v.

DAVID A. LEVINE, and
INDECO UNION, a Delaware Corporation,

    Defendants.

## CERTIFICATE OF SERVICE

This is to certify that on the 12th day of September, 2019, the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND STRIKE** was filed electronically via the Court's EM/ECF filing system, which will send notification of such filing to all counsel of record.

         RESPECTFULLY SUBMITTED,

         MARTIN P. SHEEHAN, Trustee of the
         Bankruptcy Estate of Geostellar, Inc.

         By: /s/ Patrick S. Cassidy, Esq.

Patrick S. Cassidy, Esq. (WVSB #671)
Timothy F. Cogan, Esq. (WVSB #764)
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.C.
1413 Eoff St.
Wheeling, WV 26003
P: 304-232-8100
F: 304-232-8200
pcassidy@walslaw.com
tfc@walslaw.com