IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

                                              Bankruptcy Case No. 18-00045
GEOSTELLAR, INC.,                      Chapter 7

        Debtor.

_____

MARTIN P. SHEEHAN, TRUSTEE,       Adversary Proceeding No 19-00024

        Plaintiff,

    v.

DAVID ANDREW LEVINE,

        Defendant.

## MOTION  FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

AND NOW comes the Defendant, DAVID ANDREW LEVINE, in the Adversary Proceeding Only, by and through his attorneys, Zimmer Kunz, PLLC, and files the within Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion for Leave to File Amended Complaint.

1.        Before this Court is Plaintiff's Motion for Leave to File Amended Complaint, which was filed on August 4, 2021.

2.        Defendant filed Objections and Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File Amended Complaint on August 24, 2021.

3.        Plaintiff filed a Reply in Support of Motion for Leave to File Amended Complaint on August 31, 2021.

4.      Defendant is seeking leave to file a Sur-Reply under Local Bankruptcy Rule 7007-1(e),  to address the gross mischaracterizations of the issues and Defendant's arguments stated in Plaintiff's Reply in Support of Motion for Leave to File Amended Complaint and to clarify such issues to the Court.

5.      In particular, Plaintiff claims in its Reply for the first time that the claims stated in its Amended Complaint are not covered by the arbitration clause because the arbitration clause only applies to coverage disputes and there is presently no coverage dispute at issue.

6.      Furthermore, Plaintiff incorrectly characterizes Defendant's arguments regarding applicability of gist of the action and the duties imposed on Defendant by contract and at common law.

7.      Counsel for Defendant requests the opportunity to file a Sur-Reply in Opposition to Plaintiff's Motion for Leave to File Amended Complaint limited to the related issues of the enforceability of the arbitration provision in Mr. Levine's Employment Agreement and the application of the gist of the action doctrine to bar the tort claims raised in Plaintiff's Amended Complaint.

8.      A copy of Defendant's proposed Sur-Reply in Opposition to Plaintiff's Motion for Leave to File Amended Complaint is attached herein as Exhibit "A" in accordance with Local Bankruptcy Rule 7007-1(e).

9.      A telephonic hearing on Plaintiff's Motion for Leave to File Amended Complaint is scheduled to occur on September 15, 2021 at 1:30 p.m.

Respectfully submitted,

ZIMMER KUNZ, PLLC

Date:  September 3, 2021          By:     */s/George N. Stewart*

George N. Stewart, Esquire
W.V. I.D. No. 5628
132 South Main Street; Suite 400
Greensburg, PA  15601
(724) 836-5400
stewart@zklaw.com

By:     */s/Joseph F. Butcher*

Joseph F. Butcher, Esquire
W.V. I.D. No. 13493
310 Grant Street, Suite 3000
Pittsburgh, PA 15219
(412) 434 - 5449
butcher@zklaw.com


Attorneys for Defendant,
David Andrew Levine in the Adversary
Proceeding Only

## <u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that I am, and at all times hereinafter mentioned was, more than 18 years of age and that I served the Objections and Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File Amended Complaint in the above-captioned proceeding on the parties listed below on August 24, *2021*.

In addition, I caused a copy of the above-captioned pleadings to be served on all parties who have electronically entered a notice of appearance through the notice of filing generated by the Court's Case Management/Electronic Case File CM/ECF System.

The type of service made on the parties is specified below.

**CM/ECF System**

Patrick S. Cassidy, Esquire
Timothy Francis Cogan, Esquire
Cassidy, Cogan, Shapell & Voegelin, L.C.
The First State Capitol
1413 Eoff Street
Wheeling, WV  26003

Martin P. Sheehan, Trustee
Sheehan & Associates, PLLC
41 – 15th Street
Wheeling, WV  26003

Respectfully submitted,

By:   */s/George N. Stewart*
George N. Stewart, Esquire
W.V. I.D. No. 5628
132 South Main Street; Suite 400
Greensburg, PA  15601
(724) 836-5400
stewart@zklaw.com

By:   */s/Joseph F. Butcher*
Joseph F. Butcher, Esquire
W.V. I.D. No. 13493
310 Grant Street, Suite 3000
Pittsburgh, PA 15219
(412) 434 - 5449

butcher@zklaw.com

Attorneys for Defendant,
David Andrew Levine in the Adversary
Proceeding Only

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

Bankruptcy Case No. 18-00045

GEOSTELLAR, INC.,                          Chapter 7

        Debtor.

_____

MARTIN P. SHEEHAN, TRUSTEE,                Adversary Proceeding No 19-00024

        Plaintiff,

    v.

DAVID ANDREW LEVINE,

        Defendant.

## **ORDER OF COURT**

AND NOW, this _____ day of _____, 2021, upon consideration of Defendant's Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion for Leave to File Amended Complaint, it is hereby ORDERED Defendant's Motion is GRANTED. Defendant's Sur-Reply in Opposition to Plaintiff's Motion for Leave to File Amended Complaint shall be filed of record and docketed.

BY THE COURT,

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

GEOSTELLAR, INC.,

       Debtor.

Bankruptcy Case No. 18-00045
Chapter 7

_____

MARTIN P. SHEEHAN, TRUSTEE,

       Plaintiff,

   v.

DAVID ANDREW LEVINE,

       Defendant.

