IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: GEOSTELLAR, INC.            BK. NO. 3:18-BK-0045

MARTIN P. SHEEHAN, Trustee of
the Bankruptcy Estate of Geostellar, Inc.,

                                                  CIVIL NO. 3:19-AP-00024

       Plaintiff,

v.

DAVID A. LEVINE,

       Defendant.

**AMENDED COMPLAINT**

NOW COMES Martin P. Sheehan, Trustee of the Bankruptcy Estate of Geostellar, Inc., by and through his counsel, Patrick S. Cassidy and Timothy Cogan of Cassidy, Cogan, Shapell, and Voegelin, L.C., and Martin P. Sheehan and Sheehan & Associates, PLLC, and for Trustee's Complaint against David A. Levine, states as follows.

**General Allegations**

1. Geostellar, Inc., (hereinafter referred to as "Geo") is a Delaware corporation. It had been doing business at 224 W. King St., Martinsburg, West Virginia. It filed for Chapter 11 Bankruptcy Relief on January 29, 2018.

2. On April 26, 2018, the United States Bankruptcy Court for the Northern District of West Virginia entered an order converting the bankruptcy case of Geo, from a case under Chapter 11 to a case under Chapter 7.

3. As a consequence of conversion to Chapter 7, Martin P. Sheehan was appointed as the interim Chapter 7 Trustee. In that capacity, Martin P. Sheehan is the successor in interest to all

{00187581.1}

legal and equitable interests of the Corporation at the time of filing of the case, pursuant to 11 U.S.C. § 541(a)(1) and to such additional rights as are contained in 11 U.S.C. § 541(a).

4. A meeting of creditors was held in the Chapter 7 case on May 24, 2018. No request for an election of an alternate trustee was made. When the meeting of creditors concluded, Martin P. Sheehan became the permanent Chapter 7 Trustee of the Bankruptcy Estate of Geo, pursuant to 11 U.S.C. § 704(d). He remains the successor in interest to all legal and equitable interests of the Corporation at the time of filing of the case, pursuant to 11 U.S.C. § 541(a)(1) and to such additional rights as are contained in 11 U.S.C. § 541(a).

5. This is an action for breach of fiduciary duty of Loyalty, negligence, negligent misrepresentation, constructive fraud, and violation of the Uniform Trade Secrets Act.

6. Jurisdiction in this Court exists pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. § 1408.

7. This is a non-core proceeding.

**The Parties**

8. Plaintiff is Martin P. Sheehan, Trustee of the Bankruptcy Estate of Geo. Mr. Sheehan has a business address of 1 Community Street, Wheeling, WV 26003.

9. Defendant is David A. Levine. Mr. Levine resides at 2426 Steamboat Run Road, Shepherdstown, WV 25401.

10. The business of Geo was to provide an efficient solar energy marketplace.

11. To create an efficient solar market place, Geo created proprietary software through which it intended to match potential customers, that is persons interested in installing solar power generating capacity with all necessary information to complete a solar installation project, including a list of solar equipment vendors, solar equipment installers, and lending institutions interested in financing solar power projects.

12.     The ongoing business of Geo was not generating profits, but had achieved the potential of meeting operational expenses by arranging 30 installations of solar power projects per month.

13.     Geo had made significant progress of achieving this goal of 30 installations of solar power projects per month.

14.     Consistently meeting the goal of 30 installations of solar power per month would have permitted Geo to raise ongoing capital and other financing to cause the growth and ultimately, the long term profitability of Geo.

15.     At all times material to this Complaint and prior to January 24, 2018, David A. Levine was the Chief Executive Officer of Geo. At all times material to this Complaint, and prior to January 24, 2018, David A. Levine was also Chairman of the Board and/or a member of the Board of Directors of Geo. Thereafter, David A. Levine had an official role with Geo, and he testified as the representative of the corporate debtor at meetings of creditors held while the bankruptcy case was in Chapter 11, and after it converted to Chapter 7.

16.     As the Chief Executive Officer, Chairman of the Board and/or member of the Board of Directors of Geo, David A. Levine owed a fiduciary duty to Geo, including, but not limited to, the duty of loyalty.

