## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

    GEOSTELLAR, INC.,                           Bankruptcy Case No. 18-00045

    Debtor.                                        Chapter 7

    MARTIN P. SHEEHAN, TRUSTEE,          Adversary No. 19-00024

    Plaintiff,

v.

    DAVID ANDREW LEVINE,

    Defendant.

### Response of Plaintiff to Motion to Dismiss

Now comes Martin P. Sheehan, Trustee of the Bankruptcy Estate of Geostellar, Inc., by his attorneys, Patrick S. Cassidy, Esq.,and Timothy Cogan, Esq., and Cassidy, Cogan, Shapell & Voegelin, L.C. and Martin P. Sheehan, Esq., and Sheehan & Associates, PLLC and file this Response to the Motion to Dismiss filed by David Levine (Levine).

THE GIST OF THE ACTION DOCTRINE DOES NOT IMPERIL THIS COMPLAINT

1. Defendants erroneously claim that all the claims are based upon contract, Doc. 74, pp. 14-15, and rely upon a "gist of the action" theory. The duties do not arise solely from his employment agreement, which may provide additional duties Levine owed the corporation.

2. Under the gist of the action doctrine, recovery in tort will be barred when any of the following factors is demonstrated:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.
>
> *Star v. Rosenthal,* 884 F.Supp.2d 319, 328–29 (E.D.Pa.2012); *accord Backwater Props., LLC v. Range Resources–Appalachia, LLC,* No. 1:10CV103, 2011 WL

{00189547.1}                                        1

1706521 at *6 (N.D.W.Va.2011) (recognizing that "[u]nder the 'gist of the action' doctrine, a tort claim arising from a breach of contract may be pursued only if the action in tort would arise independent of the existence of the contract") (internal citations omitted and quoting Syl. Pt. 9, in part, *Lockhart v. Airco Heating & Cooling, Inc.,* 211 W.Va. 609, 567 S.E.2d 619 (2002)); *Cochran v. Appalachian Power Co.,* 162 W.Va. 86, 92–93, 246 S.E.2d 624, 628 (1978) (stating that "where the gist of the action is the breach of contract ... additional averments ... will not convert the cause of action into one for tort") (quoting 1 Am. Jur. 2d *Actions* § 8 (1962)).

*Gaddy Eng. Co. v. Bowles Rice McDavid Graff & Love, LLP,* 231 W.Va. 577, W.Va.586, 746 S.E.2d 568, 577 (2013)(per curiam).

3. Defendant simply has not discharged his burden of convincing this Court that the duties relied upon in the present proposed complaint derive solely from the employment agreement rather than from common law, because they cannot; Plaintiff carefully alleged only common law or statutory breaches in the amended complaint (AC).

4. Defendant remarkably claims that a breach of fiduciary duty claim – and even a negligence claim - are contractual claims: "the gist of the action doctrine prohibits the Trustee from casting his breach of fiduciary duty **and other contractual claims as tort claims.**" Doc. 74, p. 15. This is so far outside the mainstream – that a negligence claim sounds in contract and not in tort – as to be meritless. "[I]n matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which results in an injury to others." *Sewell v. Gregory,* 371 S.E.2d 82, 84 (1988)(citation omitted).

5. Defendant also remarkably fails to acknowledge *Tri-State Petroleum Corp. v. Coyne*, 814 S.E.2d 205, 216 (W.Va. 2018), where the trial court and the Supreme Court of Appeals rejected the argument that the plaintiff's breach of fiduciary duty claim was barred by the gist of the action doctrine because it also breached a Partnership and a Stockholders Agreements, "and that this Court's reasoning in *Gaddy Engineering Co. v. Bowles Rice McDavid Graff &*

*Love*, *LLP* barred [plaintiff's]**tort claim** as a matter of law." *Id.* See also Tri-State's syllabus points 3 and *4*.

> 3. "While the officers and directors of a business corporation are accorded a rather broad latitude in the conduct of the affairs of the corporation, they occupy a fiduciary relationship toward it and its shareholders. The same fiduciary relationship exists on the part of the majority shareholders of a business corporation toward its minority shareholders." Syllabus Point 2, *Masinter v. WEBCO Co.*, 164 W. Va. 241, 262 S.E.2d 433 (1980).
>
> 4. "A violation of the fiduciary relationship may result from oppressive conduct, which is conduct that departs from the standards of good faith and fair dealing which are inherent in the concept of a fiduciary relationship." Syllabus Point 3, *Masinter v. WEBCO Co.*, 164 W. Va. 241, 262 S.E.2d 433 (1980).

