**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

In re:

GEOSTELLAR, INC.,

        Debtor.

Case No.: 3:18-BK-0045

_____

MARTIN P. SHEEHAN, Trustee of the
Bankruptcy Estate of Geostellar, Inc.,

        Plaintiff,

v.

DAVID A. LEVINE and INDECO UNION, a
Delaware corporation,

        Defendants.

## REPLY OF PHILADELPHIA INDEMNITY INSURANCE COMPANY IN OPPOSITION TO OBJECTIONS TO ALLOW PAYMENT OF DEFENSE COSTS FOR DEFENDANT, DAVID A. LEVINE

    Philadelphia Indemnity Insurance Company ("PIIC") hereby files this Reply in Opposition to the Objections to allowing PIIC to pay reasonable and necessary Defense Costs for the Defendant, David Levine ("Levine"), in the captioned Lawsuit. Subsequent to the filing of PIIC's original motion, three separate objections were lodged with the Court. Specifically, Martin P. Sheehan, Trustee of the Bankruptcy Estate of Geostellar, Inc. (the "Trustee") filed an objection to the payment stating that there is no reason to diminish the funds available to satisfy a judgment, if and when a judgment is obtained by the Plaintiff. Doc. No. 163, p. 2. David Cox, a creditor in the Geostellar, Inc. bankruptcy case also filed an objection. Doc. No. 164. Last, Marge Schwartz, also a creditor in the Geostellar bankruptcy case, filed an objection to the motion. Doc. No. 165.

## I.     The Trustee's Objection Lacks Merit

PIIC's motion is a routine request for a D&O insurer when an insured director or officer is the subject of adversary litigation brought by a bankruptcy trustee on behalf of creditors, which relates to payment of defense costs, not whether indemnity for a judgment might ultimately covered, for which PIIC has reserved its rights. The objection of the Trustee is the only objection that attempts to assert legal arguments. These arguments are contrary to prevailing law, and should fail.

In his objection, the Trustee asserts that "There is no reason to diminish the funds available to satisfy a judgment if, and when obtained by the Plaintiff in this case. The prima facie claim filed by the Plaintiff exceeds the policy limits and diminution of the available funds are likely to injure the Bankruptcy Estate of Geostellar, Inc." Doc. No. 163, p. 2. The Trustee argues that Levine is not entitled to receive payment of his reasonable and necessary "Defense Costs" under Private Company Protection Plus Policy No. PHSD1249816 (the "Policy") [Doc. No. 159] because doing so would cause the "diminution of its claim by an incursion into the full value of the policy." Doc. No. 163, p. 3.

The Trustee suggests that he is entitled to protect the proceeds of the Policy from diminution based on his position as the Trustee for Debtor, Geostellar, Inc. ("Debtor"). However, in suing Debtor's former officer, the Trustee is not seeking to protect Debtor's right to coverage under the Policy for a defense or indemnity in regard to a pending or hypothetical future lawsuit against Debtor itself, but he is instead seeking recovery from a former officer of the Debtor, as would any other third party. In *In re Allied Digital Technologies Corp.,* 306 B.R. 505, 512-513 (Bankr. D. Del. 2004), the court explained the importance of this distinction, finding:

> Here, the Trustee brought the action against the directors and officers. The policy in question provides direct coverage to the directors and officers for claims and defense costs (which are real), and indemnification coverage to the company for amounts paid to the directors and officers (which is hypothetical). The Trustee has

2

>made no credible showing that the direct coverage of Allied Digital under Clause B(i) for securities claims has any continuing vitality. *The Trustee's real concern is that payment of defense costs may affect his rights as a plaintiff seeking to recover from the D&O Policy rather than as a potential defendant seeking to be protected by the D&O Policy. In this way, Trustee is no different than any third party plaintiff suing defendants covered by a wasting policy.* No one has suggested that such a plaintiff would be entitled to an order limiting the covered defendants' rights to reimbursement of their defense costs.
>
>The bottom line is that the Trustee seeks to protect the amount he may receive in his suit against the directors and officers while limiting coverage for the defense costs of the directors and officers. This is not what the directors and officers bargained for. In bringing the action against the directors and officers, the Trustee knew that the proceeds could be depleted by legal fees and he took that chance. The law does not support the Trustee's request to regulate defense costs.

