No: 3:22-CV-00050-GMG

# In The
# United States District Court
## For the Northern District of West Virginia

THOMAS FLUHARTY, Trustee of the Bankruptcy Estate of David and Monica
Levine, and MARTIN SHEEHAN, Trustee of the Bankruptcy Estate of
Geostellar, Inc.

Plaintiffs - Appellants,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY
and DAVID A. LEVINE

Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

## Brief of the Appellants

Thomas H. Fluharty, Esq.
WV Bar No.: 1231
408 Lee Avenue
Clarksburg, WV 26301
(304) 624-7832
THFAAL@aol.com

*for the Trustee of the Bankruptcy Estate
of David Levine and Monica Levine*

{00193193.1}

Martin P. Sheehan, Esq.
WV State Bar No. 4812
SHEEHAN & ASSOCIATES, PLLC
1 Community Street, Ste 200
Wheeling, WV 26003
P: (304) 232-1064
F: (304) 232-1066
sheehanparalegal@wvdsl.net

and

Patrick S. Cassidy, Esq.
WV State Bar No. 671
Timothy F. Cogan, Esq.
WV State Bar No. 764
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.
C. The First State Capitol
1413 Eoff Street
Wheeling, WV 26003
P: (304) 232-8100
F: (304) 232-8200
pcassidy@walslaw.com
tfc@walslaw.com

*for the Trustee of the Bankruptcy
Estate of Geostellar, Inc.*

{00193193.1}

## DISCLOSURE STATEMENT

The Appellants are the Bankruptcy Trustee of the Bankruptcy Estate of David Levine and Monica Levine, Thomas H. Fluharty, and by the Bankruptcy Trustee of the Bankruptcy Estate of Geostellar, Inc., Martin P. Sheehan. There is no creditor's committee in either case because both cases are Chapter 7 cases.

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ...............................................................................i

TABLE OF AUTHORITIES ...............................................................................iv

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................2

STATEMENT OF THE CASE...............................................................................2

    I.  Factual Background..................................................................................2

STANDARD OF REVIEW ...................................................................................7

SUMMARY OF THE ARGUMENT ......................................................................8

ARGUMENT .....................................................................................................11

    A.  Standards for Dismissal of a Complaint ...............................................11

    B.  Addressing the Conclusions Reached by the Bankruptcy Court.............11

    C.  Property of the Bankruptcy Estate ........................................................12

    D.  The Conclusion that Mr. Levine Still Has Exposure through
        a Potential Fraud Exception to Discharge is Erroneous as a Matter
        of Law .................................................................................................16

    E.  The Standing of Mr. Fluharty.................................................................17

    F.  The Standing of Mr. Sheehan.................................................................23

    G.  Nothing in W.Va. Code § 33-11-4a Requires a Contrary Result............31

    H.  The Complaint Otherwise States a Cause of Action and Denial of the

Preliminary Injunction Was Error ...........................................................33

CONCLUSION ...................................................................................35

REQUEST FOR ORAL ARGUMENT ....................................................38

CERTIFICATE OF COMPLIANCE .......................................................40

CERTIFICATE OF FILING AND SERVICE ........................................38

# TABLE OF AUTHORITIES

## Cases

*Allstate Insurance v. Gaughan,*
   203 W.Va. at __. 508 S.E.2d at 86.....................................................................32

*Anderson v. Robinson,*
   186 W.Va. 92, 411 S.E.2d 35 (1991).......................... 9, 18, 19, 20, 28, 32, 36, 37

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................10, 11, 16, 17, 38

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2006).................................................................10, 11, 16, 17, 38

*Christian v. Sizemore,*
   181 W.Va. 628, 383 S.E.2d 810 (1989)......................... 10, 27, 29, 30, 31, 35, 37

*Commodity Futures Trading Commission v. Weintraub,*
   471 U.S. 343 (1985)..............................................................................12

*Consumers Gas Utility Co. v. Wright,*
   130 W.Va. 508, 44 S.E.2d 584 (1947)....................................................10, 27, 37

*Elk Refining Co., v. Falling Rock Cannel Coal Co.,*
   92 W.Va. 479, 115 S.E. 431 (1922).......................................................10, 26, 37

*Estate Const. Co. v. Miller & Smith Holding Co., Inc.,*
   14 F.3d 213 (4th Cir. 1994) ...................................................................7

*Farouki v. Emirates Bank International, Ltd.,*
   14 F.3d 244 (4th Cir. 1994) .................................................................17

*Goodman v. Phillip R. Curtis Enterprises, Inc.,*
   809 F.2d 228 (4th Cir. 1987)................................................................19

*In re: Demarco,*
  114 B.R. 121 (Bankr. N.D. W.Va. 1990) ...........................................................15

*In re: Lehoist,*
  344 B.R. 782 (Bankr. N.D. W.Va. 2006) ..........................................................19

*Jenkins v. J.C. Penney Caualty Insurance Co.,*
  167 W.Va. 597, 280 S.E.2d 252 (1981)............................................................26

*Olah v. Baird (In re: Baird),*
  567 F.3d 1207 (10th Cir. 2009) ................................ 8, 10, 13, 19, 28, 34, 36, 38

*Peet v. Checkett (In re: Peet),*
  819 F.3d 1067 (8th Cir. 2016)..........................................................................15

*Potesta v. United States Fidelity Guaranty Co.,*
  202 W.Va. 308, 504 S.E.2d 135, 149-150 (1998) .............................................14

*Real Truth about Obama v. Federal Election Comm'n,*
  575 F.3d 342 (4th Cir. 2009) vacated ___ U.S. ___,
  130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).........................................................33

*Robinson v. Cabell Huntington Hosp. Inc.,*
  201 W.Va. 455, 498 S.E.2d 27 (1997)..............................................................27

*Schatz v. Rosenberg,*
  943 F.2d 485, 489 (4th Cir.1991), cert. denied, ___ U.S. ___,
  112 S.Ct. 1475, 117 L.Ed.2d 619 (1992)...........................................................7

*Scott v. Bierman,*
  No. 10-1483 (4th Cir. May 12, 2011)(unpublished)...........................................8

*W. Va. Ass'n of Club Owners & Fraternal Servs. v. Musgrave,*
  553 F.3d 292, 298 (4th Cir. 2009) ....................................................................8

*State Farm Mutual Automobilie Insurance Co. v. Green,*
  89 P.3d 97 (2003)............................................................................................14

*Shamblin v. Nationwide Mutual Insurance Co.,*
  183 W.Va. 585, 396 S.E.2d 766 (1990)......................................................23, 32

*State ex rel. State Farm v. Madden,*
  192 W.Va. 155, 451 S.E.2d 721 (1994)...............................................................27

*State of West Virginia ex rel. Allstate Insurance v. Gaughan,*
203 W.Va. 358, 508 S.E.2d 75 (1978)...............................................................31, 32
*The Real Truth About Obama, Inc. v. Federal Election Comm'n,*
607 F.3d 355 (4th Cir. 2010) ..............................................................................33

*Tidewater Finance Co. v. Williams,*
498 F.3d 249 (4th Cir. 2007)..............................................................................17

*Winter v. Natural Resources Defense Council, Inc.,*
  ___ U.S. ___, 129 S.Ct. 365, 374-76, 172 L.Ed.2d 249 (2008) .........................33

## Statutes

11 U.S.C. § 365 ...................................................................................................13

11 U.S.C. § 365(d) ..............................................................................................14

11 U.S.C. § 522 ...................................................................................................19

11 U.S.C. § 523 .....................................................................................................4

11 U.S.C. § 523(a)(4) or (6) ..............................................................................8, 36

11 U.S.C. § 523(a)(2) or (a)(4) ...........................................................................16

11 U.S.C. § 523(c) .............................................................................................4, 17

11 U.S.C. § 541.............................................................................................8, 15, 36

11 U.S.C. § 541(a) ...............................................................................................12

11 U.S.C. § 541(a)(7) .....................................................................................9, 25, 37

11 U.S.C. § 554 ...................................................................................................19, 20

11 U.S.C. § 727 .....................................................................................................4, 17

11 U.S.C. § 727(a)(2) ................................................................................................17

11 U.S.C. § 727(b) ....................................................................................................20

28 U.S.C. § 157 ..........................................................................................................1

28 U.S.C. § 157(a) .....................................................................................................1

28 U.S.C. § 158 .....................................................................................................1, 26

28 U.S.C. § 1292 .......................................................................................................26

28 U.S.C. § 1334 .........................................................................................................1

28 U.S.C. § 1408 .........................................................................................................1

28 U.S.C. § 1409 .........................................................................................................1

W. Va. Code § 33-11-4a ..................................................................................27, 31, 33

W. Va. Code § 33-11-4(9) .........................................................................................26

W. Va. Code § 55-13-2 ..............................................................................................30

W. Va. Code § 55-13-12 ............................................................................................29

## Other

Bankruptcy Rule 4007(c) ...........................................................................................17

Bankruptcy Rule 7017 ...............................................................................................20

Bankruptcy Rule 8002 .................................................................................................1

## STATEMENT OF JURISDICTION

This appeal grows out of an adversary proceeding filed jointly, but as independent parties, by the Bankruptcy Trustee of the Bankruptcy Estate of David Levine and Monica Levine, Thomas H. Fluharty, and by the Bankruptcy Trustee of the Bankruptcy Estate of Geostellar, Inc., Martin P. Sheehan.