Adversary Proceeding No 19-00024

**<u>SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT</u>**

AND NOW comes the Defendant, DAVID ANDREW LEVINE, in the Adversary

Proceeding Only, by and through his attorneys, Zimmer Kunz, PLLC, and files the within Sur-

Reply in Opposition to Plaintiff's Motion for Leave to File Amended Complaint.

**I.      Mr. Levine's Employment Contract and the arbitration provision therein remain
valid and enforceable as to Plaintiff's Amended Complaint.**

Mr. Levine's Objections and Memorandum of Law in Opposition to Plaintiff's Motion for

Leave to File Amended Complaint (hereinafter "Mr. Levine's Objections") asserts that Plaintiff's

Amended Complaint is futile because this Court has already ruled that any and all claims "arising

from or relating to" Mr. Levine's employment with Geostellar should be sent to arbitration

pursuant to the express terms of his Employment Agreement. Mr. Levine maintains that Plaintiff's

intentional abandonment of his breach of contract claim in his Amended Complaint does not

negate the enforceability of the Employment Agreement or the arbitration provision therein where

EXHIBIT "A"

the Amended Complaint presents largely the same factual averments regarding Mr. Levine's conduct as CEO of Geostellar. These same facts previously supported Plaintiff's breach of contract claim, which has been relabeled as various tort claims. Regardless of the specific label Plaintiff assigns to his claims, the conduct at issue during Mr. Levine's employment remains the same. Therefore, the Court's well-reasoned holding that all claims involving Mr. Levine's conduct as an employee of Geostellar must be heard at arbitration still applies to the relabeled claims raised in Plaintiff's Amended Complaint.

In response to Mr. Levine's argument, Plaintiff states for the first time that "the claims made in the amended complaint . . . do not rise to claims covered by the arbitration clause" because "the arbitration clause at issue only goes to coverage disputes." Pl. Reply at 2. This statement is patently and egregiously false. In support of this false statement, Plaintiff relies on a filing *in a different adversary proceeding*, by the Philadelphia Indemnity Insurance Company (PIIC), *which is not a party to this adversary action*, regarding the arbitration provision contained in the insurance policy under which Mr. Levine is insured and receiving legal defense in this case. See Pl. Reply at 2. A true and correct copy of this document entitled PIIC's Preliminary Response to Motion for Preliminary Injunction and Request for a Briefing Schedule, filed on August 19, 2021, is attached herein for reference (without exhibits attached) as Exhibit "A". In this filing, on the specific page cited by Plaintiff, PIIC states that "in regard to a determination of any coverage issues, Plaintiffs are subject to an arbitration provision in the Policy." Ex. A. at 14. The arbitration provision referenced in PIIC's filing and relied upon by Plaintiff pertains to the policy of liability coverage by which Mr. Levine is covered in this case and the circumstances under which he has been provided with defense counsel.

This adversary proceeding does not involve any dispute of coverage between Mr. Levine or PIIC. Furthermore, Mr. Levine has at no point argued and would never argue that Plaintiff's claims against him must be arbitrated based on a liability insurance policy which applies to coverage disputes. Such argument is beyond logic and is presented by Plaintiff in an attempt to mislead this Court as to the specific issues before it. The Court's prior determination on the arbitrability of Plaintiff's claims against Mr. Levine was properly based on the explicit language of the arbitration provision contained in Mr. Levine's Employment Agreement. Even if Plaintiff does not attach a copy of the Employment Agreement or invoke the same in his Amended Complaint, Mr. Levine is not prevented in any way from seeking enforcement of the arbitration provision in a Motion to Dismiss or Motion to Compel Arbitration, which would once again prompt the Court to decide the same question it already answered in its February 7, 2020 Memorandum Opinion. Plaintiff's abandonment of a breach of contract claim and reliance on an unrelated and irrelevant insurance policy does not negate the applicability of the Employment Agreement and certainly does not alter the Court's prior analysis and determination of the arbitrability of Plaintiff's claims against Mr. Levine in this case.

For these reasons, Plaintiff's Motion for Leave to File Amended Complaint should be dismissed as futile where this Court has already determined that any claims related to Mr. Levine's conduct as a Geostellar employee must be heard at arbitration.

II.      **The gist of the action doctrine bars Plaintiff from reframing the breach of contract claim in his original Complaint as several separate tort actions in his Amended Complaint, particularly where the same factual averments and legal duties are at issue.**

In his Objections, Mr. Levine argues that all of Plaintiff's "new" claims contained in his Amended Complaint are merely a recasting of his original breach of contract claim and therefore violate the gist of the action doctrine. In particular, Mr. Levine's Objections set forth clearly that

gist of the action applies "(1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim". See Def. Objections at 1 (quoting Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568, 577 (W. Va. 2013)). Mr. Levine maintains that upon review of the factual averments in support of Plaintiff's new tort claims, compared to his original breach of contract claim, Plaintiff has merely duplicated his original breach of contract claim under the guise of several differently-labeled tort claims. Specifically, Mr. Levine asserts that all of the duties alleged to have been breached in Plaintiff's Complaint and Amended Complaint are grounded and based in his Employment Agreement. In this sense, Plaintiff cannot recover for breach of any duplicative common law duty based on application of the gist of the action doctrine.