17.     From February, 2010 to July, 2017, Geo was able to obtain capitalization and financing in the range of $20M to $30M over this 7-year span from investors, but had yet to make a profit by 2017.

18.     On or about July 12, 2017, and without Board approval, Levine diverted Geo from its above stated purpose to focus on a "token sale" of a new "cryptocurrency," to be based on units of energy, and published a "white paper" on it, as "founder & CEO of Indeco & Geo, without first

seeking Board approval of the "white paper," or diversion of corporate resources to working on said "token sale"

19. A cryptocurrency ("crypto") depends on the existence of software and related programming code known as a "block chain." Ultimately, the crypto being developed by the engineering department of Geo, was to be known as "Zydeco."

20. On or about July 13, 2017, and again without Board approval, Levine advised the Board in an email of July 13, 2017, *inter alia,* that he had "the entire engineering team focused on a "token sale," and that he "believes" "we can raise $5M in a week," and that "we should have the token sale ready in 2 to 3 weeks." Not having Board approval for his diversion of Geo's business from a substantive solar marketplace into a highly speculative venture capital scheme for production of a new "cryptocurrency," "Zydeco," Levine instead made various false and constructively fraudulent statements and representations to Board Members and creditors to the effect that a cryptocurrency token could be traded at the value of one watt of energy per token; that cryptocurrency would not only save Geo, but make it profitable; would pay off all creditors, and/or was consistent with what Geo was doing promoting a Solar Marketplace. Said statements were misstatements, were material and constructively fraudulent statements, and were relied upon by Geo's Board to the extent that it did not immediately terminate its relationship with Levine but continued to try to work with him to get Geo back to its basic purposes until it was too late. When the aforesaid statements were being made in the summer of 2017, and under the circumstances then existing, the Board was justified in reliance thereon.

21. In pursuing this distraction from its original market plan, David A. Levine refused to accept direction from the Board of Directors, and instead, David A. Levine directed that the proprietary software developed by Geo, and used as part of marketing efforts to raise working

capital and otherwise to arrange financing for Geo, and as had been specifically pledged as collateral to Matador Solar Partners, LLC, be converted to "open source" software, despite the fact that said proprietary software constituted Geo's intellectual property and a trade secret of Geo.

22. The effect of this transformation of proprietary software to open code software caused the proprietary software of Geo to be available to anyone, including entities created by David A. Levine to compete with Geo, and to allow improper disclosure of Geo's trade secrets to others. What had previously been available exclusively to Geo was made non-exclusive. Said actions caused Geo to be in breach of its contractual obligations.

23. Furthermore, the effect of the transformation of proprietary software to open code software was to render the value of the proprietary software of Geo, which had been developed at considerable expense, to be made valueless as an exclusive asset of Geo.

24. On or about August 11, 2017, David A. Levine caused the filing of a Form C, as required by 17 C.F.R. § 227.100, *et seq.,* with the Securities and Exchange Commission in connection with efforts to obtain crowdfunding for Geo.

25. The "Overview" section of that document included an explanation that the Company, that is Applied Philosophy Lab, P.B.C., expected to "leverage the capabilities of Geostellar' s solar energy platform through a master license agreement." And further that "as part of an arrangement with Geostellar, the Company anticipate financing solar energy, battery storage, smart home, smart city, energy efficiency and related sustainability issues."

26. Said Form C also provided, in the section, "Risk Factors," that Geo has incurred operating losses since its inception, and significant losses in 2015 and 2016 due to investments in its technology platform and other company initiatives (p. 12); "that our business may be harmed if we fail to properly protect our intellectual property" (p. 19); and that notwithstanding, "We

may…. divert resources towards a 'Token Crowd Sale' of cryptographic digital tokens" (p. 13). On page 22, Geo also states that "the primary conflict of interest that affects the company is that our landlord is a company controlled by our CEO, David Levine, called Three Square, LLC…."

27. Even when Levine first officially mentioned that production of a "Zydeco" cryptocurrency may be undertaken by Geo, Levine included that he recognized the importance of protecting Geo's intellectual property (p.19). Yet throughout, he failed in every way to take action to protect it for Geo, even while representing to the Board that Geo would "license" its intellectual property for crypto to APL/Indeco, which was never done.