6.      Defendant has to prove, as it says, that "the Employment Agreement and Addendum...[and] the obligations therein are the sole basis of the Trustee's action." Doc. 74, p. 15.  A majority shareholder, for example, owes a duty of care toward the corporation, under *Tri-State* and *Masinter* (and legions of other cases) contrary to the statement "the duties alleged to have been breached by Mr. Levine arise solely from his Employment Agreement and Addendum with Geostellar." Doc. 74, p. 16.  Defendant's position is not and never has been the law. E.g. *Masinter* and West Virginia Code 31D-8-841, which provides "Standards of liability for directors."

7.      Levine here denies any "legal or equitable duty" to inform Geostellar of facts of which it was unaware, Doc. 74, p. 17. That assertion is directly contrary to *Bailey v. Vaughn,* 359 S.E.2d 599 (W.Va. 1987), holding that a director, who solicits a shareholder to purchase the shareholder's stock and fails to disclose information not known to the shareholder that bears upon the potential increase in value of the shares, is liable to the shareholder.

Writing for the Court in *Bailey*, Justice Thomas B. Miller stated:

> We utilized the teachings of *Meadows* to establish Syllabus Point 2 of *Masinter v. Webco Co.,...* 262 S.E.2d 433 (W.Va. 1980):

> "While the officers and directors of a business corporation are accorded a rather broad latitude in the conduct of the affairs of the corporation, **they occupy a fiduciary relationship toward it and its shareholders**. The same fiduciary relationship exists on the part of the majority shareholders of a business corporation toward its minority shareholders."

*Bailey,* 359 S.E.2d at 605 (emphasis added).

8. A lead case, *Masinter,* cited over 400 times, in turn cited *Hopkins v. Bryant,* 6 S.E.2d 246 (1939), which "**concerned the fiduciary relationship owed by executive officers to the corporation** and its shareholders." *Masinter*, 262 S.E.2d at 439–40 (footnote omitted).

9. Also, the California court "recognized the right of a federally-chartered savings and loan to sue under federal common law its former officers, directors and employers for breach of fiduciary duty." *Fed. Sav. & Loan Ins. Corp. v. Musacchio,* 695 F.Supp. 1053, 1072 (N.D.Cal.1988), *citing Eureka Federal Savings and Loan Assoc. v. Kidwell,* 672 F. Supp. 436 (N.D.Cal.1987). *See also AmeriFirst Bank v. Bomar,* 757 F.Supp. 1365 (S.D. Fla 1991) (common law claim for breach of fiduciary duty of accountant to corporation).

10. This Court recognized that "[d]irectors and officers may incur personal liability, however, if they fail to act in good faith, with due care, and in the best interests of the corporation while performing their official duties," *Sheehan v. Saoud*, 526 B.R. 166, 179–80, amended in part, 2015 WL 69322 (N.D.W.Va), and aff'd in part, 650 Fed. Appx. 143 (4th Cir. 2016).

11. The classical "gist of the action" finding occurs when a plaintiff simultaneously asserts claims arising from a contract and those arising in tort, as in *Gaddy*: "whether a **tort claim can coexist with a contract claim** is determined by examining whether the parties' obligations are defined by the terms of the contract." *Gaddy,* 746 S.E.2d 568, 577. That is not all the case here: the tort claims do not coexist with a contract claim. No contract claims appear in the amended complaint.

## THIS COURT SHOULD NOT ORDER ARBITRATION

12. The Court denied a motion in opposition to filing an amended complaint and an amended complaint was filed.

13. As Defendants concede, the amended complaint abandons claims raised in the original complaint, which specific claims Judge Flatley said were arbitrable, though he "never entered a final order forwarding this case to arbitration." Doc. 74, MTD, p. 10.

14. When Judge Flatley stated that certain claims in the previous complaint, based upon the arbitration clause, were arbitrable, he stayed that ruling to see what claims were filed.

> "[I]t is possible that the filing of a proof of claim by the trustee may affect the court's ultimate analysis regarding enforcement of the arbitration clause in the Employment Agreement…the court finds it appropriate to hold Defendants' motion to dismiss in abeyance…"

Memorandum Decision (Doc. 14), p. 5

15. This is particularly true since the Amended Complaint filed in the "underlying" suit in no way relies upon the employment contract of Geostellar with Levine. This Court recognized that in granting leave to Trustee Sheehan to file said Amended Complaint in the face of a Motion to Dismiss. Judge Flatley's decision has become moot in view of the elimination of contract claims and filing a proof of claim by the Geostellar Trustee against the Levine Bankruptcy Estate. "A case can become moot either due to a change in factual circumstances, or due to a change in the law." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir 2011).