(Emphasis added.)

The court's approach in *Allied Digital* has been widely adopted by courts in other jurisdictions. *See, e.g., In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (D. S.C. 2011) (citing *Allied Digital* in rejecting the plaintiff trustee's argument that defendants should not be able to receive their defense costs paid from the policy because by doing so it would reduce the trustee's recovery as a plaintiff); *In re Laminate Kingdom LLC*, 2008 Bankr. LEXIS 1594, **10-**11 (Bankr. S.D. Fla. Mar. 13, 2008) (following *Allied Digital* in another matter involving a trustee seeking to prevent the payment of defense costs for an individual insured's defense in a lawsuit filed by the trustee); *Miller v. McDonald (In re World Health Alternatives, Inc.)*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (citing *Allied Digital* for the proposition that the Trustee is no different from any other third party when seeking recovery from an Insured that has a wasting policy); and *In re Licking River Mining, LLC*, 2016 Bankr. LEXIS 2211 (Bank. E.D. KY. Jun. 6, 2016) ("In looking to preserve a funding source to satisfy a judgment, the Trustee is not seeking to preserve estate assets. As such, there is no reason she should be treated differently than any other third-

party plaintiff suing the Movants"). Accordingly, the Trustee, acting as a plaintiff, is not entitled to prevent Levine from obtaining payment of Defense Costs he is due under the Policy.

Payment of Defense Costs erode the Policy limits that *may* be available for indemnity payments, *if* there are sufficient limits, according to the Policy's terms. The Policy provides a Limit of Liability for all Claims during the Policy Period under Part 1, the D&O Liability Insurance, of $3 million [Doc. No. 159, p. 15], with payment of Defense Costs eroding the Limit of Liability pursuant to Part 6, COMMON POLICY CONDITIONS, SECTION I., LIMITS OF LIABILITY, Subsection D. Doc. No. 159, p. 64. The Limit of Liability provided by the Policy is shared by the Individual Insureds, including Levine, and the Private Company, Debtor.

The Policy contains an Order of Payments provision that gives priority to Individual Insureds in the event that the Limit of Liability under the Policy may not be sufficient to address potential Losses incurred by an Individual Insured and by Debtor. A situation in which a "Loss" may exceed the Policy's available Limit of Liability for Part 1 (the D&O Liability Insurance), is addressed under Part 6, COMMON POLICY CONDITIONS, Section III., DEFENSE AND SETTLEMENT, Subsection H., ORDER OF PAYMENTS, which provides:

> H.   ORDER OF PAYMENTS
>
> In the event of Loss arising from one or more Claims for which payment is otherwise due under Part 1 (Directors and Officers Liability Insurance) but which Loss in the aggregate exceeds the remaining available Limit of Liability for Part 1 (Directors and Officers Liability Insurance), the Underwriter shall:
>
> 1.   first, pay such Loss for which coverage is provided under Insuring Agreement A (INDIVIDUAL LIABILITY COVERAGE); then
>
> 2.   with respect to whatever remaining amount of the Limit of Liability after payment of 1. above, pay such Loss for which coverage is provided under any other Insuring Agreement of Part 1 (Directors and Officers Liability Insurance).

Doc. No. 159, pp. 65-66.