Jurisdiction existed for the filing of the bankruptcy petitions of Geostellar, Inc., and David and Monica Levine, under 28 U.S.C. § 1334, and 28 U.S.C. § 157(a). Venue of those bankruptcy cases in the Northern District of West Virginia was correct under 28 U.S.C. § 1408. Mr. and Mrs. Levine reside in that District. Geostellar, Inc., is a West Virginia Corporation and its principal place of business was in that District.

Jurisdiction over the adversary proceeding initiated by both Trustees also exists under 28 U.S.C. § 1334 and 28 U.S.C. § 157. Venue is correct under 28 U.S.C. § 1409.

Jurisdiction of this appeal is within the jurisdiction of the District Court pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 158.

This is an appeal from a final order dismissing a complaint entered on March 21, 2022. Appellants have also appealed from the denial of a preliminary injunction that occurred earlier. The appeal was filed on March 23, 2022 within the time period set to file an appeal in Bankruptcy Rule 8002.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the Complaint seeking a Declaratory Judgment and a Preliminary Injunction state a claim upon which relief could be granted?

2. Did the Court err in considering this adversary proceeding as a premature "bad faith" case?

3. Did Trustee Thomas H. Fluharty have standing to pursue the Complaint filed?

4. Did Trustee Martin P. Sheehan have standing to pursue the Complaint filed?

5. Should the requested preliminary injunction have been issued?

## STATEMENT OF THE CASE

### I.    Factual Background

This appeal is from an order dismissing an adversary complaint filed by two Chapter 7 Bankruptcy Trustees administering two different Bankruptcy Estates.  It also appeals the denial of a preliminary injunction. Consideration of the appeal requires reference to both bankruptcy proceedings, two adversary proceedings, along with a claims register.

Geostellar, Inc., filed for Chapter 11 bankruptcy protection in Case No. 3:18-BK-00045 on January 29, 2018. Soon thereafter, that case converted to a case under Chapter 7. At conversion, Martin P. Sheehan was designated the Chapter 7 Trustee.[1]

---

[1] The Docket Sheet for this case is included for the review of the Court in connection with this Appeal. References herein to that document shall be to "DS-BK-Geostellar" and to entries on that Docket Sheet as "DS-BK-Geostellar # ___."

While the bankruptcy petition for Geostellar, Inc., was not signed by David A. Levine, Mr. Levine had a prominent role in that entity until shortly before the filing of that bankruptcy case.

Subsequently, David A. Levine and his wife, Monica, filed for bankruptcy relief under Chapter 13. That case was designated as Case No. 3:19-BK-01048. That case was also subsequently converted to a case under Chapter 7. Thomas H. Fluharty is the Chapter 7 Trustee in that case.[2]

Prior to filing, a Director's and Officer's Liability Policy (hereinafter "D&O Policy") had been purchased by Geostellar, Inc., from the Philadelphia Indemnity Insurance Company (hereinafter "PIIC"). After the bankruptcy case of Geostellar, Inc., was filed, Mr. Sheehan caused the Bankruptcy Estate of Geostellar, Inc., to purchase an extension of that policy.

Thereafter, Mr. Sheehan sued David A. Levine and Indeco Union[3] for improprieties in an adversary proceeding entitled *Sheehan v. Levine, et al.* at AP No. 3:19-AP-00024.[4] After some preliminaries, an Amended Complaint in that

---

[2] The Docket Sheet for this case is included for the review of the Court in connection with this Appeal. References herein to that document shall be to "DS-BK-Levine" and to entries on that Docket Sheet as "DS-BK-Levine # ___."

[3] This entity also filed for bankruptcy relief at Bankruptcy Case No. 3:20-bk-00485. Janet Holbrook is the Chapter 7 Trustee in that case.

[4] The Docket Sheet for this adversary proceeding is included for the review of the Court in connection with this Appeal. References herein to that document shall be to "DS-AP –Levine" and to entries on that Docket Sheet as "DS-AP-Levine # ___."

adversary proceeding was filed on or about September 24, 2021 (DS-BK-Geostellar #71). It alleges that Plaintiffs' Amended Complaint includes claims of breach of fiduciary duty against Levine as a Board member of Geostellar – Count I; negligence – Count II; Constructive fraud (based on negligence) and/or negligent misrepresentation of facts – Count III; and violation of the Uniform Trade Secrets Act based on negligent misrepresentation, constructive fraud, and/or breach or inducement of a breach of duty, all of which claims Plaintiff believes "covered" by the PIIC policy at issue.

A motion to compel arbitration and/or dismiss was recently denied. Mr. Levine has attempted to appeal that ruling, but all proceedings on that appeal have been stayed pending a new effort at mediation by Order of the Bankruptcy Court (DS-BK-Geostellar #123) and this Honorable Court.

Believing the claims outlined in the Complaint were covered by the D&O policy, PIIC was given notice when the suit was filed. Upon information and belief, Mr. Levine's being provided a defense.

In the personal case filed by Mr. and Mrs. Levine, no person objected to a discharge for Mr. Levine or his wife. No Adversary Proceeding objecting to such a discharge was filed to deny a discharge under either 11 U.S.C. § 727 (for a case related reason) or § 523 (for a specific debt related reason). The time to file any such objection expired. *See* 11 U.S.C. § 523(c). Mr. Levine has obtained a discharge of

his debts, including his debt, if any, to the Bankruptcy Estate of Geostellar, Inc. (DS-BK-Levine #234). *See* 11 U.S.C. § 727(b).

As part of the bankruptcy process, Martin P. Sheehan, Trustee of the Bankruptcy Estate of Geostellar, Inc., filed a Proof of Claim against the Bankruptcy Estate of David A. Levine. That Proof of Claim is reflected on the claims register in the David A. Levine bankruptcy case.[5]

When PIIC sought permission to pay certain defense costs from the policy of insurance, PIIC sought relief from the automatic stay in the Geostellar case (DS-BK-Geostellar #159). Mr. Sheehan objected as the Trustee of Geostellar, Inc. So too did several other creditors.

Ultimately, Mr. Sheehan and PIIC resolved this specific dispute. Mr. Sheehan agreed to withdraw his objection to entry of an order lifting the stay to permit payment of defense costs in return for the agreement of PIIC to participate in a prompt mediation of the adversary proceeding brought against Mr. Levine for which the PIIC was supplying a defense and coverage. An Agreed Order to the effect was tendered. (DS-BK-Geostellar #186).  *See* Transcript of hearing of March 4, 2021 at 15:9, 19:2 (DS-BK-Geostellar #203).

---

[5] The Claims Register in the Bankruptcy Estate of David A. Levine shall be referred to herein as "CR-Levine" and entries thereon shall be referred to as "CR-Levine # ___."

The Proposed Agreed Order did not resolve the objections of persons other than Mr. Sheehan. Instead of entering the Proposed Agreed Order, the Bankruptcy Court overruled all objections. (DS-Bk-Geostellar #192). Still, the agreement to pursue a prompt mediation was honored. A mediation was scheduled before Magistrate Judge Aloi. (DS-AP-Levine #47, 51), and proceeded on June 20, 2021.