Plaintiff's Reply misconstrues and misstates applicable law as to the gist of the action doctrine and Mr. Levine's arguments regarding the same, thereby further misleading the Court. Nowhere in Mr. Levine's Objections does he claim that he owes no common law duty, fiduciary or otherwise, to Geostellar due to the existence of the Employment Agreement. Yet Plaintiff attempts to assert as much in his Reply, falsely stating, without citation, "Levine states that he owes no duties of fiduciary responsibility to a company of which he was the CEO and at least a member, if not the chair, of the Board of Directors." Pl. Resp. at 2. Plaintiff rephrases and repeats this false sentiment once more, stating, "Levine here stretches his argument to say that he owes no duty of care at all toward the corporation of which he was the CEO." Pl. Resp.at 3.

Mr. Levine's Objections are quite clear that regardless of any common law duties, all of the duties alleged to have been breached by Mr. Levine are based in the express terms of the Employment Agreement set forth in Plaintiff's own Complaint. See Compl. ¶¶19, 21. Mr. Levine

has never claimed and would never claim, as such would be contrary to law, that as CEO he would not have owed common law duties to Geostellar.  Rather, the gist of the doctrine action applies because the common law duties of which Plaintiff speaks are duplicative of the explicit contractual duties listed in the Employment Agreement and relied upon by Plaintiff in support of his original breach of contract claim. If Mr. Levine was not employed by Geostellar pursuant to the Employment Agreement, neither the contractual duties therein, nor the common law duties owed by fiduciaries and employees of corporations would apply. Mr. Levine's alleged liability stems from his employment at Geostellar, which at all relevant times was subject to his Employment Agreement. To this extent, any claims against him relating to his employment and the duties he owed pursuant to the express terms of that Agreement, are based solely in contract and cannot be recast as tort claims under gist of the action doctrine.

For these reasons, Plaintiff's Motion for Leave to File Amended Complaint should be dismissed as futile where his newly labeled tort claims are duplicative of his breach of contract claim and thereby violate the gist of the action doctrine.

Respectfully submitted,

ZIMMER KUNZ, PLLC


Date:  September 3, 2021          By:   _/s/George N. Stewart_____
                                       George N. Stewart, Esquire
                                       W.V. I.D. No. 5628
                                       132 South Main Street; Suite 400
                                       Greensburg, PA  15601
                                       (724) 836-5400
                                       stewart@zklaw.com

                                 By:   _/s/Joseph F. Butcher_____
                                       Joseph F. Butcher, Esquire
                                       W.V. I.D. No. 13493
                                       310 Grant Street, Suite 3000

02145865.DOCX 6275-0642                          5

Pittsburgh, PA 15219
(412) 434 - 5449
butcher@zklaw.com


Attorneys for Defendant,
David Andrew Levine in the Adversary
Proceeding Only

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:

LEVINE, DAVID ANDREW
LEVINE, MONICA LARSON,                    Bankruptcy Case No.: 3:19-bk-01048

      Debtors.

_____

THOMAS H. FLUHARTY, Trustee of the
Bankruptcy Estate of David Levine and Monica
Levine,

      Plaintiff,

MARTIN P. SHEEHAN, Trustee of the
Bankruptcy Estate of Geostellar, Inc.,                Adversary Proceeding No. 3:21-ap-00019

      Co-Plaintiff,
v.

PHILADELPHIA INDEMNITY INSURANCE
COMPANY and DAVID A. LEVINE,

      Defendants.

_____

### PHILADELPHIA INDEMNITY INSURANCE COMPANY'S PRELIMINARY RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR A BRIEFING SCHEDULE

Philadelphia Indemnity Insurance Company ("PIIC") provides this preliminary response to

request that this Court allow for briefing of issues asserted in a Motion for Preliminary Injunction

filed by co-Plaintiffs Thomas Fluharty, Trustee of the Bankruptcy Estate of David Levine and

Monica Levine (the "Levine Trustee") and Martin P. Sheehan, Trustee of the Bankruptcy Estate of

Geostellar, Inc. (the "Geostellar Trustee") (collectively, "Plaintiffs") in regard to the subject of an

Adversary Complaint Plaintiffs filed to commence this case on August 13, 2021.  The Adversary

EXHIBIT "A"
TO SUR-REPLY

Complaint concerns issues in regard to insurance coverage for Defendant David A Levine, under Private Company Protection Plus Policy No. PHSD1249816 (the "Policy") issued by PIIC to Geostellar, Inc. which was in effect for a Policy Period of May 31, 2017 to May 31, 2018.  A true and correct copy of the Policy with an Extended Reporting Period Endorsement, which has been numbered in the bottom right corner consecutively for ease of reference, is attached to the Exhibit 1, the Declaration of Dirk E. Ehlers ("Ehlers Dec."), as Exhibit 1.1, and is referenced herein as "Ex. 1.1".  Mr. Levine is an "Individual Insured" under the Policy for which PIIC has agreed to provide a defense to Mr. Levine in the Lawsuit captioned *Sheehan v. Levine*, Bankruptcy Case No. 3:19-ap-00024 (the "Geostellar Lawsuit"), which is also pending in this Court.