28. At no time, did Applied Philosophy Lab, P.B.C., have any agreement with Geo, to cause Geo, to supply intellectual property to Applied Philosophy Lab, P.B.C., or to Indeco, LLC.

29. In fact, when the prospect of such an arrangement was presented to the Board of Directors of Geo, that proposal and all related proposals were rejected by the Board of Directors on or about October 20, 2017.

30. In or about the Fall of 2017, and in response to Board pushback on Levine's exclusive focus on crypto, and while Geo was having significant cash flow problems, Levine continued to recommend payments to Three Square, above other creditors, and/or trade Geo's back indebtedness to Three Square to his benefit by increasing his ownership interest in Geo, notwithstanding his clear conflict of interest.

31. On or about September 25, 2017, and without advising the Geo Board, Levine incorporated Applied Philosophy Lab (APL) in which he was 100% shareholder, President and CEO. Levine did not even inform Geo's Board that he created APL until one week after he created it. Said omission was the act of Levine solely, was a material and constructively fraudulent omission, where Geo relied on Levine's false representations that what he was doing with Crypto

was to benefit Geo, which representations were relied upon by Geo's Board and creditors at least until they learned of Levine's dealings in his own personal interests by setting up separate companies to compete with Geo, and before which time, under then existing circumstances, the Board was justified in reliance thereon.

32. Applied Philosophy Lab, P.B.C., was intended to develop "smart contracts, digital tokens, or other digital representations of assets on a distributed block chain ledger, to finance, track and compensate for the shared ownership of assets, such as solar energy systems, energy storage, smart dwelling sensors and controls, appliances, carpeting real estate, water, soft commodities, vehicles, smart city infrastructure, and other goods and services as well as compensate the suppliers of the assets and collect revenue from those who purchase the assets or subscribe to the goods and services, as well as compensate the suppliers of the asset." Further, Applied Philosophy Lab, P.B.C., was to be responsible for management of Indeco, LLC and to acquire customers, develop distribution channels, contract with suppliers, develop the block chain, and otherwise manage Indeco, LLC. Functionally, Applied Philosophy Lab, P.B.C. was created to be a competitor to Geo, contrary to material and false statements to the contrary to the Geo Board by Levine, which representations were materially false, relied upon by the Geo Board, and of which under the circumstances then existing, it was justified in relying.

33. On or around October 3, 2017, and at some point in 2017, Levine also incorporated Indeco as a wholly owned subsidiary of APL, which, through various name changes and merger, became known as Indeco Union

34. Thereafter, Defendant David A. Levine and/or Applied Philosophy Lab, P.B.C. caused the Geo Board to believe, and made representations to said effect, that he was undertaking formal arrangement between Geo and Applied Philosophy Lab, P.B.C. to license Geo intellectual

property and work collaboratively to the benefit of Geo, which representations were false, material representations upon which the Board relied, and upon which they were justified in relying under the circumstances at the time when made.

35. On or around October 19, 2017, Levine admitted to the Board that all intellectual property that APL used belonged to Geo, but misrepresented to the Board that such intellectual property was to be licensed to APL, when in fact the "corporate opportunity" and intellectual property of Geo for the cryptocurrency, had already been effectively transferred by Levine to APL/Indeco, and Levine had taken no effective steps to protect Geo's intellectual property and trade secrets by virtue of a "licensing agreement" or any other protective agreements, which Geo acknowledged in its prior Crowdfunding Form C would be necessary to not harm Geo's business

36. By this time, Geo's confidential information, and its proprietary code (and trade secrets) had also been changed by Levine to "open source code" to be used for the benefit of APL/Indeco. By this time, Geo had been completely distracted from its initial business model to developing "cryptocurrency," all of which had never been authorized by Geo's Board, all the while Levine was making statements to Geo employees that the Board and senior lenders did not understand his "strategy," but that he was going to pursue it, regardless of whether or not they provided him with approval to do so, all of which attitude and self-serving actions by Levine were not only a breach of his fiduciary duties, but in breach of industry standards and standard of due care owed to a corporation by its Chief Executive Officer, Chairman of the Board, and/or Board member .