16. The complaint having been amended, the only current claims are these, which are not those to which the court's Memorandum Order applied, for they are not "the trustees' causes of action" Doc. 14 pp. 5-6: breach of fiduciary duty, Count I; negligence Count II; Constructive Fraud, Count III; and violation of the Uniform Trade Secrets Act, Count IV. MTD, Doc. 74 p. 3.

17. When the complaint was amended, the entire rationale for the arbitration ended.

The original complaint was based upon, and related to, that contract. The amended complaint abandoned those theories. When the rationale for a ruling is gone, the ruling is so eroded as to be moot.

18. The Geostellar Trustee has done more than sue Levine. The Geostellar Trustee has a filed a proof of claim against the Levine Bankruptcy Estate. When Judge Flatley stated that certain claims in the previous complaint were arbitrable, he stayed that ruling to see what claims were filed. Any notion of lifting that stay must consider the fact of such a claim against the Levine Bankruptcy Estate.

19. Judge Michael, writing in *Phillips*, affirmed that the district court had discretion (and did not abuse it) in refusing the order arbitration, essentially because the issue was so fundamental to the bankruptcy proceedings. The court found that allowing the adversary proceeding to go forward would "allow all creditors, owners and parties in interest to participate [in a centralized proceeding] at a minimum of cost." *In re White Mountain Mining Co., L.L.C.,* 403 F.3d 164, 170 (4th Cir.2005), held that **"in the bankruptcy setting, congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override ... arbitration agreements."** *Id.* The Fourth Circuit reasoned that:

> The very purpose of bankruptcy is to modify the rights of debtors and creditors, and Congress intended to centralize disputes about a debtor's assets and legal obligations in the bankruptcy courts. Arbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights contingent upon an arbitrator's ruling rather than the ruling of the bankruptcy judge assigned to hear the debtor's case. Centralization of disputes concerning debtor's legal obligations is especially critical in [C]hapter 11 cases, like White Mountain's.

*Id.* at 169–70(internal citations omitted).

> Even if a matter is constitutionally core, a bankruptcy court possesses broad discretion to grant a motion to compel arbitration if there is a written agreement to arbitrate and if doing so would be helpful to the court and would assist the

bankruptcy court in exercising its bankruptcy jurisdiction. FED. R. BANK. P. 9019(c)

*In re Barker* 510 BR 771, 777 (WD NC 2014).

In *Ford Motor Credit Co. v. Roberson*, 2010 WL 4286077, *3 (D.Md), the district court affirmed the bankruptcy court which had refused arbitration when it "determined that, as *In re White Mountain,* "the centralization of disputes is not insignificant,'" *3

20. This issue arises "in a bankruptcy proceeding" and jurisdiction exists under *11 U.S.C. § 157(a)*. The issue specifically arises pursuant to *11 U.S.C. § 541*. As such, this case involves a core issue under *28 U.S.C. § 157(b)(2)(E),* and an order to turn over property of the estate. It may also be a core issue under *28 U.S.C. § 157(b)(2)(A), and (O)*.

21. While Levine claims that the differences between the original complaint, now a nullity, and the amended complaint are merely a matter of "labels," Doc. 74, MTD, p. 12, the distinctions between those claims and these are fundamental, as set forth.

22. Defendant claims that the Employment Agreement was "expressly referenced in the amended complaint, *id*. It was not.

23. Defendant claims that his claims are based solely in Mr. Levine's Employment agreement, Doc. 74, p. 13. The implication is that, unless there were such an Agreement, Levine would owe no common law duty of care, nor fiduciary duty, nor statutory duty to the corporation and its trustees, some of the duties implicated in the amended complaint. As previously demonstrated, Levine owes such duties, as shown *supra.*

24. Regarding the claim that the amended complaint contains "no more than labels and formulaic recitation…devoid of further factual enhancement," a glance at the amended complaint shows this to be untrue.

25. Defendants seek that this Court turn a blind eye on decades of West Virginia case

law to say – or even suggest - that any employment agreement was the sole source of Levine's duty to Geostellar.

26. Here again, Levine relies upon an original complaint for which Plaintiff substituted an amended complaint. With the granting of that amendment and substitution, that original complaint became a nullity (apart from any statute of limitations demonstration). *King v. Dogan*, 31 F.3d 344, (5th Cir. 1994)(an amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." At 346)(cit. omitted).