Levine has requested that PIIC provide payment of "Defense Costs" that he has incurred and will incur for his defense in this Lawsuit. In accordance with Part 6, Section H., ORDER OF PAYMENTS, the Policy requires that PIIC first pay such Loss under Part 1, the D&O Insurance, Insuring Agreement A., INDIVIDUAL LIABILITY COVERAGE, and only then would coverage be available for any Claim under Part 1, either under Insuring Agreement B., PRIVATE COMPANY INDEMNITY COVERAGE (when the Debtor indemnifies its directors and officers), or under Insuring Agreement C., PRIVATE COMPANY LIABILITY COVERAGE (when Debtor itself incurs Loss).[1] Thus, despite the objections noted within the three filings, PIIC is contractually obligated to advance Defense Costs on behalf of Levine prior to any payment of Loss incurred by Debtor. While the Trustee argues that the diminution of available funds for Levine's defense will likely injure the Debtor's estate, that is simply not true. The Debtor has never been afforded a right to priority over Levine under the Policy by its terms, and the enforcement of the Policy as written at this time does not diminish the value of the coverage that was initially purchased. Moreover, an extension of the reporting period of the Policy by the Trustee, which allows for reporting of additional Claims beyond the reporting period in the initial Policy (not just as to Levine), does not modify the priority of payments provision in any way.

The Court in *In Re MILA, Inc.,* afforded the corporate founder, Sapp, relief so that he could use proceeds from a D&O policy for costs incurred in an adversary proceeding brought against him. *See, e.g., In re MILA, Inc.,* 423 B.R. 537 (9th Cir. BAP 2010). The Trustee asserts in conclusory fashion that PIIC has ignored differences between the instant case and *In Re Mila Inc.*, but he does not identify any difference. To the contrary, much like Sapp's position in *In Re MILA, Inc.*, Levine

---

[1] Neither Debtor nor any representative of Debtor has ever sought payment under the Policy for a Claim under Insuring B. or Insuring Agreement C.

is the only officer or director seeking payment of defense costs.  Given that Levine is the only director seeking the advancement of defense costs, it is unlikely that the defense costs will exhaust policy proceeds thereby eliminating the availability of the Debtor's to obtain a recovery, if the Debtor can establish such a right.  *Id.* citing *Circle K. Corp. v. Marks (In Re Circle K Corp.),* 121 B.R. 257, 260-62 (Bankr. D. Ariz. 1990); *see also In re CyberMedica, Inc.,* 280 B.R. 12,18 (Bankr.D. Mass. 2002).  Moreover, while the Trustee has filed a proof of claim against Levine and has asserted that the value exceeds the policy limits, liability has not yet been established on that claim and as such, the objectors are asking this Court to presume liability in order to deny defense coverage under the Policy.  Such a position is in direct contradiction to the PIIC policy provisions, as to which payment of Defense Costs for insured directors and officers is substantial element of the coverage provided.[2]

In an attempt to distinguish cases cited by PIIC, the Trustee quotes from *In re Beach First National Bancshares, Inc.*, 451 B.R. 406, 409 (D. S.C. 2011) for the proposition that "payment of defense costs was contra-indicated 'if depletion of proceeds would have an adverse effect on the estate . . . .'"  However, this quotation is taken out of context and fails to address the actual holding in the case.  Initially, the Court found that the Policy's proceeds were property of the debtor's bankruptcy estate, because "If the Movants' defense costs exhaust the policy limit, then Debtor could be forced to use other assets of its bankruptcy estate to satisfy any potential claims."  *Id.* at 410.  However, the Court still allowed the directors and officers to obtain payment for their defense costs from the policy, holding:

---

[2] For this reason, as is common for such coverage, an Individual Insured is not precluded from coverage for Claims of improper benefit, fraud or criminal activity unless such conduct by the Individual Insured has been established by a final and non-appealable judgement.  *See* Policy, Part 5, COMMON POLICY EXCLUSIONS, Sections A. and B.  Doc. No. 159, p. 62.