At mediation, Mr. Levine and PIIC asserted that Mr. Levine was the "Insured" under the relevant policy, and that as the "Insured," Mr. Levine was personally required to "consent" to any settlement. Mr. Sheehan contested that view of the consent language. Both Mr. Sheehan and Mr. Fluharty, as Trustee of the Bankruptcy Estate of Mr. Levine assert that Mr. Fluharty holds the power of consent. Consequently, Mr. Sheehan and Mr. Fluharty initiated an adversary proceeding against PIIC and Mr. Levine for a declaratory judgment and a preliminary and permanent injunction to establish that Mr. Levine did not possess the right to consent, but that right was instead property of the Bankruptcy Estate of David A. Levine.[6]

The request for preliminary injunction to prohibit interference with the rights of Mr. Fluharty as the holder of the power of consent was denied. Judge Mignault

---

[6] The Docket Sheet for this adversary proceeding is included for the review of the Court in connection with this Appeal. References herein to that document shall be "DS-AP-Philadelphia" and to entries on that Docket Sheet as "DS-AP-Philadelphia # ___."

issued an oral opinion denying preliminary injunctive relief on October 28, 2021. In her opinion, she concluded:

a) Mr. Sheehan, as the Trustee of Geostellar, Inc., lacks standing to sue an insurer until a judgment has been obtained (DS-AP-Philadelphia #53 at pp. 14-15);

b) Mr. Sheehan's claim of irreparable harm is misplaced, (DS-AP-Philadelphia #53 at pp. 15-16);

c) Mr. Fluharty, and the Bankruptcy Estate of David Levine, is not a beneficiary of the policy at issue (DS-AP-Philadelphia #53 at pp. 17-18);

d) Moreover, Mr. Fluharty had indicated an intent not to participate in mediation (DS-AP-Philadelphia #53 at p. 18);

e) Mr. Fluharty has no injury in fact (DS-AP-Philadelphia #53 at p. 18); and

f) Mr. Levine faced some risk of monetary loss in the event of a fraud finding (DS-AP-Philadelphia #53 at p. 20).

A motion to dismiss filed by PIIC on September 13, 2021 was granted by written order dated March 21, 2022. In that Order, the Court reiterated its conclusion that neither Mr. Sheehan nor Mr. Fluharty had standing. The case was dismissed. (DS-AP-Philadelphia #39).

This appeal followed (DS-AP-Philadelphia #40). The Trustees seek review of both the dismissal, and the denial of the preliminary injunction.

## STANDARD OF REVIEW

The standard of review of a Rule 12(b)(6) dismissal is *de novo. Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991), cert. denied, __ U.S. ___, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). *Estate Const. Co. v. Miller & Smith Holding Co., Inc.,* 14 F.3d 213 (4th Cir. 1994).

7

In *Scott v. Bierman,* No. 10-1483 (4th Cir. May 12, 2011)(unpublished), the Court of Appeals for the Fourth Circuit, on a direct appeal from the Bankruptcy Court, addressed the standard of review where the Bankruptcy Court had denied a preliminary injunction. The Court described the standard of review for denial of a preliminary injunction as abuse of discretion in reliance on *W.Va. Ass'n of Club Owners & Fraternal Servs. v. Musgrave,* 553 F.3d 292, 298 (4th Cir. 2009) The Court did note that factual conclusions would be reviewed under the clearly erroneous standard and that legal conclusions would be reviewed *de novo.*

## SUMMARY OF THE ARGUMENT

Pursuant to 11 U.S.C. § 541, all assets of David Levine became property of the Bankruptcy Estate of David Levine when Mr. Levine filed for bankruptcy relief. That included the right to consent to settle the type of litigation brought by the Bankruptcy Estate of Geostellar, Inc. *Olah v. Baird (In re: Baird),* 567 F.3d 1207 (10th Cir. 2009). This became self-evident subsequent to a bankruptcy discharge being issued to Mr. Levine. The discharge ended any financial threat that the result of such litigation might have any economic impact on David Levine, personally. Any conclusion that a verdict based on fraud might impact that conclusion is erroneous as a matter of law because no party timely pursued a complaint to deny Mr. Levine a discharge under either 11 U.S.C. § 523(a)(4) or (6). All such threats to David Levine ended when he received a discharge in his bankruptcy case.

8

The litigation brought by the Bankruptcy Estate of Geostellar, Inc., can properly proceed against Mr. Levine as a nominal defendant under *Anderson v. Robinson,* 186 W.Va. 92, 411 S.E.2d 35 (1991). The Bankruptcy Estate of David Levine is not directly threatened by such litigation, in most circumstances. However, because the Bankruptcy Estate of Geostellar, Inc., has filed a proof of claim against the Bankruptcy Estate of David Levine, there is some possibility that the Bankruptcy Estate of David Levine would have a contingent liability on that proof of claim if the case brought by the Bankruptcy Estate of Geostellar, Inc., against Mr. Levine, now a nominal defendant, is not resolved within policy limits. That contingent threat to the Bankruptcy Estate of David Levine is a sufficient interest to have conferred standing on Thomas H. Fluharty, the Trustee of the Bankruptcy Estate of David Levine to control the right to consent to the settlement in policy of insurance. This is particularly so where Mr. Levine has been discharged and faces no financial risk under *Anderson v. Robinson.* Mr. Fluharty had, and has, standing to pursue the action appealed from.

The Bankruptcy Estate of Geostellar, Inc., acquired a contractual promise from by Philadelphia Indemnity Insurance Co., to engage in prompt mediation. That promise is part of the Bankruptcy Estate of Geostellar, Inc., under 11 U.S.C. § 541(a)(7). In falsely asserting that David Levine controls the right to settle, PIIC and Mr. Levine have thwarted the promise to promptly mediate.

That contract to promptly mediate is enforceable by injunction pursuant to *Elk Refining Co., v. Falling Rock Cannel Coal Co.,* 92 W.Va. 479, 115 S.E. 431 (1922) and *Consumers Gas Utility Co. v. Wright,* 130 W.Va. 508, 44 S.E.2d 584 (1947). Consequently, Mr. Sheehan, as Trustee of the Bankruptcy Estate of Geostellar, Inc., has had, and has, standing to pursue the action appealed from.

In *Christian v. Sizemore,* 181 W.Va. 628, 383 S.E.2d 810 (1989), the West Virginia Supreme Court of Appeals countenanced use of the West Virginia Declaratory Judgment Act to allow a coverage dispute to be resolved to eliminate uncertainty and insecurity. The key issue in the action appealed from—the identity of the party who controlled the right to consent to settle under a policy with such a feature—is significantly analogous. Nothing in *Christian* limited that holding to its specific facts. The interaction of bankruptcy with the facts of that case, does not change the basic holding, but does require identification of the principles of West Virginia law which are applicable. That case supports the suit filed here.

The cause of action was plead with sufficient specificity under *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2006).

The preliminary injunction should have issued. The Trustees have made an adequate showing of the likelihood of success on the merits in light of *Olah v. Baird, (In re: Baird),* and the standing of each Trustee Plaintiff, as articulated below. The delay, and the cost of delay arising from failure to promptly mediate is an adequate

showing of harm to the Plaintiff Trustees. The balance of equities tips heavily in favor of the Plaintiff Trustees. Finally, the public interest in prompt resolution of disputes favors the issuance of the preliminary injunction.

## ARGUMENT

**A.    Standards for Dismissal of a Complaint**

In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) the United States Supreme Court identified the allegations necessary for a Complaint to survive a motion to dismiss. In *Ashcraft,* the Court reaffirmed the standard in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2006), that a Complaint must state more than a conclusion that a Plaintiff has been harmed by the Defendant. Neither will a recitation of the elements of a claim, shorn of factual detail of any kind, suffice. What must be alleged is sufficient factual matter, which accepted as true, states a claim for relief that is "plausible on its face." General allegations about a person's state of mind may be alleged generally.

Measured against these standards the Appellant Trustees contend that the Complaint is adequate. The Bankruptcy Court held there were several factors that caused the allegations made by the Trustees to be inadequate. These are addressed below as part of distinct discussions of whether or not the right to consent to settlement in an insurance policy is property of a bankruptcy estate and extended discussions of the claims of standing made by each of the Trustees.