Plaintiffs have scheduled a preliminary injunction hearing in this case on an *ex parte* basis without conferring with Defendants, upon a motion that is demonstrably inadequate.  The matters presented in Plaintiffs' Adversary Complaint and Motion for Preliminary Injunction involve complex issues which, if appropriately to be considered by this Court, should be the subject of briefing to provide the Court's due consideration of a proper record of fact and full disposition of law.  Neither of the Defendants have been afforded any opportunity to assert their respective responsive positions either in response to the Adversary Complaint or in briefing of the Motion for Preliminary Injunction, and as a result, neither a factual record nor an adequate discussion of applicable law have been provided to this Court.

While copies of the filed Adversary Complaint and Motion for Preliminary Injunction were provided by email to counsel who have represented the Defendants in regard to other matters on August 13, 2021, no indication of a request by Plaintiffs for a preliminary injunction hearing was provided to such counsel, who learned of the hearing request by happenstance on August 17, 2021, just two days prior to the scheduled hearing.  (Ehlers Dec., Ex. 1, ¶¶ 10-11, and Ex. 1.2, email

communication providing notice of lawsuit).  Notice of the hearing was instead provided, according to the record by first class U.S. Mail delivery initiated on Sunday, April 15, 2021.  (Dckt. No. 8, Certificate of Notice).  George Stewart, who has appeared as defense counsel for David Levine in Geostellar Lawsuit, was provided notice of August 19, 2021 hearing in this case in an email from Courtroom Deputy Lisa McNeil at 1:25 p.m. on August 18, 2021, which Mr. Stewart forwarded to counsel who has represented PIIC in connection with its interests in the Geostellar Lawsuit (as to which PIIC is not a party).  (Ehlers Dec., Ex. 1, ¶ 12 and Ex. 1.3, email from George Stewart to Debra Varner, providing notice from Ms. McNeil).

Defendant PIIC respectfully requests that this Court deny Plaintiffs' improper and unsupported request for a preliminary injunction, and further allow Defendants an opportunity to file their responses to the Adversary Complaint and to provide a briefing schedule in regard to any proper dispositive motion that may subsequently be filed in regard to the issues for which the preliminary injunction is now improperly sought.  In support of this request, PIIC addresses in this filing:  (1) why a preliminary injunction would be improper; (2) substantive issues as to which Plaintiffs are wrong, as examples of why the disposition of these matters should take place only after Defendants are provided an opportunity to provide a full record of facts and law to the Court for its consideration; and (3) issues in regard to standing, which also should be briefed before this proceeding can move forward (which should be the subject of Defendants' responses to the Adversary Complaint).

## I.   Plaintiffs' Preliminary Injunction Request is Improper

## A.   Mandatory Injunctions are Disfavored

Plaintiffs here improperly seek a mandatory injunction to change the status quo, rather than to preserve it.  The primary function of a preliminary injunction is to maintain or restore the status

quo.  *See Di Biase v. SPX Corp.*, 872 F.3d 224, 231 (4th Cir. 2017); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (explaining that "a preliminary injunction preserves the status quo pending a final trial on the merits[.]").  Accordingly, any preliminary injunction must "be tailored to restrain no more than what is reasonably required to accomplish its ends."  *Consolidation Coal Co. v. Disabled Miners of S. W. Va.*, 442 F.2d 1261, 1267 (4th Cir. 1971).  Plaintiffs seek a mandatory injunction because they seek to take control of a directors & officers liability insurance Policy issued for the benefit of Mr. Levine as an "Individual Insured," and thereby to confer a benefit to the Levine Trustee (the propriety of which is also not established, as discussed below).  Moreover, Plaintiffs seek to force PIIC to engage in settlement negotiations before its Insured's liability has been determined.

The law disfavors mandatory injunctions.  *See*, *e.g.*, *Vollette v. Watson*, Civil Action No. 2:12cv231, 2012 U.S. Dist. LEXIS 103322 (E.D. Va. July 24, 2012) ("… Plaintiffs have the burden to demonstrate that a preliminary injunction should issue in this case.  Furthermore, because Injunction Plaintiffs seek a mandatory injunction that would alter the status quo during the pendency of the litigation, the Court's inquiry is even more searching than in a typical case, and entry of the requested mandatory injunction is "disfavored" by governing law."); *Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 333 F.3d 517 (4th Cir. 2003) ("Our application of this exacting standard of review is even more searching when the preliminary injunctive relief ordered by the district court is mandatory rather than prohibitory in nature.")

**B.     A Preliminary Injunction Requires the Court's Consideration of Facts**

Court must evaluate facts when deciding preliminary injunction and enter an injunction only when the facts support the movant's claims of harm and interest.  It is a general principle that a court on a motion for a preliminary injunction must see evidence in support of movant's claims.

"When considering a motion for preliminary injunction, a district court may assess the relative strength and persuasiveness of the evidence presented by the parties, and is not required to resolve factual disputes in favor of the non-moving party." *Queen Virgin Remy, Co. v. Thomason*, No. 1:15-CV-1638-SCJ, 2015 U.S. Dist. LEXIS 186411, 2015 WL 11422300, at *2 (N.D. Ga. June 10, 2015), *modified*, No. 1:15-CV-1638-SCJ, 2015 U.S. Dist. LEXIS 185667, 2015 WL 11455760 (N.D. Ga. Oct. 21, 2015) (citing *Imaging Business Machines, LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006)). If the evidence is contested, however, the court "'must assess the facts, draw whatever reasonable inferences it might favor, and decide the likely ramifications.'" *Weaver v. Henderso*n, 984 F.2d 11, 14 (1st Cir. 1993) (quoting *Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir. 1988)).