37. These actions also caused a breach of the Loan and Security Agreement in existence with Matador Solar Partners, LLC and exposed Geo to claims of breach of contract by Matador Solar Partners, Inc.

38. Applied Philosophy Lab, P.B.C., and Indeco, LLC recognized that David A. Levine had a conflict of interest with Geo, through his holdings and representation on the Board of Directors of Geo, as stated in its Crowdfunding filing, *infra.*

39. Levine caused the website for Geo to be revised to transfer web traffic to a website for Indeco, LLC without the approval of the Board of Directors of Geo, and in violation of Levine's fiduciary duties to Geo.

40. David A. Levine creating of APL as a separate entity, which he owned and controlled, and seeking development of it to his sole personal benefit, allowed Levine to take Geo's employees, technology, and corporate opportunity developed solely for Geo, which he did, to pursue crypto on his own, leaving Geo creditors and shareholders behind, and ultimately resulting in the demise of Geo and a cessation of Geo's main business pursuits, thereby damaging Geo and its creditors

41. On or around November 6, 2017, Levine terminated all of Geo's employees, and immediately thereafter hired Geo's engineering team for Indeco, APL's subsidiary.

42. In or around November, 2017, Levine was supposed to speak at a conference in Los Angeles for Geo, for which Geo paid for his expenses, and represented to the Board this presentation had the potential of raising a $50M offering for Geo's intended "token sale."

43. On or around November of 2017, when Levine did in fact speak at the conference, expenses for which had been paid by Geo, he promoted instead his token idea under a new name, "Indecoin," on behalf of APL/Indeco.

44. On or around November 11, 2017, APL, directed by Levine, its sole shareholder, and unbeknownst to the Geo Board prior to this time, sought to raise money in its own name (not Geo's) through a Regulation Crowdfunding Form C, using the same "Zydeco" cryptocurrency idea

developed for Geo. Wherein under the section Risk Factors, on page 16, APL states "The primary conflict of interest that affects the Company is that our CEO, David Levine, also serves as the CEO of Geo, "our major platform partner."

45. In and about November, 2017, even on the verge of bankruptcy, lenders and investors proposed a "back-to-basics" approach for Geo which former CFO Rhodes referred to as "Rescue Financing" term sheet, conditioned on Levine stepping down as CEO and having no unilateral control of the "New Geostellar" going forward; protecting Geo's rights by making his new corporate ventures subsidiaries of Geo; accepting reduction in compensation, and accepting concessions investors requested from him as the landlord to Geo. Instead, Levine moved forward to urge other creditors to put Geo into "involuntary" bankruptcy.

46. According to a Regulation Crowdfunding Form C prepared by Levine for filing on December 5, 2017 with the Securities and Exchange Commission for Indeco, LLC, Indeco LLC was going to offer a cryptocurrency to be known as "Indecoin."

47. The ideas expressed in subsequent Crowdfunding filings after the one filed on behalf of Geo were appropriated by David A. Levine from the Crowdfunding document prepared earlier for Geo. More than appropriating the ideas expressed in this document, David A. Levine appropriated the business plan of Geo, for competing companies which he had created.

## Count I
**Breach of Fiduciary Duty of Loyalty as CEO, Chairman of the Board, and/or Board Member of Geostellar, Inc.**

48. Plaintiff hereby incorporates by reference the foregoing allegations contained in this Complaint as if fully set out herein.

49. Said actions were in violation of fiduciary duties owed by David A. Levine to Geo and constructively defrauded Geo into retreating from, and abandoning the original purpose of Geo, ultimately causing its demise as a going concern.

50. Levine's actions in pushing Geo into "cryptocurrency" without Board approval; his keeping the Board uninformed and/or misrepresenting to the board what he was doing; his diverting of Geo from its main business model; his use of Geo finances and resources in unilaterally directing firm engineers to work on "crypto" to the exclusion of all else in the later months of 2017, his firing, and then hiring back engineers for Indeco, which upon information and belief, was continued to use Geo finances and resources or money raised from the second Crowdfunding which used Geo's intellectual property to obtain financing; his unilaterally changing Geo's proprietary code to "open source code" to facilitate his cryptocurrency development through APL/Indeco; his jeopardizing Geo's agreements with initial investors (some of whom had liens on Geo's intellectual property); his taking money from Geo to present its idea for a token sale in Los Angeles and presenting instead on behalf of APL/Indeco Union; his failure to cooperate with said investors on a rescue financing plan to "get back-to-basics;" (all the while engaging in multiple conflicts of interest) and working to his own personal benefit rather than the benefit of Geo; and finally in failing to cooperate with Geo's and its Creditors and/or funders financing proposals to "get back to basics," which would have included him stepping down as CEO, constitute violations of his duty of loyalty to Geo.