### The Amended Complaint Fully Complies With Fed. R. Civ. P 9(B)

27. Fed. R. Civ. P. 9 states in pertinent part:

> (b) FRAUD OR MISTAKE; CONDITIONS OF MIND. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Wright & Miller states:

> Of primary importance in understanding the particularity required of Rule 9(b) is the recognition that the general principles set forth in Rule 8 [e.g. a short and plan statement of claim] entirely inapplicable to pleadings alleging fraud; that the two rules must be read in conjunction with each other.

*Wright & Miller, Federal Practice & Procedure* Civil 2d (2nd Ed.) §1298, citing dozens of cases.

28. While Levine states that no fraudulent statements are set out in the amended complaint, it instead sets out "false and constructively false statements and representations," AC ¶ 20, including the following:

- that a cryptocurrency token could be traded at the value of one watt of energy per token, *id*;

- that cryptocurrency would not only save Geostellar, Inc. (Geo), but make it profitable; would pay off all creditors, and/or was consistent with what Geo was doing promoting a Solar Marketplace, *id;*

- what Levine was doing with Crypto was to benefit Geo, AC ¶ 31;

- that Applied Philosophy Lab, P.B.C. was not a competitor to Geo, AC ¶32; and

- that Levine was undertaking formal arrangement between Geo and Applied Philosophy Lab, P.B.C. to license Geo's intellectual property and work collaboratively to the benefit of Geo. *Id.* ¶¶ 34, 35.[1]

29. As the Supreme Court of Appeals stated,

"'an action for fraud can arise by the concealment of truth.'" *Teter* [*v Old Colony*] 190 W.Va.[711] at 717, 441 S.E.2d [728] at 734 [1994] (quoting *Thacker v. Tyree,* 171 W.Va. 110, 113, 297 S.E.2d 885, 888 (1982)). Such a basis for a claim of fraud is possible because "[f]raud is the concealment of the truth, just as much as it is the utterance of a falsehood." *Frazier v. Brewer,* 52 W.Va. 306, 310, 43 S.E. 110, 111 (1902). *See also Van Deusen v. Snead,* 247 Va. 324, 328, 441 S.E.2d 207, 209 (1994) ("'[C]oncealment always involves deliberate nondisclosure designed to prevent another from learning the truth. A ... party's willful nondisclosure of a material fact that he knows is unknown to the other party may evince an intent to practice actual fraud.' (quoting *Spence v. Griffin,* 236 Va. 21, 28, 372 S.E.2d 595, 598–99 (1988)))

*Kessel v. Leavitt,* 204 W.Va. 95, 127–28, 511 S.E.2d 720, 752–53 (1998). *Kessel* stressed that the plaintiff need not preface every action with "fraudulently."

30. The U.S. Supreme Court also broadly defined "fraud."

---

[1] These are incorporated into the Count III, Constructive Fraud and/or Negligent Misrepresentation of Facts. *Id.* ¶60. While a constructive fraud claim was and remains viable, Plaintiff concedes that no such claim may provide a basis to deny Mr. Levine a discharge per 11 U.S.C. § 523(a)(2). This case remains viable against Mr. Levine to the extent of coverage.

> "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Neal v. Clark,* 95 U.S. 704, 709… (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Ibid.* Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."
> Although "fraud" connotes deception or trickery generally, the term is difficult to define more precisely. See 1 J. Story, Commentaries on Equity Jurisprudence § 189, p. 221 (6th ed. 1853) (Story) ("Fraud ... being so various in its nature, and so extensive in its application to human concerns, it would be difficult to enumerate all the instances in which Courts of Equity will grant relief under this head"). There is no need to adopt a definition for all times and all circumstances.

*Husky Intern. Elecs., Inc. v. Ritz,* 136 S.Ct. 1581, 1586–87 (2016).

31. The gravamen of the amended adversary complaint is constructive fraud, as opposed to "actual" fraud." *See* Doc. 71, Count III, ¶¶60-64. Constructive fraud is fully recognized in West Virginia.

> Perhaps the best definition of constructive fraud is that it exists in cases in which conduct, although not actually fraudulent, ought to be so treated, that is, in which conduct is a constructive or *quasi fraud*, which has all the actual consequences and legal effects of actual fraud. *In Re Arbuckle's Estate*, 98 Cal.App.2d 562, 220 P.2d 950 (1950). Constructive fraud does not require proof of fraudulent intent. The law indulges in an assumption of fraud for the protection of valuable social interests based upon an enforced concept of confidence, both public and private.

*Stanley v. Sewell Coal Co***.** 285 S.E.2d 679, 683 (W.Va. 1981)

> "Constructive fraud" is a breach of legal or equitable duty which irrespective of moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interest, and neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud, whereas intent to deceive is an essential element of actual fraud, the presence or absence of such intent distinguishes actual from constructive fraud.