> The Court finds cause exists to grant relief from stay. Courts faced with similar situations have commonly granted relief from stay to allow directors and officers to receive payment for their defense costs. *Allied Digital Techs.*, 306 B.R. at 513. See also *Laminate Kingdom,* 2008 Bankr. LEXIS 1594, 2008 WL 1766637, at *4. "[N]umerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor."). Debtor purchased the Policy for the purpose, in large part, of insulating its directors and officers from personal liability for the costs they incurred in defending actions. "'D & O policies are obtained for the protection of individual directors and officers . . . . in essence and at its core, a D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.'" *Laminate Kingdom*, 2008 Bankr. LEXIS 1594, 2008 WL 1766637, at *4 (quoting *In re First Central Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)). Movants cannot now be prevented from using the Policy for its intended purpose simply because Debtor wishes to save the policy limit for any potential claims of its own.

*Id.* at 410-411.

Here, like the directors and officers in *Bancshares*, Levine needs advancement of his Defense Costs to ensure that he is able to maintain an adequate defense in connection with this Lawsuit and its resolution. Without such payment, Levine would be deprived of his contractual rights under the Policy and would have to pay for defense counsel from his own funds.

> Faced with the priority of coverage issue, the U.S. Bankruptcy Court in *In re Hoko Corp,* 2014 WL 1246884 (Bankr. D. Idaho, March 24, 2014) held that the movants were ,"clear, immediate and going" defense costs arising from the litigation which were likely covered under the Policy. As Coverage A was paid first, any claims under Coverage B, or beyond, would be subordinate to the coverage requested by the movants. Accordingly, the Court granted the relief from the automatic stay. This Court should reach the same result.

The Trustee also asserts that "[t]he bankruptcy of Mr. Levine does not create a windfall for the insurer under West Virginia law" [Doc. No. 163, p. 2], and he cites *Anderson v. Robinson*, 186 W.Va. 92, 411 S.E.2d 35 (1991), and *In re: Honosky*, 6 B.R. 667 (Bankr. S.D. W.Va. 1980), in support of this proposition. However, PIIC will not obtain a "windfall" if permitted to make payments under the Policy to Levine, and both *Anderson* and *Honosky* are inapposite. In both of these cases, the Courts had allowed a plaintiff to proceed against a debtor's insurance company

7

even though liability as to the debtor had been discharged. PIIC's Motion does not take a position regarding the issue of indemnity in the event that the Trustee prevails in Lawsuit, which has not yet occurred, but rather merely seeks to allow Levine to have his reasonable and necessary "Defense Costs" in the Lawsuit paid from the proceeds of the Policy. In the case at issue, PIIC's overall Limit of Liability is the same regardless of how it might be paid out, and PIIC's payments under the Policy to Levine will not provide PIIC with any "windfall."

The Trustee also suggests that Levine is not irreparably harmed if PIIC does not advance his reasonable and necessary "Defense Costs," because Levine is currently involved in his own pending bankruptcy proceedings, and the deadline for seeking non-dischargeability in Levine's bankruptcy proceedings for the debt at issue in the Lawsuit has passed. If discharge is indeed a defense for Levine in the pending Lawsuit, as indicated by the Trustee, he is nevertheless entitled to his Defense Costs in seeking to interpose that defense. Currently, and until the Lawsuit is resolved, there is a Claim against Levine by the Trustee for which the Policy potentially provides coverage, which triggers his right to a defense. Moreover, if the viability of a defense for Levine is the result of someone's failure to seek non-dischargeability in Levine's personal bankruptcy proceeding, that apparent error does not operate to alter the terms of the Policy as they apply to Levine. In addition, Levine faces harms other than financial harm should he be unable to obtain payment for his "Defense Costs" as he is entitled under the Policy. If Levine is not defended in the Lawsuit, he may suffer irreparable harm to his reputation for from a determination that he engaged in alleged misconduct. *See, In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005) (finding that if the insured individual is unable to obtain defense costs, "the impact of an adverse judgment will have ramifications beyond the money that will necessarily be involved. There is the damage to reputation, the stress of litigation, and the risk of financial ruin – each of

which is an intangible but very real burden.") Levine is entitled under the terms and conditions of the Policy to have his reasonable and necessary "Defense Costs" paid as a matter of contract. Accordingly, the Trustee's objection to such payments is without merit and should be denied.