**B.**     **Addressing the Conclusions Reached by the Bankruptcy Court**

The oral opinion of the Bankruptcy Court issued on October 28, 2021, denied the request for preliminary injunction. When the Court subsequently dismissed the Adversary Proceeding filed against PIIC and Mr. Levine by Trustees Fluharty and Sheehan on March 21, 2022, the Court's written order echoed its conclusion about standing.

While the orders are distinct, there is a substantial overlap in the reasoning, at least as to standing. To address that circumstance efficiently in this appeal, all issues are addressed below.

**C.**     **Property of the Bankruptcy Estate**

Is the right to consent to settlement property of the Bankruptcy Estate of David Levine? The definition of "property of the bankruptcy estate" is contained in 11 U.S.C. § 541(a). Subparagraph (a)(1) provides that property of the estate includes "all legal or equitable interests in property as of the commencement of the case. This is broad language. The breadth of meaning is reflected in *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343 (1985). There the Supreme Court concluded that control of the attorney-client privilege of a corporate debtor was controlled by the Trustee of the bankruptcy estate of the corporation. What is property of the estate is clearly an expansive concept.

12

Particularly relevant to the instant issue is the decision in *Olah v. Baird (In re: Baird),* 567 F.3d 1207 (10th Cir. 2009). That case appears to be the only case nationally addressing who holds the right to consent to settlement under a policy of insurance in the Bankruptcy context. In that case, the Court of Appeals addressed who held the right to settle in a policy of malpractice insurance issued to Dr. Baird before he filed for bankruptcy relief.

Review of the facts of that case is important. Representatives of a Tort Victim, the parents of an infant child, offered to purchase the interest of Dr. Baird in a malpractice policy from the Bankruptcy Trustee of Dr. Baird's Bankruptcy Estate. The Trustee initially declined. He expressed concern that such rights were non-assignable and not property of the bankruptcy estate of the doctor. Still, the Trustee invited the Representatives of the Tort Victim to file for declaratory relief. They did so.  The Representatives asserted that the Trustee, and the Bankruptcy Estate, held the consent rights as property of the Bankruptcy Estate of the Dr. Baird.

The Bankruptcy Court, and on appeal the District Court, concluded that the malpractice policy was an executory contract, that is that each party to the contract owed some obligation to the other. As a consequence of that conclusion, the Bankruptcy Court, and the District Court, held that the Bankruptcy Trustee's failure to assume an executory contract within 60 days as required by 11 U.S.C. § 365

caused the Bankruptcy Estate to have "rejected" the contract of insurance pursuant to 11 U.S.C. § 365(d).

The Court of Appeals disagreed with the conclusion that the policy was an executory contract. It held that any obligation of Dr. Baird to cooperate was not an obligation, which if breached, would excuse the insurer from defending Dr. Baird. The Court described Dr. Baird's duty of cooperation as a "technical" requirement. The Court of Appeals concluded that the malpractice policy was therefore not executory. The idea that the policy had been rejected as an executory contract was undone by this conclusion.

In reaching this decision regarding the mutuality of obligations - the key to whether a contract was executory, the Tenth Circuit did rely on a decision of the Utah Supreme Court, *State Farm Mutual Automobilie Insurance Co. v. Green,* 89 P.3d 97 (2003). In that case, the Utah Court had held that the failure to provide proof of loss—a technical requirement—was not a basis on which the insurer could deny coverage without a showing of prejudice.[7] Thus mutuality was lacking. The basis for finding the contract was executory, and had been rejected, thus, evaporated.

Without rejection, the contract remained part of the Bankruptcy Estate. The Court of Appeals considered whether the contract, now property of the Bankruptcy

---

[7] This rule is the same in West Virginia. *Potesta v. United States Fidelity Guaranty Co.,* 202 W.Va. 308, 504 S.E.2d 135, 149-150 (1998). In footnote 16 of the *Potesta* opinion, the Court refers to filing a proof of loss as a technical obligation as well.

Estate, could be assigned by the Trustee. Acknowledging that the policy had language that prohibited assignment without the consent of the Insurer, the Court held that the provisions of 11 U.S.C. § 541 had already caused the contract to "become" property of the Bankruptcy Estate by operation of law.[8] That transformation occurred without the consent of the Insurer as a matter of bankruptcy law.

Whether anti-assignment language would apply: (a) after a loss, and (b) after the policy had become property of the Bankruptcy Estate was considered. The Court concluded that transfer after a loss was permissible. Because the Bankruptcy Code vested the policy in the Bankruptcy Estate, the Court held that the right to consent to settle ceased to be a personal right of Dr. Baird.  The right to consent was found to be property of the Bankruptcy Estate. The Court held the policy could then be assigned from the Bankruptcy Estate of Dr. Baird by the Trustee to the Representatives of the Tort Victim.

---

[8] Under 11 U.S.C. § 541 property of the Debtor "becomes" property of the Bankruptcy Estate. The property is not transferred to the Bankruptcy Estate. As a result, the shift in ownership from the Debtor to the Estate does not cause any change in the rights held in the property.

This conclusion is best demonstrated by examination of property held as joint tenants with right of survivorship. Traditionally, a transfer ends the joint tenancy with right of survivorship. But that does not occur under section 541. *See Peet v. Checkett (In re: Peet),* 819 F.3d 1067 (8th Cir. 2016)(Bankruptcy was not a transfer that severed tenancy, and post-bankruptcy death of joint tenant caused the Bankruptcy Estate to succeed, when the contingent right of survivorship ceased to be a contingency, to ownership of the entirety.) *See also, In re: Demarco,* 114 B.R. 121 (Bankr. N.D. W.Va. 1990).

In a Complaint to establish that the right to consent in a policy of insurance was property of the Bankruptcy Estate of David Levine, the allegations made in the Complaint against PIIC and David Levine are sufficient under *Twombly* and *Ashcroft*.

## D.      The Conclusion that Mr. Levine Still Has Exposure through a Potential Fraud Exception to Discharge is Erroneous as a Matter of Law

Among the conclusions reached by the Bankruptcy Court in denying injunctive relief is the conclusion that Mr. Levine still faces some risk of financial loss if the fraud proved were fraud of some particular type. (DS-AP-Philadelphia #53 at page 20). That conclusion is wrong. Mr. Levine has not been at any personal financial risk for some time.

Mr. Levine was at risk prior to Mr. Levine filing personally for bankruptcy. He may have been at risk early in his bankruptcy case; that is, before he received a discharge. During such period, his right to a discharge might have been challenged. But his discharge did not issue until the time to raise that issue expired. After the discharge issued, Mr. Levine has not been at any economic risk. That contention and conclusion ceased to be true.

The exception to discharge for fraud is contained in 11 U.S.C. § 523(a)(2) and/or (a)(4). That section requires that an adversary proceeding challenging the

16

discharge on those grounds be initiated. 11 U.S.C. § 523(c).[9] Bankruptcy Rule 4007(c) provides a sixty (60) day limitation after the completion of a meeting of creditors, subject to some extensions,[10] on bringing such an action. *See, e.g., Farouki v. Emirates Bank International, Ltd.,* 14 F.3d 244 (4th Cir. 1994).

The meeting of creditors conducted by Mr. Fluharty[11] as part of the Chapter 7 case was initially scheduled to be held on April 23, 2020 (DS-BK-Levine #100). It was reported to have been held on July 9, 2020. (DS-BK-Levine #137, a docket entry only record).

Mr. Levine has been discharged since December 21, 2020, DS-BK-Levine #234. His discharge included debts for which he might be liable for fraud. 11 U.S.C. § 727. Any contrary conclusion is an error of law and should be reversed under the *de novo* standard of review. The allegations that Mr. Levine has no economic interest because he has been discharged is sufficient under *Twombly* and *Ashcroft.*

## E.    The Standing of Mr. Fluharty

---

[9] 11 U.S.C. § 727(a)(2) does allow for denial of a discharge where a debtor defrauds creditors by taking certain specific actions that are case related rather than specific debt related. Exceptions to discharge under that provision are regulated by Bankruptcy Rule 4004. *See Tidewater Finance Co. v. Williams,* 498 F.3d 249 (4th Cir. 2007).

[10] Some extensions of that deadline were sought, but all of those requests for extension of time to object to discharge were denied. DS-BK-Levine #129, 132, and 133 and 134.