Here there is no evidentiary record. Plaintiffs produce no affidavits in support of their motion and the verification of their Adversary Complaint is inadequate. The Adversary Complaint lacks proper verification because it fails the standards required for an affidavit in support of summary judgment.

Plaintiff's title their Adversary Complaint a "Verified Complaint," but the pleading lacks proper verification. The verification states only: "the facts and allegations therein contained are true except so far as they are therein stated to be on information . . . ." (Verification, Dckt No. 1-1.) Such language is insufficient because it does not state the affiant's competence to make that statement, nor does it provide sufficient verification. For example, in *Tillery v. Borden*, Civil Action No. CBD-07-1092, 2010 U.S. Dist. LEXIS 92501 (D. Md. Sep. 3, 2010) a court presented with a similarly inadequate verification commented as follows:

> In large measure, a verified complaint is intended to provide the same evidentiary foundations as an affidavit. A properly verified complaint can provide a sufficient basis to oppose a motion for summary judgment. Pursuant to Fed. R. Civ. P. 56(e) an affidavit must "set out facts that would be admissible in evidence, and show that

the affiant is competent to testify on the matters stated." Assuming the Court were to give credence to the original verified Complaint, the verification is inadequate in that it merely states that the information set forth therein is believed to be "true and correct to the best of our knowledge, information and belief." Such an affidavit, or verification, is inadequate to withstand a motion for summary judgment. Information "believed" to be "true and correct" is not "admissible in evidence."

*Id*. at *7-8.

Accordingly, the verification of the Adversary Complaint is deficient on its face and the Court has no adequate factual record to establish Plaintiffs' right to injunctive relief.

### C.    Plaintiff Do Not Establish Irreparable Harm

Plaintiffs assert only that allowing Mr. Levine to continue to assert a right to consent to a settlement will then change which party will receive money—this is merely a money damage issue and not an irreparable harm that is sufficient to require mandatory injunctive relief.

The Supreme Court's "frequently reiterated standard requires [a plaintiff] seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. NRDC, Inc*., 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (internal emphasis omitted). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of an injunction are not enough." *Roe v. United States DOD*, 947 F.3d 207, 228 (4th Cir. 2020) (quoting *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017)) (internal quotation marks and alteration omitted). Plaintiffs have not established irreparable injury at this point for two reasons. First, their only argument is that the Policy issued by PIIC insuring Mr. Levine will erode if funds are expended for Mr. Levine's defense. At worst, that means if the current state of affairs continues, money will be paid to lawyers in Defense Costs under the Policy instead of to the Geostellar Estate in settlement. However, the party seeking to control the right to consent under the Policy is the trustee for the personal bankruptcy estate for Mr. Levine and his wife in their Chapter 7 bankruptcy, rather than the Geostellar Trustee, and the value of their personal

bankruptcy estate will remain unchanged by the outcome.  In regard to the Geostellar Estate, it is already the case that some creditors will not be paid the entirety of debts owed, but moreover, the Geostellar Trustee does not have standing to assert Mr. Levine's rights under the Policy.

**D.     The Geostellar Trustee Has Not Provided Facts as to Standing for Injunctive Relief**

First, to establish standing at this stage of the case, a plaintiff is "not entitled to rest on . . . mere allegations" of standing "but must set forth by affidavit or other evidence specific facts" demonstrating the elements of standing.  *Beck*, 848 F.3d at 270 (quoting *Lujan*, 504 U.S. at 561). For purposes of deciding the application, the court must take such evidence as true and draw all reasonable inferences therefrom in a light most favorable to the plaintiff.  See *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 213 (4th Cir. 2020); *Pye v. United States*, 269 F.3d 459, 467 (4th Cir. 2001) (citing *Lujan*, 504 U.S. at 561).  The plaintiff must establish standing for each claim it seeks to press and for each form of relief it seeks.  *See Md. Shall Issue*, 971 F.3d at 209.

Plaintiff has stated only that the Geostellar Trustee has filed a claim against Mr. Levine in the Geostellar bankruptcy.  However, filing a claim against an Insured under the Policy does not establish standing.  West Virginia is not a direct-action state, and a claimant that has brought a claim against an insured under a liability policy under West Virginia law may not bring an action against an insurance company until it obtains a judgment against the insured.  The Geostellar Trustee, as a mere claimant against Levine, has no right to bring a direct action against PIIC.