51. As a result of Levine's breach of his duty of loyalty, Geo's resources were depleted, and Ge's money spent, which directly economically damaged it to the extent of compensation paid by Geo engineers who were diverted from Geo's main-line business to work exclusively on "crypto" from July, 27, 2017 until of or about November 6, 2017, when they were terminated by Levine; legal fees and expenses paid by Geo to attorney Dan Casto and multiple other lawyers at the instigation of Levine for "work on crypto" not only on behalf of Geo, but also on behalf of APL/Indeco and/or Indeco, LLC, much of which was paid for by Geo; the cost of

preparing/filing Crowdfunding Form C for APL/Indeco, using Geo intellectual property, trade secrets, and other resources; the cost to Geo of sending Levine out to California to promote it when in fact Levine went out and promoted Indeco; the value of additional ownership shares in Geo for which he traded Three Square indebtedness while in a conflict of interest; and the extent to which other Geo money and resources were diverted to the benefit of APL/Indeco; all of which direct economic damages are yet unascertained, but believed to be in the millions of dollars.

52. As a further result of Defendant Levine's breach of fiduciary duties, Geo lost the its value to the extent to which investors and financier's relied in funding the original model and/or the "loss-of-chance" value as to the survival/success of Geo had not its business plans, resources, and intellectual property not been distracted and misappropriated, and/or had Levine accepted the "back to basics' approach requested by Board members and creditors of Geo. Finally, to the extent that the "cryptocurrency" idea and resulting intellectual property and trade secrets originally developed by Geo retain any value that value too was wrongfully transferred by Levine from Geo to APL/Indeco Union.

53. As a further result of Defendant Levine's breach of fiduciary duties Said breach also caused substantial unliquidated damages to Geo's reputation and good will.

## Count II
### Negligence

54. Plaintiff hereby incorporates by reference the foregoing allegations contained in this Complaint as if fully set out herein.

55. As Chief Executive Officer, Chairman of the Board, and/or Board Member of Geo, David Levine had a duty of reasonable care to operate his business in accord with all law, regulations, and industry standards developed with respect to the conduct in the Solar Marketplace Industry, or other similar start-up endeavors. A breach by a defendant of his fiduciary duties owed

to a corporation in which he is in a fiduciary position constitutes strong evidence of such a breach of reasonable care, i.e., "negligence."

56.     Defendant Levine's actions aforesaid, including but not limited to, his "cowboy going it alone approach" in plowing the future of Geo into a highly speculative cryptocurrency venture, by setting up separate competing corporations in which only he had ownership interest, by recklessly making solo decisions concerning same with false representations to Board members, and/or by otherwise ignoring Board direction, all the while engaging in conflicts of interest to his own personal financial benefit, and his failure to cooperate with Geo's and its Creditors and/or funders financing proposals to "get back to basics," which would have included him stepping down as CEO, constitute violations of his duty of reasonable care.

57.     As a result of Levine's breach of his duty of reasonable care to Geo as a Chief Executive Officer, Chairman of the Board and/or Board member, Geo was proximately damages as alleged herein, including the following: Geo's resources were depleted, and Geo's money spent, which directly economically damaged it to the extent of compensation paid by Geo engineers who were diverted from Geo's main-line business to work exclusively on "crypto" from July, 27, 2017 until of or about November 6, 2017, when they were terminated by Levine; legal fees and expenses paid by Geo to attorney Dan Casto and multiple other lawyers at the instigation of Levine for "work on crypto" not only on behalf of Geo, but also on behalf of APL/Indeco, much of which was paid for by Geo; the cost of preparing/filing Crowdfunding Form C for APL/Indeco, using Geo intellectual property, trade secrets, and other resources; the cost to Geo of sending Levine out to California to promote it when in fact Levine went out and promoted Indeco; the value of additional ownership shares in Geo for which he traded Three Square indebtedness while in a conflict of interest; and the extent to which other Geo money and resources were diverted to the

benefit of APL/Indeco; all of which direct economic damages are yet unascertained, but believed to be in the millions of dollars.