*Miller v. Huntington & Ohio Bridge Co.,* 15 S.E.2d 687 (W.Va. 1941)

32. Constructive fraud is fully set out in the amended complaint. Doc. 71, Count III, ¶¶60-64. The Trustee's legal position is sufficiently plausible under the rubric of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) to state a claim.

{00189547.1}                                                                 10

ECONOMIC LOSS DOCTRINE DOES NOT DEFEAT THIS COMPLAINT

33. In *Aikens [v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000)], the West Virginia Supreme Court of Appeals held as follows:

> [W]e conclude that an individual who sustains purely economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor.

541 S.E.2d at 589 (emphasis added).

*City of Charleston, W. Virginia v. Joint Commission*, 473 F.Supp.3d 596, 615 (S.D.W.Va. 2020)

34. Defendant seeks to eliminate key requirements of this rule. It excludes "purely economic loss from an interruption in commerce." Thus Defendants want this Court to disregard two aspects, one being its strict application, the other this "interruption in commerce."

35. The court emphasized that its holding "applies **strictly** to plaintiffs alleging purely economic loss from an interruption in commerce caused by another's negligence" and does not affect claims of "medical monitoring, negligent infliction of emotional distress cases, or nuisance," which may lack physical injury to claimant or his or her property. *Id.* at 591. *City of Charleston, W. Virginia v. Joint Commission, ibid.*

36. The classical example of a claim barred by the economic loss rule is presented by the *Aikens* case, where a motel owner sued a truck driver who damaged a bridge which caused the motel owner to suffer an "interruption in commerce," or loss of business from the access provided by the bridge. Alleged injuries do not qualify as "purely" economic loss when they also include attendant damage to a claimant's property or person. *Charleston v. Joint Commission*, at 616.

37. Further showing the inapplicability of the economic loss rule, is the finding from a law review article cited by *Aikens* and *City of Charleston*, which provides yet a third severe deficit: "Subject to qualifications, one not in a special or contractual relationship owes no duty of care to **protect strangers** against stand-alone economic harm." *An Introduction to Non-Statutory Economic Loss Claims,* 48 Ariz. L. Rev. 713, 714 (2006)(footnote omitted). This Plaintiff, Trustee for a company that Defendant Levine created, who paid for the insurance at issue, is hardly a stranger where the lurking issue is insurance and who consents to a settlement. *See e.g. Greenblatt v. Ford,* 638 F.2d 14 (4th Cir.1981); *In re: Ford,* 3 B.R., 559 (Bkrtcy. D. Md.1980), that the trustee obtains "the debtor's undivided interest."

38. The Trustee is no stranger. He is the representative of the bankruptcy entity that Levine injured. The Trustee stands in the shoes of that entity. Yet, assuming *arguendo* that he was, the rule does not prevent the relief here sought. As seen *supra,* Levine has a special relationship to the interest to which the Trustee succeeded.

39. Defendant's action causes foreseeable harm to the Trustee and those interests. Levine diverted corporate opportunities from Geo to Indeco and others (and the insurance company, owing a duty of good faith and fair dealing to the Trustee, seeks essentially to deprive the insured, the Trustee, of coverage for which he has paid. *See Anderson v. Robinson,* 186 W.Va. 92, 411 S.E.2d 35 (1991), where the West Virginia Supreme Court held that the bankruptcy of a tortfeasor should not create a windfall for an insurance company).

WHEREFORE THE PLAINTIFF ASKS THAT THE MOTION TO DISMISS AND TO COMPEL ARBITRATION BE DENIED AND FOR OTHER APPROPRIATE RELIEF.

Respectfully submitted,

s/ *Patrick S. Cassidy*

Patrick S. Cassidy, Esq.
(WV State Bar No. 671)
Timothy F. Cogan, Esq.
(WV State Bar No. 764)
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L. C.
The First State Capitol
1413 Eoff Street
Wheeling, WV 26003
P: (304) 232-8100
F: (304) 232-8200
pcassidy@walslaw.com
tfc@walslaw.com

Martin P. Sheehan, Esq.
WV State Bar No. 4812
SHEEHAN & ASSOCIATES, PLLC
1 Community Street, Ste 200
Wheeling, WV  26003
P:  (304) 232-1064
F:  (304) 232-1066
sheehanparalegal@wvdsl.net

*for the Trustee of the Bankruptcy Estate of Geostellar, Inc.*

**CERTIFICATE OF SERVICE**

Service of the foregoing was had upon the parties by electronic notification sent via the Court's CM/ECF system this 29th day of October, 2021

s/ Patrick S. Cassidy