## II. The Cox Objection Lacks Merit

Objector David A. Cox ("Cox") asserts the following reasoning for filing his objection, in relevant part:

> I do so because this case has dragged on for more than two years, with no meaningful action to pay creditors. No one should be paid any monies until the creditors are made whole – paid back the funds invested plus interest – or at least paid some percentage of their investment, before anyone else is paid.
>
> My view is that Geostellar, Inc. actually ran a Ponzi scheme masquerading as a third party solar voltaic developer and does not warrant the protection of the Bankruptcy Code.

Doc. No. 164, p. 1.

Cox presents no evidence to support his claim that Debtor Geostellar's creditors are entitled to be "made whole" or paid at least a percentage of their investment, before an insured former officer is paid his reasonable and necessary "Defense Costs" (as defined by the Policy). Moreover, the claims of creditors such as Cox for monies allegedly owed, are treated differently under United States Bankruptcy law than payments owed for reasonable and necessary "Defense Costs" for a debtor's officers and directors being sued in their capacity as such. Levine, as a former employee and officer of Debtor Geostellar is an "Individual Insured" under the Policy. In other words, he is beneficiary of the contract who is entitled to the proceeds of the Policy, while Cox and Schwartz as creditors simply are not. *See, e.g., Newby v. Enron Corp. (In re Enron Corp. Secs., Derivative & "ERISA" Litig.),* 391 F. Supp. 2d 541, 561 (S.D. Tex. 2005) ("D&O insurance policies are third-party beneficiary contracts, with the insurer the promisor, the insured company (here Enron) the

9

promisee, and the insured officers and directors the third-party beneficiaries."). Therefore, Cox's objection is meritless and should be denied.

### III. The Schwarz Objection Lacks Merit

Objector Marge Schwartz ("Schwartz") asserts the following reasoning for filing her objection, in relevant part:

> I object to Motion 159 that would allow the defense costs of David A. Levine to be paid by Philadelphia Indemnity Insurance Company. I am not a lawyer, but to me it seems that just carrying this type of insurance indicates that Mr. Levine was planning to commit activities that would result in court costs if he were to be caught.
>
> I have doubts that I will ever see a penny of the $17,000 that I lost, but I don't feel he should be allowed to have insurance cover his losses when he didn't carry any insurance to cover my losses.

Doc. No. 165, p. 1.

Schwartz does not present any legal argument but instead makes the unsupported assertion that the mere fact that Levine was an insured under the Policy shows that he was "planning to commit activities that would result in court costs if he were to be caught." Doc. No. 165, p. 1. To suggest that Debtor's purchase of insurance coverage for its directors and officers was made because it or its individual directors and officers intended to engage in improper conduct is pure conjecture that is completely unsupported by any evidence. In fact, commentators have estimated that as many as 90 percent of corporations purchase directors and officers insurance coverage. Nischay H. Maskay, *Comment, The Constitutionality of Federal Restrictions on the Indemnification of Attorneys' Fees*, 156 U. Pa. L. rev. 491, 501 fn 40 (1991) (citation omitted). However, regardless of the reason for purchasing the Policy, Schwartz has provided no evidence showing that Levine is not legally entitled to receive payment of his reasonable and necessary "Defense Costs" under the Policy as a matter of contract. As discussed above, Levine is an insured beneficiary of the Policy, but Cox and Schwartz are not. Accordingly, this objection has no merit and should be denied.

10

## IV.     Conclusion

For the reasons stated above, PIIC believes that the objections of the Trustee, Cox and Schwartz lack any merit. Moreover, for the reasons stated in PIIC's Motion, because of the potential "substantial and irreparable harm" to Levine as an director and officer in being unable to pay his Defense Costs greatly outweighs any potential harm to Debtor. Therefore, PIIC respectfully asks the Court to deny these objections and afford relief from the automatic stay to allow for reasonable and necessary "Defense Costs," subject to the terms and conditions of the Policy and PIIC's continuing reservation of rights.