[11] A meeting of creditors was originally scheduled to be conducted by the Chapter 13 Trustee, Helen Morris on January 9, 2020. DS-BK-Levine # 2. It was continued until February 6, 2020. DS-BK-Levine #15. That meeting was never held and motions to dismiss were filed. DS-BK-Levine #49, and 52. Those motions were denied as moot. DS-BK-Levine #90. The case was voluntarily converted to Chapter 7. *See* DS-BK-Levine #67 and 74.

In this case, the D&O Policy purchased by Geostellar, Inc., and extended by the Bankruptcy Estate of Geostellar, Inc., provided coverage to David Levine on the suit brought against David Levine by the Bankruptcy Estate of Geostellar, Inc. That action began before Mr. Levine filed for bankruptcy personally.

But, when Mr. Levine filed for bankruptcy relief, an automatic stay was issued in the Levine bankruptcy case. That stay applied to the action brought by the Bankruptcy Estate of Geostellar, Inc. That action was stayed for a period.[12]

In *Anderson v. Robinson,* 186 W.Va. 92, 411 S.E.2d 35 (1991), the West Virginia Supreme Court held that the bankruptcy of a tortfeasor did not supply a windfall defense to the tortfeasor's insurance company. As a result, the tortfeasor's insurer could avoid defending a suit by the tortfeasor's victim up to the limits of coverage. The West Virginia Supreme Court held that suit may proceed against the "named defendant," who effectively becomes a nominal defendant.[13]

Payment in those circumstances, if required, can be made by the Insurer, to the extent of its coverage. Consequently, when insurance exists, and a suit is pending, it is common for the stay to be lifted to the extent of insurance coverage.

---

[12] Indeco Union, another defendant in the suit brought by the Bankruptcy Estate of Geostellar, Inc., against Mr. Levine, also filed for bankruptcy relief on June 5, 2020. That case was denoted Bk. No. 3:20-bk-0485. A stay was issued in that case, too. (Indeco Union was dismissed as a party. Trustee Sheehan and Trustee Holbrook have agreed to address a claim filed by Mr. Sheehan in behalf of the Bankruptcy Estate of Geostellar, Inc. as part of claims adjudication if necessary.)

[13] This procedure allows an insurance company, largely the real party in interest, to defend in the name of the insured. This avoids the importation of the existence of insurance coverage directly into the underlying suit.

While the right to coverage may be property of the Bankruptcy Estate, the coverage cannot be monetized for the benefit of any creditor of the bankrupt tortfeasor, other than the tortfeasor's victim.

Like *Anderson,* the filing of the Levine bankruptcy case transformed ordinary conditions surrounding litigation somewhat. The asset that was the D&O Policy – to the extent a defense was being supplied and coverage might be available – was part of "all the legal and equitable interests possessed by the Debtor at filing." *See, Olah.* So, whether scheduled as an asset of the Bankruptcy Estate or not, the rights under that policy were rights of the Bankruptcy Estate of David Levine.[14] Those rights remained property of the Bankruptcy Estate unless claimed exempt, transferred by sale or otherwise, or abandoned pursuant to 11 U.S.C. § 554.

Those rights have not been claimed exempt pursuant to 11 U.S.C. § 522. *See* Schedule C filed by David and Monica Levine. (DS-BK-Levine #20). The rights were not sold or otherwise transferred.  *See* DS-BK-Levine. (There is no notice of abandonment contained anywhere therein.) Likewise, those rights have never been

---

[14] Unscheduled assets are part of the Bankruptcy Estate. *In re: Lehoist,* 344 B.R. 782 (Bankr. N.D. W.Va. 2006) relying on *Goodman v. Phillip R. Curtis Enterprises, Inc.,* 809 F.2d 228 (4th Cir. 1987).

abandoned pursuant to 11 U.S.C. § 554. *See* DS-BK-Levine. (There is no notice of abandonment or sale or transfer contained anywhere therein.)[15]

Significantly too, Mr. Levine received a discharge. (DS-BK-Levine #234). Under 11 U.S.C. § 727(b), the discharge ended any possibility that Mr. Levine could be required to make any payment from his own resources that were not claimed exempt in his bankruptcy case, or from any resources that he might acquire after filing.[16] Consequently, Mr. Levine has no economic interest in the litigation against him. As noted above, any contrary conclusion is erroneous after applying the *de novo* standard of review.

But as noted above, the discharge did not create a windfall defense for the Insurer. *Anderson, supra.* The case brought by the Bankruptcy Estate of Geostellar,

---

[15] PIIC has made much has of Mr. Fluharty's expressed intention not to attend the mediation in person. Ultimately, the Bankruptcy Court commented on that as well. (DS-AP-Philadelphia #53, p. 18).

    Mr. Fluharty did say that. *See* DS-AP-Levine #49. He said that on May 3, 2021. That was not an illogical position to take at that time - two months before the mediation actually occurred. Recall that monies that are represented by the coverage available in this type of policy could not, and cannot, be monetized for the benefit of the Bankruptcy Estate of David Levine. Mr. Fluharty's interest is small, and contingent. But it was, and is, not non-existent.

    Furthermore, as the Complaint in this matter alleges, and as must be assumed to be true at this stage of the case, the claim that Mr. Levine held the consent rights, and not Mr. Fluharty, occurred on the eve of the mediation.

    Nothing in the record suggests Mr. Fluharty was informed that Mr. Levine and PIIC had taken that position when Mr. Fluharty had indicated his intention to not participate over two months earlier. Mr. Fluharty had no reason to suspect that Mr. Levine would interfere with the ordinary process of settlement at mediation by making a specious claim that Mr. Levine held the "consent rights."

[16] Whether or not Mr. Levine would qualify as a "real party in interest" if Bankruptcy Rule 7017 and Federal Rule of Civil Procedure 17 applied to a defendant is debatable.

Inc., against Mr. Levine lives on. If successful, then PIIC would have to pay to the extent a verdict was within the amount of coverage.

If the outcome is in favor of the nominal defendant, David Levine, no money will be paid. If the outcome is for a verdict less than the amount of the coverage, then PIIC will be responsible to pay that amount. If the verdict is in excess of the coverage, then the claim filed by the Bankruptcy Estate of Geostellar, Inc., against the Bankruptcy Estate of David Levine (CR-Levine # 6) will evolve from a contingent claim for a theoretical sum to something more tangible. Then that contingent claim will need to established more precisely.

Mr. Sheehan and Mr. Fluharty are experienced trustees. They have recognized that each Bankruptcy Estate has limited cash resources, at this time. Each has recognized that there is little point in litigating the contingent claim asserted by the Bankruptcy Estate of Geostellar, Inc., against the Bankruptcy Estate of David Levine, right now. Consequently, that matter has been deferred. But it is not dead. It is merely deferred.[17]

---

[17] The outcome of the litigation brought by Mr. Sheehan will not formally bind Mr. Fluharty. The Levine Estate is not a party to that litigation.

But that litigation will inform them both.

That kind of information might lead to a settlement of the claim filed by the Bankruptcy Estate of Geostellar, Inc., against the Levine Estate without the expense of additional litigation. That type of outcome is certainly a possibility. Should such a settlement be reached, the Bankruptcy Court would have the authority to approve such a settlement in each case. The standard for such approval will depend on an evaluation of the business judgment of each trustee concerning any such proposal.

As noted earlier, the Bankruptcy Estate of David Levine has no method for converting the D&O Policy that has supplied coverage to Mr. Levine in the suit brought by the Bankruptcy Estate of Geostellar, Inc., to cash that can be paid to other creditors. But in the event of an excess verdict in the Adversary Proceeding being pursued by the Bankruptcy Estate of Geostellar, Inc. against Mr. Levine, a nominal defendant, in what has been described as a theoretical contingent claim against the Levine Estate will stop being theoretical. The contingent claim made by the Bankruptcy Estate of Geostellar, Inc., against the Bankruptcy Estate of David Levine, will need to be addressed both on liability and on damages. The claim represents the potential to reduce the amount that Mr. Fluharty could distribute to other creditors of the Levine Estate.

Thus, the interest of Mr. Fluharty, in protecting the assets of the Levine Estate for the benefit of creditors other than the Bankruptcy Estate of Geostellar, Inc., is a sufficient interest in the right to consent to settlement in the policy issued by PIIC. Why? Because the Levine entity that needs protection is not David Levine. He has a discharge. His economic circumstances will be unchanged by a verdict, or a settlement.