The West Virginia Supreme Court of Appeals held in *Robinson* v. *Cabell Huntington Hosp., Inc.*, 201 W.Va. 455, 460, 498 S.E.2d 27 (1997), that an injured party suing an insured tortfeasor has no standing to bring a direct action against the defendant's insurance company, with two narrow exceptions.  *Robinson v. Cabell Huntington Hosp., Inc.*, 201 W.Va. 455, 460,  498 S.E.2d 27 (1997), quoting *Mazon v. Camden Fire Ins. Ass'n*, 182 W.Va. 532, 533, 389 S.E.2d 743 (1990).  Those

exceptions are:  (1) where the insured fails to pay a judgment entered in a personal injury action (see *Broy v. Inland Mut. Ins. Co.*, 160 W.Va. 138, 233 S.E.2d 131 (1977)), and (2) "where the defendant's insurer has denied coverage" (see *Christian v. Sizemore*, 181 W.Va. 628, 383 S.E.2d 810 (1989)).  *Robinson, supra*, 201 W.Va. at 460.[1]  The court in *Robinson* expressly held that such claimants are not "third-party beneficiar[ies]" of the insurance contract.  *Id.*

The first exception obviously is not relevant here – as there is no unpaid judgment on behalf of Geostellar against Levine.  Moreover, there has been no "denial of coverage."  In *Christian v. Sizemore*, 181 W.Va. 628 (1989), the court held, in Syllabus Point 3, that "[a]n injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage before obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has *denied* coverage."  (Emphasis added.)  In *Christian*, the plaintiff brought an action for injuries she suffered in an automobile accident.  The defendants' insurance carrier denied coverage on the ground that the policy had lapsed before the accident occurred.  *Id.* at 629.  Under these circumstances, the court found that a declaratory judgment count against the insurance company could properly be joined with the action against the policyholders.  The court acknowledged the principle that, in general, an action against a defendant's insurance carrier should not be joined in an action against the insured, so as to avoid the prejudice inherent in the possible mention of insurance coverage at trial.  *Id.* at 630.  However, because in the case before it the insurance carrier had *denied* any obligation to pay a judgment against the defendant, the court found it appropriate to seek early resolution of the coverage dispute:

---

[1]      *Robinson* identified a third exception, involving third party bad faith claims.  However, such claims were eliminated with the enactment of W.Va. Code § 33-11-4a in 2005, such that the third exception identified in *Robinson* no longer exists.  *Whittaker, LLC v. Nationwide Mut. Ins. Co.*, No. CIV. A. 2:07-963, 2008 WL 2063548, at *3 (S.D.W.Va. May 13, 2008).

> Declaratory judgment … provides a prompt means of resolving policy coverage disputes so that the parties may know in advance of the personal injury trial whether coverage exists.  This facilitates the possibility of settlements and avoids potential future litigation as to whether the insurer was acting improperly in denying coverage.  Moreover, as this case demonstrates, the use of declaratory judgment protects the plaintiff from an insured who has no independent assets and is not concerned about insurance coverage.

*Id.* at 632.

These concerns are not present here.  The *Christian* court noted that where "the coverage question" is separable from the issues in the underlying action, "it should ordinarily be decided first."  *Id.* at 632-633.

Post *Christian*, the West Virginia Supreme Court of Appeals in *Anderson v. Robinson*, 186 W. Va. 92, 411 S.E.2d 35 (1991), permitted the plaintiff to proceed in a direct action against the tortfeasor's insurer to satisfy a judgment, which had already been obtained, where the bankruptcy court modified the automatic stay in order for the plaintiff's lawsuit to proceed to the extent of available insurance coverage.  The critical factor however in *Anderson* was that a judgment had already been obtained.  In rendering its ruling, the Court noted it was only in certain circumstances that an injured plaintiff may proceed against the tortfeasor's insurer.  In this case, not only has a judgment not yet been obtained, but the Geostellar Trustee's operative complaint is the subject of a pending motion to amend, as to which the date for objections expires on August 25, 2021.  (*Sheehan v. Levine*, 3:19-ap-00024, Dckt. 57-58).

Plaintiffs rely heavily upon a ruling by the 10th Circuit in *Olah v. Baird (In re Baird)*, 567 F.3d 1207 (10th Cir. 2009), in which the court ruled that Utah law allowed the claimants, alleged victims of a tort by the debtor, to pursue an action against the insurer for their "loss," which was deemed to have been fixed as to the claimants at the time of the alleged tort, under Utah law.  However, Utah law does not apply in this case.  Under West Virginia law, an insured "loss," and with it the claimants' right to a direct action, has not been determined by a judgment establishing

the liability of Levine.  The Geostellar Trustee has no standing to assert a claim under against PIIC, because the liability of PIIC's Insured, David Levine, has not been established.

**E.      The Levine Trustee Has Not Established Standing**

Plaintiffs assert that Mr. Levine's right of consent to settlement under the Policy as an Individual Insured should be deemed to have been transferred to the Levine Trustee because the rights of Mr. Levine under the Policy have been transferred to the Levine Trustee in connection with Mr. Levine's personal bankruptcy.  Plaintiffs also rely upon the 10th Circuit ruling applying Utah law in *Olah v. Baird (In re Baird)*, 567 F.3d 1207 (10th Cir. 2009), for this proposition. However, the nature and scope of the insurance coverage under the Policy in this case are materially different from the coverage for the debtor in *Olah* that was found to have been assigned to the trustee in that case.  The same result does not follow in this case.