58.     As a further result of Levine's negligence, Geo lost the its value to the extent to which investors and financier's relied in funding the original model and/or the "loss-of-chance" value as to the survival/success of Geo had not its business plans, resources, and intellectual property not been distracted and misappropriated, or had Levine not failed to go along with Board Member and creditors requests for a "back-to-basics" approach.  Finally, to the extent that the "cryptocurrency" idea and resulting intellectual property and trade secrets originally developed by Geo retain any value that value too was wrongfully transferred by Levine from Geo to APL/Indeco Union.

59.     As a further result of Levine's negligence, Geo's reputation and good will were destroyed.

<u>**Count III**</u>
**Constructive Fraud and/or Negligent Misrepresentation of Facts**

60.     Plaintiff hereby incorporates by reference the foregoing allegations contained in this Complaint as if fully set out herein.

61.     To show an actionable claim for "fraudulent misrepresentation," Plaintiff must show (1) that the act claimed to be fraudulent as the act of the defendant or induced by him; (2) that it was material or false; the plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it. To demonstrate an actionable claim for Negligent Misrepresentation, Plaintiff needs to demonstrate that a person under a duty to give information to another (such as Levine to the Geo Board), who makes an erroneous statement when he has no knowledge on the subject, and thereby mislead the other to his injury, is as much liable in law as if he had intentionally stated a falsehood. In addition,

fraudulent misrepresentations may constitute intentional, active fraud, or constructive fraud. Giving Levine the benefit of doubt, Plaintiff alleges that the various fraudulent or negligent misrepresentations of act as alleged against Levine here were the product of his "incorrect" thinking that he was "smarter" than anyone else, and accordingly did not have to "play by the rules" of everyone else, rather than intentionally fraudulent. Notwithstanding, all of said statements constituted actionable constructive fraud, and/or negligent misrepresentations as herein alleged, caused Plaintiff to be "defrauded," and to have relied to its detriment, and causing all damages as alleged herein.

62. As a result of Levine's constructively fraudulent and/or negligent misrepresentations of fact, Geo's resources were depleted, and Geo's money spent, which directly economically damaged it to the extent of compensation paid by Geo engineers who were diverted from Geo's main-line business to work exclusively on "crypto" from July, 27, 2017 until of or about November 6, 2017, when they were terminated by Levine; legal fees and expenses paid by Geo to attorney Dan Casto and multiple other lawyers at the instigation of Levine for "work on crypto" not only on behalf of Geo, but also on behalf of APL/Indeco, much of which was paid for by Geo; the cost of preparing/filing Crowdfunding Form C for APL/Indeco, using Geo intellectual property, trade secrets, and other resources; the cost to Geo of sending Levine out to California to promote it when in fact Levine went out and promoted Indeco; the value of additional ownership shares in Geo for which he traded Three Square indebtedness while in a conflict of interest; and the extent to which other Geo money and resources were diverted to the benefit of APL/Indeco; all of which direct economic damages are as yet unascertained, but believed to be in the millions of dollars.

63. As a further result of Defendant Levine's constructively fraudulent and/or negligent misrepresentation of facts, Geo lost the its value to the extent to which investors and financier's relied in funding the original model and/or the "loss-of-chance" value as to the survival/success of Geo had not its business plans, resources, and intellectual property not been distracted and misappropriated, or had Levine gone along with board members and creditors request to "get-back-to basics." Finally, to the extent that the "cryptocurrency" idea and resulting intellectual property and trade secrets originally developed by Geo retain any value that value too was wrongfully transferred by Levine from Geo to APL/Indeco Union.

64. As a further result of Defendant Levine's constructively fraudulent and/or negligent misrepresentation of facts, Geo suffered substantial damage to its reputation and good will.

## Count IV
### Violation of Uniform Trade Secrets Act

65. Plaintiff hereby incorporates by reference the foregoing allegations contained in this Complaint as if fully set out herein.