Respectfully submitted the 20th day of January, 2021.

**PHILADELPHIA INDEMNITY INSURANCE COMPANY,**
**By Counsel**:

*/s/ Debra Tedeschi Varner*
Debra Tedeschi Varner (WV State Bar #6501)

Varner & Van Volkenburg, PLLC
360 Washington Avenue
Clarksburg, WV 26301
Telephone: (304) 918-2840
Facsimile: (304) 566-1161

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

In re:

GEOSTELLAR, INC.

        Debtor.

Case No.: 3:18-BK-0045

_____

MARTIN P. SHEEHAN, Trustee of the
Bankruptcy Estate of Geostellar, Inc.

        Plaintiff,

v.

DAVID A. LEVINE and INDECO UNION, a
Delaware Corporation

        Defendants.

## CERTIFICATE OF SERVICE

      This is to certify that on the 20th day of January, 2021, the undersigned counsel served the foregoing "***REPLY OF PHILADELPHIA INDEMNITY INSURANCE COMPANY IN OPPOSITION TO OBJECTIONS TO ALLOW PAYMENT OF DEFENSE COSTS FOR DEFENDANT, DAVID A. LEVINE***" upon counsel of record via the Court's CM/ECF system, which will send notification of such filing to the following participants:

Martin P. Sheehan, Trustee
1 Community Street, Suite 200
Wheeling, WV 26003
sheehanparalegal@wvdsl.net
sheehanbankruptcy@wvdsl.net
***Chapter 7 Trustee***

Patrick S Cassidy, Esquire
Timothy F. Cogan, Esquire
Cassidy, Cogan, Shapell & Voegelin, L.C.
1413 Eoff Street
Wheeling, WV 26003
pcassidy@walslaw.com
tfc@walslaw.com
***Counsel for Chapter 7 Trustee***

Charles I. Jones, Jr., Esquire
Campbell Woods, PLLC
P. O. Box Box 1835
Huntington, WV 25719-1835
cjones@campbellwoods.com
***Counsel for Allied Building Products Corp.***

Michael Joshua Lichtenstein, Esquire
Shulman Rogers Gandal Pordy & Ecker P.A.
12505 Park Potomac Avenue, 6th Floor
Potomac, MD 20854
mjl@shulmanrogers.com
***Counsel for Matador Solar Partners, LLC,***
***as administrative agent for Matador;***
***Geostellar Capital Fund II, LLC;***
***and Novus Capital Group, LLC***

Salene Rae Mazur Kraemer, Esquire
Arthur W. Zamosky, Esquire
Bernstein-Burkley, P.C.
707 Grant Street, Suite 2200
Pittsburgh, PA 15219
skraemer@bernsteinlaw.com
azamosky@bernsteinlaw.com
***Counsel for Debtor, Geostellar, Inc.***

Keith J. Pappas, Esquire
176 Fayette Street
Morgantown, WV 26505
kpappaslaw@labs.net
***Counsel for United Bank***

Debra A. Wertman, Esquire
U.S. Trustee's Office
300 Virginia Street, East, Room 2025
Charleston, WV 25301
debra.a.wertman@usdoj.gov
***United States Trustee***

Michael L. Scales, Esquire
Michael L. Scales, PLLC
314 West John Street
Martinsburg, WV 25401
mlscales@frontier.com
***Counsel for Matador Solar Partners, LLC, as administrative agent for Matador***

Christopher Schueller, Esquire
Buchanan Ingersoll & Rooney PC
501 Grant Street, Suite 200
Pittsburgh, PA 15219
christopher.schueller@bipc.com
***Counsel for Applied Philosophy Lab, P.B.C.; and Indeco, LLC***

Aaron C. Amore, Esquire
Amore Law, PLLC
206 West Liberty Street
P. O. Box 386
Charles Town, WV 25414
aaron@amorelaw.com
***Counsel for Threesquare, LLC; and David A. Levine***

*/s/ Debra Tedeschi Varner*