It is the Levine Estate, and the creditors of the Levine Estate, now bundled into the Levine Estate, and represented as a group by Trustee Fluharty who have the economic interest to avoid diminution of payment of their claims. It is the Levine

Estate that is threatened by a potential claim of Geostellar, Inc., that could be in excess of the PIIC policy limits. It is also the Levine Estate which succeeded to those rights.

Consequently, it is the Levine Estate that needs to control the power to consent to settle that is in dispute. It seems that the principal of protecting an insured from an excess verdict when a payment within policy limits would satisfy a tort claimant recognized in *Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990) applies in favor of the Bankruptcy Estate of David Levine. That is why, Mr. Fluharty has standing under West Virginia law. The Bankruptcy Estate faces the real, albeit contingent, possibility of being harmed by a failure to settle for less than policy limits. Mr. Fluharty and the creditors which he represents should not be at the mercy and whims of David Levine.

The conclusion of the Bankruptcy Court that Mr. Fluharty lacks standing does exactly that. It is wrong.

## F.    The Standing of Mr. Sheehan

The standing of Mr. Sheehan and the Bankruptcy Estate of Geostellar, Inc., is on somewhat different grounds. When appointed as Trustee of Geostellar, Inc., Mr. Sheehan was proactive. Among his actions, he identified the existence of a D&O policy early on. He purchased an extension of that policy with funds that he

borrowed, with Bankruptcy Court approval. He investigated the existence of claims that might exist. He has pursued claims that he believes are covered by the policy.

When PIIC filed a motion to expend funds from that policy, funds that might diminish the extent of the available coverage, Mr. Sheehan objected. (DS-BK-Geostellar #163). But Mr. Sheehan did not object blindly. He examined the issues. When provided with a strong suggestion that "costs of defense" were entitled to priority under the policy, Mr. Sheehan reached an agreement with PIIC. He agreed to allow payment of defense costs without further objection on condition that prompt mediation of the dispute in litigation against the nominal defendant, Mr. Levine, would occur. *See* Proposed Agreed Order signed by counsel for Mr. Sheehan and counsel for PIIC (DS-BK-Geostellar #186).    *See also,* Transcript of hearing of March 4, 2021, 15:9, 19:2 (DS-BK-Geostellar #203).

The motivation for such an agreement is both obvious and intuitive. So long as defense costs would be a priority claim against the policy of insurance, the value of the remainder of the policy which might satisfy Mr. Sheehan's claims on behalf of the Bankruptcy Estate of Geostellar, Inc., was subject to being diminished. Early resolution of the underlying dispute would offer some constraint on that possibility.

When the Bankruptcy Court addressed the motion to lift stay to allow for payment of defense costs, the Proposed Order was not entered. The Court noted that other creditors had objected to the motion filed by PIIC. The proposed order, a two-

party agreement, would not have resolved those objections. Consequently, the Court simply granted the motion as filed. (DS-BK-Geostellar #192). But the agreement for prompt mediation was understood to be in place. A mediation was scheduled before United States Magistrate Judge Aloi on June 20, 2021.

As outlined in the Complaint filed against PIIC and Mr. Levine,[18] Mr. Sheehan learned on the eve of mediation that both PIIC and Mr. Levine contended that the right to consent to settle under the Policy was a personal right of David Levine. Mr. Sheehan expressed the view at the mediation that was not true, and that Mr. Fluharty held that right. The mediation was unsuccessful. Mr. Sheehan, joined by Mr. Fluharty, promptly filed the instant case for a preliminary and permanent injunction and a declaratory judgment to have control of the right to consent adjudicated.

Why does Mr. Sheehan have standing? Because he has a contract to engage in a prompt mediation of the dispute. That agreement is something that he acquired for the Bankruptcy Estate. That contract is property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a)(7). The objective of such an agreement included minimizing claims for defense costs against the limits of the policy.

---

[18] The allegations of the Complaint must be regarded as true at this stage of the litigation.

Moreover, mediation contemplates a possibility of settlement. Mr. Sheehan contends that there was a duty by PIIC to engage in "good faith" negotiations.[19] Mr. Sheehan contends that this obligation arises from any of three different sources:

    A.    This obligation is a duty under the existing contract of insurance;

    B.    This obligation is a duty incorporated by a West Virginia statute regulating settlement practices; or

    C.    This obligation is as an implied term of the agreement for prompt mediation.

By insisting that Mr. Levine personally held the right to consent, PIIC has failed to meaningfully negotiate. In this context, failure to negotiate in good faith as part of the mediation is a breach of the obligation to mediate.

Breach of contractual obligations may, upon a proper showing,[20] support injunctive relief. *Elk Refining Co., v. Falling Rock Cannel Coal Co.,* 92 W.Va. 479,

---

[19] A duty to use good faith settlement practices applies to all insurance contracts in West Virginia. W. Va. Code § 33-11-4(9). *See also, Jenkins v. J.C. Penney Caualty Insurance Co*., 167 W.Va. 597, 280 S.E.2d 252 (1981).

[20] The order dismissing the adversary proceeding articulated standing as a defect. That issue is addressed in this brief first.

The Court had also denied a request for preliminary injunction. That is a distinct issue in this appeal. While the denial of a preliminary injunction by a District Court would be immediately appealable pursuant to 28 U.S.C. § 1292, the jurisdictional statute for an appeal from a Bankruptcy Court works differently. *See* 28 U.S.C. § 158. Because the dismissal is a final order, the earlier denial of the preliminary injunction is part to this appeal.

Discussion of whether a proper showing was made for issuance of a preliminary injunction is briefed below and separately from the issue of standing.

115 S.E. 431 (1922) and *Consumers Gas Utility Co. v. Wright,* 130 W.Va. 508, 44 S.E.2d 584 (1947).

What has seemed to be a distraction is the insistence of PIIC that West Virginia insurance law has eliminated any claim by the victim of a tortfeasor, a third party to the tortfeasor's insurance contract, to bring a direct lawsuit for bad faith against the insurer. It asserts that is the claim being made by Mr. Sheehan.

PIIC makes this argument in reliance on what it claims is the holding of *Robinson v. Cabell Huntington Hosp. Inc.,* 201 W.Va. 455, 498 S.E.2d 27 (1997). There the Supreme Court held that an injured party has no standing to bring a direct action against a tortfeasor's insurer with some exceptions. The Supreme Court reviewed the known existing exceptions. For example, the *Robinson* Court noted that where a judgment has been rendered and the insurer has refused to pay, the injured plaintiff could sue. The *Robinson* Court also recognized that where the claim of coverage has been denied, then the injured party may bring a declaratory judgment action before obtaining a judgment against the tortfeasor consistent with *Christian v. Sizemore,* 181 W.Va. 628, 383 S.E.2d 810 (1989). A third exception, then allowed under *State ex rel. State Farm v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994) has been superceded by subsequent legislation, W. Va. Code § 33-11-4a. As part of its analysis in the *Robinson* case, after outlining these general principles, and the

exceptions that had arisen in prior cases, the Court concluded that none of those were applicable to the case before it.

For most such disputes governed by West Virginia law, these conclusions may be adequate. No consideration of the impact of a bankruptcy filing by any party was any part of the backdrop of any of the cases. In the instant situation, there are two bankruptcies. The impact of these bankruptcy cases against West Virginia law needs to be considered in this matter.

As we know from *Anderson v. Robinson,* without altering the applicable State law, a bankruptcy filing can introduce new issues which require some accommodation of existing law. *Anderson,* for example, authorized a suit to continue against a Named Insured, to the extent of policy limits. Technically, this may not be a direct action against an insurance company, but the differences are extremely small. The Named Insured has changed from one person into two separate entities, the Debtor and the Bankruptcy Estate of the Debtor. The Debtor is transformed pragmatically into a nominal defendant. An extended analysis was necessary in *Olah*, and again here, to identify the holder of the "right to consent" to settlement where such a policy provision exists and the tortfeasor is bankrupt. So, although "coverage has not been denied," the West Virginia Supreme Court of Appeals reasoning is applicable to this analysis case in the context of bankruptcy to the extent

28

that "coverage" is being held hostage to a right of consent outlined by Trustee Fluharty.[21]

As noted, Mr. Sheehan for obvious and intuitive reasons, sought to promptly go to mediation to prevent diminution of potential policy limits where the "costs of defense" would be a priority claim against those monies. The decision in *Christian v. Sizemore, supra,* represents an exception recognized in *Robinson.* The *Christian* case supports the claim of standing in this situation.