In *Olah* a malpractice liability insurance purchase by a doctor was deemed to have been assigned to the trustee of his personal bankruptcy estate, and because the doctor's rights under the malpractice liability insurance policy were assigned to the trustee, the trustee was deemed thereby also to have also acquired the doctor's right to consent to a settlement with the claimants who were seeking to establish the personal liability of the doctor for loss covered by his malpractice liability insurance policy.  However, this case does not involve coverage for Mr. Levine's liability under an insurance policy that he purchased, for himself, for his own personal liability, that by virtue of such a qualities would automatically be deemed part of his personal assets transferred to a trustee upon his declaration of bankruptcy.  The Policy in this case was purchased by Geostellar, not only for Mr. Levine, but also for Geostellar and a host of other "Individual Insureds" as defined therein. (Ehlers Dec., Ex. 1, ¶¶ 3-4 and Ex. 1.1, p. 49).  None of those individuals, either Mr. Levine or anyone else, obtained coverage under the Policy for his or her personal liability.  To the contrary,

the insurance provides coverage for Individual Insureds only for their conduct as such.  (Ehlers Dec., Ex. 1, ¶¶ 3-8 and Ex. 1.1, pp. 42, 44-45, 49 and 64).

Mr. Levine's coverage under the Policy, confined to his conduct and liability as an Individual Insured, does not create a pool of funds for his personal creditors, and its availability or lack of availability will have no impact upon the assets that are a part of his personal estate. Therefore the finding in *Olah* by the 10th Circuit that the trustee in a personal bankruptcy had been assigned the doctor's personal malpractice policy, which had been purchased by the debtor himself, only for himself and only for his own personal liability, is not a finding that directors & officers liability policies, not allowing coverage for personal liability of directors or officers – are transferred to a personal bankruptcy estate of any one director or officer insured thereunder along with a corporate entity.  The proceeds of a directors and officers liability policy will never be used to reduce the liability of an insured director or officer for the personal debts that are impacted by a personal bankruptcy, and Plaintiffs have provided no example of such a policy being assigned to an individual's personal bankruptcy estate.

The very nature of the directors and officers liability coverage provided to Mr. Levine is to protect him, as well as a many others, for incurring liability as directors or officers of Geostellar, the corporation that obtained the coverage for such directors and officers to ensure that any potential loss they might incur as the result of their service in such capacities would remain separate from their personal finances.  This in turn provides an incentive for qualified individuals to serve as directors and officers, free from risk that the significant risks of work on behalf of the companies that they serve will impact their personal liability.  Courts routinely recognize that the benefits provided to directors and officers by directors & officers liability insurance coverage cannot be

stripped from them by a bankruptcy trustee – because the contract is written provides a secure and

independent resource to them to rely upon:

> D&O policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose. There is an important distinction between the individual liability and the reimbursement portions of a D&O policy. The liability portion of the policy provides coverage directly to officers and directors, insuring the individuals from personal loss for claims that are not indemnified by the corporation. Unlike an ordinary liability insurance policy, in which a corporate purchaser obtains primary protection from lawsuits, a corporation does not enjoy direct coverage under a D&O policy. It is insured indirectly for its indemnification obligations. In essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.

*Ochs v. Lipson (In re First Central Financial Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999). This

is why, as PIIC had provided in its motion in the Geostellar bankruptcy proceeding, the Geostellar

Trustee – even though Geostellar is itself an Insured under the Policy – has no right to preclude Mr.

Levine from obtaining the benefit of his coverage in a lawsuit against him as a director or officer

for his defense. See *In re Geostellar, Inc.*, 3:18-BK-0045, Dckt No. 159.

The hierarchy of rights created by directors and officers liability coverage is clear: directors

and officers insured thereunder are given the ability to defend themselves from claims against them

for their alleged conduct as directors and officers, which is confined to their capacities as such. The

company that purchased the policy, which also insures the company itself for liability, is placed

second by the order of payments – a circumstance irrelevant in this case because the company,

Geostellar, is not facing any liability for which the policy is required. Because the Policy that

Geostellar purchased from PIIC is an eroding policy – by which the defense of the Insureds directors

and officers reduces the limit of liability, the Policy is less expensive than a non-eroding policy,

which would maintain a separate source of funds for defense versus liability. This means that the

contract that was purchased by Geostellar to protect Mr. Levine as a director and officer of

Geostellar, first and foremost is available to enable him to defend against liability, and then for the liability that may be incurred.  The limit being a significant amount of funds, either $3 million or $1 million, depending upon the Insuring Agreement that would apply, is impacted by its use for the defense of Mr. Levine, but it is not eliminated.  Creditors who ultimately stand to recover in a lawsuit against Mr. Levine for alleged conduct as a director or officer of Geostellar may, *if* they establish liability, then be entitled to a recovery for such liability from the balance available under the Policy.

Purchasers of an eroding Policy – or their successors such as the Geostellar Trustee – cannot rewrite the insurance contract, either to eliminate the priority of payment to allow for the directors to obtain their defense, or to give creditors a right to recover any amount of the limit of liability without first actually establishing liability of an Insured under the Policy.  If Geostellar had wanted to purchase a policy providing for the defense of its directors and officers on top of the limit of liability available to satisfy a judgement, Geostellar could have done so, but it would have then needed to pay a higher premium for such a product.  The Geostellar Trustee, and Geostellar's creditors, may not like that Mr. Levine has access to the limit of liability for his defense, but that is the contract that was purchased – a contract that incentivizes a claimant to take into consideration that protracted litigation will eliminate the source of funds available to satisfy a judgment.