66. Under the Uniform Trade Secrets Act, W. Va. Code, § 47-22-1, *et seq.*, "misrepresentation," and/or constructive fraud, the "breach or inducement of a breach of a duty," as present here, may support a claim for "misappropriation" of "trade secrets." § 47-22-1 (a) & (b), without a finding of "theft," or "actual fraud."

67. As a result of Levine's violation of the Uniform Trade Secrets Act as alleged herein, Geo's resources were depleted, and Geo's money spent, which directly economically damaged it to the extent of compensation paid by Geo engineers who were diverted from Geo's main-line business to work exclusively on "crypto" from July, 27, 2017 until of or about November 6, 2017, when they were terminated by Levine; legal fees and expenses paid by Geo to attorney

Dan Casto and multiple other lawyers at the instigation of Levine for "work on crypto" not only on behalf of Geo, but also on behalf of APL/Indeco, much of which was paid for by Geo; the cost of preparing/filing Crowdfunding Form C for APL/Indeco, using Geo intellectual property, trade secrets, and other resources; the cost to Geo of sending Defendant Levine out to California to promote it when in fact Levine went out and promoted Indeco; the value of additional ownership shares in Geo for which he traded Three Square indebtedness while in a conflict of interest; and the extent to which other Geo money and resources were diverted to the benefit of APL/Indeco; all of which direct economic damages are yet unascertained, but believed to be in the millions of dollars.

68. As a further result of Defendant Levine's violation of the Uniform Trade Secrets Act, Geostellar lost the its value to the extent to which investors and financier's relied in funding the original model and/or the "loss-of-chance" value as to the survival/success of Geo had not its business plans, resources, and intellectual property not been distracted and misappropriated. Finally, to the extent that the "cryptocurrency" idea and resulting intellectual property and trade secrets originally developed by Geo retain any value that value too was wrongfully transferred by Levine from Geo to APL/Indeco Union.

69. As a further result of Defendant Levine's violation of the Uniform Trade Secrets Act, Geo's reputation and good will was substantially destroyed.

WHEREFORE, the Bankruptcy Estate of Geostellar, Inc., demands judgment against David A. Levine, for its damages including attorney's fees.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES TRIABLE TO A JURY.**

        Respectfully submitted,

        MARTIN P. SHEEHAN, Trustee of the
Bankruptcy Estate of Geostellar, Inc.,

        /s/ Martin P. Sheehan

Martin P. Sheehan, Esq.
(WV State Bar No. 4812)
**SHEEHAN & ASSOCIATES, PLLC**
1 Community Street, Ste 200
Wheeling, WV  26003
P:  (304) 232-1064
F:  (304) 232-1066
sheehanparalegal@wvdsl.net

Patrick S. Cassidy, Esq. (WVSB #671)
Timothy F. Cogan, Esq. (WVSB #764)
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.C.
1413 Eoff St.
Wheeling, WV 26003
P: 304-232-8100
F: 304-232-8200
pcassidy@walslaw.com
tfc@walslaw.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **IN RE:  GEOSTELLAR, INC.** | **BK. NO. 3:18-BK-0045** |
| **MARTIN P. SHEEHAN,** Trustee of the Bankruptcy Estate of Geostellar, Inc., | **CIVIL NO. 3:19-AP-00024** |
| **Plaintiff,** | |
| v. | |
| **DAVID A. LEVINE,** | |
| **Defendants.** | |

**CERTIFICATE OF SERVICE**

       This is to certify that on the 3rd day of August, 2021, the foregoing **Amended Complaint** was filed electronically via the Court's EM/ECF filing system, which will send notification of such filing to all counsel of record.

                                          MARTIN P. SHEEHAN, Trustee of the
                                          Bankruptcy Estate of Geostellar, Inc.,

                                          /s/ Martin P. Sheehan

Martin P. Sheehan, Esq.
(WV State Bar No. 4812)
**SHEEHAN & ASSOCIATES, PLLC**
1 Community Street, Ste 200
Wheeling, WV  26003
P:  (304) 232-1064
F:  (304) 232-1066
sheehanparalegal@wvdsl.net