*Christian* begins by noting that amendment of a complaint is to be freely given. It describes the West Virginia Declaratory Judgment Act as remedial, and designed to settle and afford relief from uncertainty and insecurity quoting W.Va. Code § 55-13-12. The Declaratory Judgement Act is to be liberally construed. *Id.* The *Christian* case recognized a declaratory judgment might be used to permit an injured plaintiff to file a declaratory judgment where coverage was being denied. That was found to be a permissible use of the Declaratory Judgment Act. It was not

---

[21] At the time of submission of this brief, Appellants have been advised by counsel for Mr. Levine in the adversary proceeding against Mr. Levine at AP-3:-AP-00024, has now given his "consent" to settle. As a consequence, that litigation has again been set for mediation. That session is scheduled to occur on June 8, 2022.

Appellants do not believe this posture "moots" the present appeal, given that if the proposed new mediation is unsuccessful, there is no guarantee that Mr. Levine will not attempt to revoke his present consent to settle. Appellants do concede that this appeal would become moot by a successful settlement of the said adversary proceeding at the mediation currently scheduled.

This appeal properly goes forward at this time to prevent any possibility that these issues would recur in any context. A premature end to this appeal would allow the issues raised to be subject to repetition while evading review.

29

found to be the only situation in which use of the Declaratory Judgment Act might be appropriate. *Christian* adjudicated the circumstances before the Court. *Christian* is not a straitjacket on a single use of that statute.

The case recites that W.Va. Code § 55-13-2 provides standing to "any person interested under a deed, will, written contract, or other writing constituting a contract." The issue of who may consent, Mr. Fluharty or Mr. Levine, is at issue in the writing which is the D&O Policy. The Proposed Order reflecting the agreement to promptly mediate and tendered to the Bankruptcy Court also meets that definition (DS-BK-Geostellar #186).

Pragmatically, the decision in *Christian* recognizes resolution of the coverage dispute in that instance "might be dispositive of the personal injury litigation." *Id.* at __, 383 S.E.2d at 814. Consequently, the Court held that the declaratory judgment should proceed, and proceed before the tort case. Here too, the dispute about the application of the consent provision in the bankruptcy context could set the stage for meaningful resolution of the dispute.[22] It too should be resolved promptly, if not first.

---

[22] A contrary outcome is a path to mischief. Under the status quo, Mr. Levine might refuse to permit settlement of a matter in which he has no economic interest and to the potential detriment of the Bankruptcy Estate of David Levine. He could be motivated to refuse by spite or merely to be uncooperative, or for some other reason.

Meanwhile, PIIC will expend funds on "costs of defense" that might be unnecessary and so diminish the funds available to pay a judgment, or any settlement that might be reached.

Is this a coverage dispute? Not exactly. If it were, the *Christian* case would be, as lawyers say, "on point." But *Christian* provides adequate legal support. Mr. Sheehan seeks to remove uncertainty and insecurity about the policy. Mr. Sheehan wants to resolve an issue that arises in various writings. Mr. Sheehan is trying to advance a potential settlement. *Christian* is as nearly "on point" as a case can be.

Both Mr. Sheehan, and Mr. Fluharty, have standing to bring the instant complaint. The Bankruptcy Judge and PIIC have interpreted *Christian* far too narrowly. That decision actually supports the Declaratory Judgment Complaint. The dismissal of the Complaint, dependent on an erroneous understanding of the law, should be reversed applying the *de novo* standard of review.

## G.    Nothing in W.Va. Code § 33-11-4a Requires a Contrary Result

West Virginia ended the practice of "third-party claimants" filing what had become known as insurance bad faith cases. Insurance bad faith cases are suits for money damages against an insurance company where the insurer has failed to use "good faith" in acting on settlement requests where insurance applies. Over time, these types of cases became known as "first party bad faith cases" or "third party bad faith cases." *See State of West Virginia ex rel. Allstate Insurance v. Gaughan,* 203 W.Va. 358, 508 S.E.2d 75 (1978). First party bad faith cases involved claims by the person covered by a policy of insurance that settlement was not performed in a way that fully protected an insured and/or the owner of the policy." A third-party

bad faith insurance claim was defined instead as a claim by a person injured by an insured who prevailed in litigation against the insured against the insured's insurance carrier. *Id.* at __, 508 S.E.2d at 86-87.

Mr. Fluharty is the successor in interest to the Insured. Mr. Fluharty does not need the benefit of the coverage to satisfy a judgment against the Bankruptcy Estate. The underlying litigation – the claim of the Bankruptcy Estate of Mr. Levine – will, to the extent of coverage, be resolved outside the purview of the Bankruptcy Estate of Mr. Levine. The principles of *Anderson v. Robinson, supra,* will apply. But to the extent the case is not fully resolved in that context, and the Bankruptcy Estate of David Levine faces liability claims for an amount in excess of the coverage to the Bankruptcy Estate of Geostellar, Inc., then for purposes of *Shamblin v. Nationwide Mutual Insurance Co., supra.* Mr. Fluharty would have a first party bad faith insurance claim. *Allstate Insurance v. Gaughan,* 203 W.Va. at __. 508 S.E.2d at 86.

Again, Mr. Sheehan is more complicated. Mr. Sheehan is suing a tortfeasor. If he prevails, then under the rubric of *Allstate Insurance v. Gaughan,* then Mr. Sheehan appears to be a third party. *Id.* However, Mr. Sheehan, and the Bankruptcy Estate of Geostellar, Inc., is also the owner of the policy. Claims by owners have been described as first party claims. Trustee Sheehan asserts that as such, he too would have a first party claim and subsequent "bad faith" claim. A first party claimant has been defined by West Virginia law as "an individual, corporation,

association, partnership or other legal entity asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract." (W.Va. C.S.R. § 114-14-2.3).

But more importantly, neither Mr. Fluharty nor Mr. Sheehan are now seeking to recover damages. They are seeking to have a proper mediation occur where the right to consent to settlement is properly recognized as the right of Mr. Fluharty, and the Bankruptcy Estate of David Levine. In this context, W.Va. Code § 33-11-4a has no application, and to the extent the Bankruptcy Court's consideration this is a "premature" bad faith action, that ruling is erroneous, in that the Trustees' claim is at this time one for declaratory judgment and injunctive relief, not bad faith.

## H.    The Complaint Otherwise States a Cause of Action and Denial of the Preliminary Injunction Was Error

The issuance of a preliminary injunction is governed by the standards set forth by the Supreme Court of the United States in *Winter v. Natural Resources Defense Council, Inc., ___ U.S. ___,* 129 S.Ct. 365, 374-76, 172 L.Ed.2d 249 (2008) and by the Court of Appeals for the Fourth Circuit in *Real Truth about Obama v. Federal Election Comm'n,* 575 F.3d 342 (4th Cir. 2009) vacated __ U.S. __, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010) and on reconsideration, *The Real Truth About Obama, Inc. v. Federal Election Comm'n,* 607 F.3d 355 (4th Cir. 2010). Those are: (a) likelihood of success on the merits by the Plaintiff; (b) likelihood of irreparable harm to the

Plaintiff; (c) that the balance of equities tips in favor of the Plaintiff; and, (d) that an injunction is in the public interest.

The Trustees, both Mr. Sheehan and Mr. Fluharty, contend these standards have been easily met. The issue of success on the merits was decided below against the Trustees because the Court below concluded there was a lack of standing. The question of standing is fully addressed above.

The United States Court of Appeals for the Tenth Circuit in *Olah,* the only case in the nation to have addressed the control of a right to consent in any type of insurance policy following a bankruptcy filing, has concluded that the right is property of the Bankruptcy Estate. Here that would be the Bankruptcy Estate of David and Monica Levine whose Trustee is Mr. Fluharty. While the *Olah* Court did rely on provisions of Utah law, it appears West Virginia law is similar, if not the same. Following *Olah,* the likelihood of success on the merits is high.

The harm to the Plaintiffs is equally clear. PIIC insists that David Levine, a person with no economic interest in the underlying litigation because he has obtained the benefit of a bankruptcy discharge, has a right to control settlement of litigation in which he is the nominal defendant. That makes no economic sense. Delay harms Plaintiff Sheehan, as Trustee of the Geostellar Estate. Delay creates a threat to sums that might be recoverable under the policy.