Where do the Levine Trustee and Mr. Levine's personal bankruptcy estate sit in this group of potential beneficiaries of the Policy?  Nowhere.  Mr. Levine's personal liability is not a risk insured under the directors and officers liability policy purchased by Geostellar for (1) the defense of Mr. Levine, and (2) for liability he may incur for conduct in his capacity as a director or officer, if – and only if – that liability is ever actually established, which certainly has not happened.  The Policy in this case has not been assigned to the Levine Trustee, because it is not and never will be

the personal property of Mr. Levine, and will never be used to satisfy any of his personal debts. The *Olah* case, involving a malpractice policy for the debtor's personal liability, has no bearing on the proper result in this case, because the *Olah* case involved a policy solely purchased to provide payment for the debtor's personal liability. Because it was an assignment of the policy in *Olah* to the debtor's personal bankruptcy trustee that was deemed to likewise transfer the right of the policy holder to consent to the settlement to the trustee, the Levine Trustee is misplaced in relying upon *Olah* in this case to assert he has now acquired that right.

**F.      Additional Significant Issues**

There are two additional significant issues that are not addressed by Plaintiffs in their Motion for a Preliminary Injunction that are also significant and should properly be the subject of a response to the complaint and proper briefing before any disposition is rendered by the Court as to the issues in this case. First, consideration of the applicability of a provision for consent to a settlement under a liability policy is not a core proceeding. See *Roman Catholic Diocese of Rockville Ctr. v. Arrowood Indemnity Co.*, 2021 U.S. Dist. LEXIS 94233 *18-20 (S.D.N.Y. May 17, 2021) (In determining that a determination of a coverage issue would not be a core proceeding, the court noted in regard to exercise of a right to consent for a settlement: "Adding another party to the negotiating table during settlement discussions does not require the estate to make any payments at all, let alone payments that are prerequisites to insurance coverage. Accordingly, the consent-to-settlement provisions do not render the claims against Arrowood core.").

Second, in regard to a determination of any coverage issues, Plaintiffs are subject to an arbitration provision in the Policy. Part 6, COMMON POLICY CONDITIONS, Section XIV., ACTION AGAINST THE UNDERWRITER; ARBITRATION, provides:

XIV.   ACTION AGAINST THE UNDERWRITER; ARBITRATION

A.      No person or entity shall have any right under this Policy to join the Underwriter as a party to any action against the Insured to determine the Insured's liability, nor shall the Underwriter be impleaded by the Insured or their legal representatives. Bankruptcy or insolvency of the Insured or their successors in interest shall not relieve the Underwriter of its obligations hereunder.

B.      Any dispute relating to this Policy or the alleged breach, termination or invalidity thereof, which cannot be resolved through negotiations between any Insured and the Underwriter, shall be submitted to binding arbitration. The rules of the American Arbitration Association shall apply except with the respect to the selection of the arbitration panel. The panel shall consist of one arbitrator selected by such Insured, one arbitrator selected by the Underwriter and a third independent arbitrator selected by the first two arbitrators.

Ehlers Dec., ¶ and Ex. 1.1, p. 59.

## **CONCLUSION**

For these foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction is improper and inadequate, and should be denied.  The case should proceed with Defendants' filing of a response to the Adversary Complaint, after which the myriad of issues that require due consideration of applicable common law and a record of admissible facts should be addressed through briefing by the parties to this case.

Dated this 19th day of August, 2021.

Defendant, PHILADELPHIA
INDEMNITY INSURANCE COMPANY
By Counsel:

*/s / Debra Tedeschi Varner*
Debra Tedeschi Varner (WV State Bar #6501)

Varner & Van Volkenburg PLLC
360 Washington Avenue
Clarksburg, WV 26301
Telephone: (304) 918-2840
Facsimile: (304) 566-1161

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

DAVID ANDREW LEVINE
and MONICA LARSON LEVINE,

Bankruptcy Case No. 3:19-BK-01048
Chapter 7

            Debtors.

THOMAS FLUHARTY,
Trustee of the Bankruptcy Estate of
David Levine and Monica Levine,
- and -
MARTIN P. SHEEHAN,
Trustee of the Bankruptcy Estate of
Geostellar, Inc.,

            Plaintiffs,

v.

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,
and DAVID A. LEVINE,

            Defendants.

Adv. Proc. No. 3:21-AP-00019
Judge: Becker McKay Wyckoff Mignault

## CERTIFICATE OF SERVICE

Service of the foregoing ***PHILADELPHIA INDEMNITY INSURANCE COMPANY'S PRELIMINARY RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR A BRIEFING SCHEDULE*** was had upon the parties, as set forth below, by electronic notification via the Court's CM/ECF system, and/or by mailing a true copy hereof, by United States Mail, postage prepaid, this 19th day of August, 2021:

Thomas H. Fluharty, Esquire
thfdebtatty@aol.com
wv12@ecfcbis.com
***Plaintiff***

David Andrew Levine
2426 Steamboat Run Road
Shepherdstown, WV 25443-4115
***Defendant***

Martin P. Sheehan, Trustee
sheehanparalegal@wvdsl.net
sheehanassistant@wvdsl.net
sheehanbankruptcy@wvdsl.com
wv05@ecfcbis.com
***Plaintiff***

Patrick S. Cassidy, Esquire
pcassidy@walslaw.com
kch@walslaw.com
Timothy F. Cogan, Esquire
tfc@walslaw.com
smh@walslaw.com
***Counsel for Plaintiff, Martin P. Sheehan***

*/s/ Debra Tedeschi Varner*