It is not surprising, that Justice Miller noted in *Christian v. Sizemore,* 181 W.Va. 628, 383 S.E.2d 810 (1989), the need for a declaratory judgment on issues of insurance coverage reduces uncertainty and insecurity associated with such polices. While the instant problem is not, strictly speaking, a coverage question, the problem is so analogous that the same observations contained in that opinion apply. Those observations include the idea that the applicability policies of insurance to underlying litigation claims is of vital importance to all litigants. Justice Miller concluded that resolution of such disputes could easily lead to a resolution of the underlying litigation and consequently should ordinarily be resolved first. That is essentially a synonym for irreparable harm. Irreparable harm is accruing.

The balance of equities tips in favor of the Plaintiffs. Delay is costly. Delay will involve significant additional expense. PIIC insists, after agreeing to prompt mediation, that absent the consent of Mr. Levine, the underlying litigation must proceed. After PIIC agreed to mediation, it now claims there is no mechanism to require meaningful participation. That result is ludicrous.  Perhaps settlement will fail even if Mr. Fluharty controls the right to consent settle. But the whims of Mr. Levine cannot be the determinative factor

The public interest favors prompt resolution of litigation. *See Christian.*

## <u>CONCLUSION</u>

Pursuant to 11 U.S.C. § 541, all assets of David Levine became property of the Bankruptcy Estate of David Levine when Mr. Levine filed for bankruptcy relief. That included the right to consent to settle the type of litigation brought by the Bankruptcy Estate of Geostellar, Inc. *Olah v. Baird (In re:Baird), supra.* This became self-evident subsequent a bankruptcy discharge being issued to Mr. Levine. The discharge ended any financial threat that the result of such litigation might have any economic impact on David Levine, personally. Any conclusion that a verdict based on fraud might impact that conclusion is erroneous as a matter of law because no party timely pursued a complaint to deny Mr. Levine a discharge under either 11 U.S.C. § 523(a)(4) or (6). All such threats to David Levine ended when he received a discharge in his bankruptcy case.

The litigation brought by the Bankruptcy Estate of Geostellar, Inc., can properly proceed against Mr. Levine as a nominal defendant under *Anderson v. Robinson.* The Bankruptcy Estate of David Levine is not directly threatened by such litigation, in most circumstances. However, because the Bankruptcy Estate of Geostellar, Inc., has filed a proof of claim against the Bankruptcy Estate of David Levine, there is some possibility that the Bankruptcy Estate of David Levine would have a contingent liability if the case brought by the Bankruptcy Estate of Geostellar, Inc., against Mr. Levine, now a nominal defendant, is not resolved within policy limits. That contingent threat to the Bankruptcy Estate of David Levine is a sufficient

36

interest to have conferred standing on Thomas H. Fluharty, the Trustee of the Bankruptcy Estate of David Levine to control the right to consent to the settlement in policy of insurance. This is particularly so where Mr. Levine has been discharged and faces no financial risk under *Anderson v. Robinson*. Mr. Fluharty had, and has, standing to pursue the action appealed from.

The Bankruptcy Estate of Geostellar, Inc., acquired a contractual promise from by Philadelphia Indemnity Insurance Co., to engage in prompt mediation. That promise is part of the Bankruptcy Estate of Geostellar, Inc., under 11 U.S.C. § 541(a)(7). That promise is thwarted by any claim that the right to consent to settle is held by David Levine and not by Trustee Fluharty.

That contract is enforceable by injunction pursuant to *Elk Refining Co., v. Falling Rock Cannel Coal Co., supra,* and *Consumers Gas Utility Co. v. Wright, supra.* Consequently, Mr. Sheehan, as Trustee of the Bankruptcy Estate of Geostellar, Inc., has had, and has, standing to pursue the action appealed from.

In *Christian v. Sizemore,* the West Virginia Supreme Court of Appeals countenanced use of the Declaratory Judgment Act to allow a coverage dispute to be resolved to eliminate uncertainty and insecurity. The key issue in the action appealed from – the identity of the party who controlled the right to consent to settle under a policy with such a feature – is significantly analogous. Nothing in *Christian* limited that holding to its specific facts. The interaction of bankruptcy with the facts

of that case, does not change the basic holding, but does require identification of the principles of West Virginia law which are applicable. That case supports the suit filed here.

The cause of action was plead with sufficient specificity under *Ashcroft v. Iqbal, supra,* and *Bell Atlantic Corp. v. Twombly, supra.*

The preliminary injunction should have issued. The Trustees have made an adequate showing of the likelihood of success on the merits in light of *Olah v. Baird, (In re: Baird),* and the standing of each Trustee Plaintiff, as articulated above. The delay, and the cost of delay arising from failure to promptly mediate is an adequate showing of harm to the Plaintiff Trustees. The balance of equities tips heavily in favor of the Plaintiff Trustees. Finally, the public interest in prompt resolution of disputes favors the issuance of the preliminary injunction.

Based on the foregoing, Plaintiffs-Appellants respectfully requests that this Court reverse the order of the district court dismissing the complaint, that the bankruptcy court be directed to issue a preliminary injunction, and the matter be remanded for further proceedings and other relief consistent therewith.

## **REQUEST FOR ORAL ARGUMENT**

Oral Argument is not yet scheduled.  Plaintiffs-Appellants respectfully requests oral argument in this matter before this Court.

Dated: May 20, 2022.

Respectfully submitted,


/s/ Patrick S. Cassidy
Patrick S. Cassidy, Esq.
WV State Bar No. 671
Timothy F. Cogan, Esq.
WV State Bar No. 764
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.C.
The First State Capitol
1413 Eoff Street
Wheeling, WV 26003
P: (304) 232-8100
F: (304) 232-8200
pcassidy@walslaw.com
tfc@walslaw.com

and

Martin P. Sheehan, Esq.
WV State Bar No. 4812
SHEEHAN & ASSOCIATES, PLLC
1 Community Street, Ste 200
Wheeling, WV  26003
P:  (304) 232-1064
F:  (304) 232-1066
sheehanparalegal@wvdsl.net

*for the Trustee of the Bankruptcy Estate of
Geostellar, Inc.*


/s/ Thomas H. Fluharty
Thomas H. Fluharty, Esq.
WV Bar No.: 1231
408 Lee Avenue
Clarksburg, WV 26301
(304) 624-7832
THFAAL@aol.com

*for the Trustee of the Bankruptcy Estate
of David Levine and Monica Levine*

39

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or Fed. R. App. P. 32(a)(7)(B) because this brief contains <u>9,722</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) (cover page, disclosure statement, table of contents, table of citations, certificate of compliance, and certificate of service).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: May 20, 2022

/s/ Patrick S. Cassidy
Patrick S. Cassidy, Esq.
WV State Bar No. 671
Timothy F. Cogan, Esq.
WV State Bar No. 764
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.C.
The First State Capitol
1413 Eoff Street
Wheeling, WV 26003
P: (304) 232-8100
F: (304) 232-8200
pcassidy@walslaw.com
tfc@walslaw.com

*for the Trustee of the Bankruptcy Estate of Geostellar, Inc.*

40

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 17th day of May, 2022, I caused this Brief of the Appellants to be filed electronically with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

George N. Stewart, Esq.
ZIMMER KUNZ, PLLC
132 South Main Street; Ste 400
Greensburg, PA 15601
stewart@zklaw.com

Dirk E. Ehlers, Esq.
COPE EHLERS PC
135 South LaSalle Street, Ste 3050
Chicago, IL 60603-4111
dehlers@CopeEhlers.com

Joseph F. Butcher, Esq.
ZIMMER KUNZ, PLLC
310 Grant Street, Suite 3000
Pittsburgh, PA 15219
butcher@zklaw.com

David Grassmick, Esq.
COPE EHLERS PC
135 South LaSalle Street, Ste 3050
Chicago, IL 60603-4111
dgrassmick@CopeEhlers.com

Debra T. Varner, Esq.
VARNER & VAN VOLKENBURG
360 Washington Ave
Clarksburg WV 26301
dtvarner@vv-wvlaw.com

Dated: May 20, 2022

/s/ Patrick S. Cassidy
*for the Trustee of the Bankruptcy Estate
of Geostellar, Inc.*

41