No. 3:22-CV-000050-GMG

---

In the United States District Court
for the Northern District of West Virginia

---

THOMAS FLUHARTY, Trustee of the Bankruptcy Estate of David and Monica
Levine, and MARTIN SHEEHAN, Trustee of the Bankruptcy Estate of Geostellar, Inc.,

Plaintiffs -- Appellants,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY
and DAVID A. LEVINE,

Defendants -- Appellees.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

---

# BRIEF OF APPELLEE,
# PHILADELPHIA INDEMNITY INSURANCE COMPANY

---

Debra Tedeschi Varner (WVSB #6501)
Varner & Van Volkenburg PLLC
360 Washington Avenue
Clarksburg, WV 26301
Tel: (304) 918-2840
Fax: (304) 566-1161
Email: dtvarner@vv-wvlaw.com

David Grassmick (*pro hac vice* admission pending)
Cope Ehlers PC
135 S. LaSalle Street, Suite 3050
Chicago, IL 60603
Tel: (312) 549-9384
Fax: (312) 549-9389
Email: dgrassmick@copeehlers.com

*Counsel for Defendant-Appellee, Philadelphia Indemnity Insurance Company*

## <u>DISCLOSURE STATEMENT</u>

Philadelphia Indemnity Insurance Company is a wholly owned subsidiary of Philadelphia Consolidated Holding Corp., which itself is a privately held and wholly owned subsidiary of Tokio Marine North America, Inc. ("TMNA"), a privately held Delaware corporation. TMNA is a subsidiary of Tokio Marine and Nichido Fire Insurance Company, Ltd. ("TMNF"), a privately held insurance company organized under the Companies Act of Japan. TMNF is a subsidiary of Tokio Marine Holdings, Inc., an insurance holding company organized under the Companies Act of Japan that is publicly traded on the Tokyo and Osaka Exchanges.

# **TABLE OF CONTENTS**

**PAGE**

DISCLOSURE STATEMENT ........................................................................i

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF ISSUES UNDER REVIEW ........................................1

STATEMENT OF THE CASE.................................................................1

STANDARD OF REVIEW ON APPEAL ...............................................3

SUMMARY OF THE ARGUMENT ......................................................3

ARGUMENT .........................................................................................5

I.   The Bankruptcy Court Properly Found There Was No Imminent Irreparable Harm That Would Justify Imposition of a Mandatory Injunction. ...................................................................................5

  A.   Mandatory Injunctions Are Disfavored. ...............................5

  B.   The Trustees Never Established the Risk of An Imminent Irreparable Injury to Justify a Mandatory Injunction or a Declaration from the Court Concerning Their Rights. .........8

  C.   The Trustees Failed to Demonstrate the Need for a Declaration Concerning PIIC.................................................12

II.  The Levine Chapter 7 Trustee Has Not Alleged Facts That Would Establish Standing for Himself.....................................................13

III. The Geostellar Trustee Has Not Alleged Any Facts That Would Give Rise to Standing.............................................................................17

CONCLUSION .......................................................................................27

REQUEST FOR ORAL ARGUMENT .....................................................27

CERTIFICATE OF COMPLIANCE.........................................................28

CERTIFICATE OF FILING AND SERVICE .........................................29

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                      <u>PAGE</u>

*Anderson v. Robinson*,
    186 W. Va. 92, 411 S.E.2d 35 (1991) ...........................................................23

*Broy v. Inland Mut. Ins. Co.*,
    160 W.Va. 138, 233 S.E.2d 131 (1977) ........................................................21

*Christian v. Sizemore*,
    181 W.Va. 628, 383 S.E.2d 810 (1989) ................................................. 21-23

*Consolidation Coal Co. v. Disabled Miners of S. W. Va.*,
    442 F.2d 1261 (4th Cir. 1971) .........................................................................6

*Di Biase v. SPX Corp.*,
    872 F.3d 224 (4th Cir. 2017) ...........................................................................6

*Estate Const. Co. v. Miller & Smith Holding Co., Inc.*,
    14 F.3d 213 ......................................................................................................3

*Fed. Ins. Co. v. Singing River Health Sys.*,
    850 F.3d 187 (5th Cir. 2017) .........................................................................26

*First Fidelity Bank v. McAteer*,
    985 F.2d 114 (3rd Cir. 1993) .........................................................................14

*Green v. Welsh*,
    956 F.2d 30 (2nd Cir. 1992) ..........................................................................14

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
    174 F.3d 411 (4th Cir. 1999) ...........................................................................6

*In Re Allied Digital Technologies Corp.*,
    306 B.R. 505 (Bankr. D. Del. 2004)............................................ 10-11, 18, 26

*In Re Beach First Nat'l Bancshares, Inc.*,
    451 B.R. 406 (D. S.C. 2011) ..................................................................11, 18

*In Re Christian*,
  180 B.R. 548 (Bankr. E.D. Mo. 1995) ..........................................................16

*In Re Edgeworth*,
  993 F.2d 51 (5th Cir. 1993) ..........................................................................15

*In Re Gibson*,
  172 B.R. 47 (Bankr. W.D. Ark. 1994) ................................................... 15-16

*In Re Laminate Kingdom LLC*,
  2008 Bankr. LEXIS 1594, **10-**11
  (Bankr. S.D. Fla. Mar. 13, 2008)..................................................................18

*In Re Licking River Mining, LLC*,
  2016 Bankr. LEXIS 2211
  (Bank. E.D. KY. Jun. 6, 2016) ...............................................................11, 18

*In Re Schultz*,
  251 B.R. 823 (Bankr. E.D. Tex. 2000)..........................................................15

*In Re Shondel*,
  950 F.2d 1301 (7th Cir. 1991) ......................................................................14

*In Re Walker*,
  927 F.2d 1138 (10th Cir. 1991) ....................................................................14

*In Re WorldCom, Inc. Sec. Litig.*,
  354 F. Supp. 2d 455 (S.D.N.Y. 2005) ..........................................................12

*Lear Corp. v. Elec. Ltd.*,
  353 F.3d 580 (7th Cir. 2003) ........................................................................12

*Miller v. McDonald (In Re World Health Alternatives, Inc.)*,
  369 B.R. 805 (Bankr. D. Del. 2007).......................................................11, 18

*Patronite v. Beeney (In Re Beeney)*,
  142 B.R. 360 (B.A.P. 9th Cir. 1992) .............................................................16

*Pettibone Corp. v. Hawxhurst*,
    163 B.R. 989 (N.D. Ill. 1994),
    aff'd, 40 F.3d 175 (7th Cir. 1994) ..................................................................15

*Robinson v. Cabell Huntington Hosp., Inc.*,
    201 W.Va. 455,  498 S.E.2d 27 (1997) ....................................................21, 23

*Roe v. United States DOD*,
    947 F.3d 207 (4th Cir. 2020) ...........................................................................9

*Ruvacalba v. Munoz (In Re Munoz)*,
    287 B.R. 546 (B.A.P. 9th Cir. 2002) .............................................................16

*Schatz v. Rosenberg*,
    943 F.2d 485 (4th Cir.1991),
    cert. denied, __ U.S. ___, 112 S.Ct. 1475,
    117 L.Ed.2d 619 (1992)...................................................................................3

*Scott v. Bierman*,
    No. 10-1483 (4th Cir. May 12, 2011) (unpublished) ......................................3

*Sheehan v. Levine (In Re Geostellar, Inc.)*,
    Bankr. N.D. W.Va. (2019), No. 3:19-ap-00024 ........................................2, 24

*Sun Microsystems, Inc. v. Microsoft Corp.*
*(In Re Microsoft Corp. Antitrust Litig.)*,
    333 F.3d 517 (4th Cir. 2003) ...........................................................................7

*Trustgard Ins. Co. v. Collins*,
    942 F.3d 195 (4th Cir. 2019) .........................................................................12

*Vollette v. Watson*,
    Civil Action No. 2:12cv231, 2012 U.S. Dist. LEXIS 103322
    (E.D. Va. July 24, 2012)...................................................................................7

*West Virginia Mutual Insurance Co. v. Vargas*,
    933 F. Supp. 2d 847 (N.D. W.Va. 2013).................................................24, 26

*Whittaker, LLC v. Nationwide Mut. Ins. Co.*,
    No. CIV. A. 2:07-963, 2008 WL 2063548, at \*3
    (S.D. W.Va. May 13, 2008) ............................................................................21

*Winter v. NRDC, Inc.*,
    555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ....................................8

## **RULES**

Federal Rule of Appellate Procedure 28.1(e)(2) .....................................................28

Federal Rule of Appellate Procedure 32(a)(5) .......................................................28

Federal Rule of Appellate Procedure 32(a)(6) .......................................................28

Federal Rule of Appellate Procedure 32(a)(7)(B) ..................................................28

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) ............................................28

Federal Rule of Civil Procedure 12(b)(6) ................................................................3

## **STATUTES**

11 U.S.C. § 524(a)(2) ............................................................................................14

11 U.S.C. § 524(e) ................................................................................................16

W.Va. Code § 33-11-4a .......................................................................................21

## STATEMENT OF ISSUES UNDER REVIEW

1. Did the Bankruptcy Court err in dismissing the Trustees' Complaint for failing to state a claim?

2. Did the Bankruptcy Court err in finding that under West Virginia Law, the Geostellar bankruptcy Trustee, Martin Sheehan, lacked standing as a third-party insurance claimant to allege bad faith against Philadelphia Indemnity Insurance Company for insisting that its insured consent to settlement of the dispute between the insured and Mr. Sheehan?

3. Did the bankruptcy Trustees, Martin Sheehan and Thomas Fluharty, have standing to bring their Complaint or obtain a preliminary injunction?

4. Did the bankruptcy Trustees, Martin Sheehan and Thomas Fluharty, sustain the burden required for entry of a mandatory preliminary injunction?

## STATEMENT OF THE CASE

The adversary proceeding giving rise to this appeal (the "Trustees' Lawsuit") was filed against co-defendants Philadelphia Indemnity Insurance Company ("PIIC") and David Levine by co-Plaintiffs Martin P. Sheehan, the Chapter 7 Trustee of the Bankruptcy Estate of Geostellar, Inc. (the "Geostellar Trustee") and Thomas Fluharty, the Chapter 7 Trustee of the Bankruptcy Estate of David Levine and Monica Levine (the "Levine Trustee") (collectively, the "Trustees"). The Trustees' Lawsuit had sought a mandatory injunction from the Bankruptcy Court

1

administering the Chapter 7 bankruptcy proceedings of Debtor Geostellar, Inc. ("Geostellar"), such that the Trustees could engineer a collusive settlement of a separate pending adversary proceeding captioned *Sheehan v. Levine*, Bankruptcy Case No. 3:19-ap-00024 (the "Geostellar Lawsuit") filed by the Geostellar Trustee against the former CEO of Geostellar, David Levine ("Levine").  The Trustees did not have standing to obtain the relief they sought in the Trustees' Lawsuit, and their case was dismissed by the Bankruptcy Court.

In most basic terms, the Trustees' Lawsuit seeks a mandatory injunction to enable the Levine Trustee to coopt Levine's rights as an Insured under Private Company Protection Plus Policy No. PHSD1249816 (the "Policy") under which PIIC is providing Levine's defense in the Geostellar Lawsuit. If the Levine Trustee is able to speak for Levine in the Geostellar Lawsuit, the Trustees can settle the Geostellar Lawsuit for the entire Limit of Liability provided under the Policy without Levine's consent, despite: (1) Levine's contention that the Trustees' case is without merit; and (2) the lack of any proceedings in the Geostellar Lawsuit beyond the initial pleadings phase that would provide Levine, and PIIC as Levine's insurer, an opportunity to disprove Levine's liability. The Geostellar Trustee in the Trustees' Lawsuit supports the Levine Trustee's action to exercise Levine's rights under the Policy because that will enable the Trustees to settle the Geostellar Lawsuit in favor of the Geostellar Trustee without first having to prove Levine's liability.

## STANDARD OF REVIEW ON APPEAL

The standard of review of a Rule 12(b)(6) dismissal is *de novo*. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991), cert. denied, __ U.S. ___, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). *Estate Const. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213. In *Scott v. Bierman*, No. 10-1483 (4th Cir. May 12, 2011) (unpublished), the Court of Appeals for the Fourth Circuit, on a direct appeal from the Bankruptcy Court, addressed the standard of review where the Bankruptcy Court had denied a preliminary injunction. The Court described the standard of review for denial of a preliminary injunction as an abuse of discretion standard, in reliance on *W.Va. Ass'n of Club Owners & Fraternal Servs. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). The Court did note, however, that factual conclusions would be reviewed under a clearly erroneous standard and that legal conclusions would be reviewed *de novo*. (4th Cir. 1994).

## SUMMARY OF THE ARGUMENT

PIIC's argument is quite simple.  First, the Trustees have not stated a theory that would create grounds for a declaratory judgment because there is no present claim for indemnity under the Policy.  Any claim for indemnity is purely speculative, and will only be established if a judgment would be entered in the Geostellar litigation against Levine. Any opinion would be purely advisory. Likewise, there are no grounds for entry of a mandatory injunction stripping Levine as an insured of his

right to control his own defense and settlement because there is no present or imminent possibility of irreparable injury. The actual concern of the Trustees is that proceeds of the Policy are controlled by someone other than the Trustees.

Second, the Levine Trustee has no standing in this matter because the Order providing relief from the Automatic Stay limited the Geostellar litigation against Levine to the limits of the Policy. Thus, the Geostellar Litigation can pose no risk to the Levine Bankruptcy Estate because any judgment in the Geostellar Lawsuit, if rendered, would be paid by insurance, and the Geostellar Trustee may not seek any judgment from the Levine Estate.

Finally, the Geostellar Trustee has no standing in the Trustees' Lawsuit because he is acting in his capacity as a Plaintiff for the benefit of Geostellar's creditors, suing Levine in an adversarial matter. As a Plaintiff suing Levine, the Geostellar Trustee is not in the capacity of a "first party" insured under the Policy, which is a third-party liability insurance policy. West Virginia does not allow a "direct action" by a third-party claimant against a liability insurer unless and until there has been a judgment rendered against the insured entitling the third-party claimant to seek indemnity from the insurance company as the result of a judgment against the insured.

**ARGUMENT**

The essence of the Trustees' argument is that the Levine Trustee should be given control of Levine's rights under the PIIC D&O Insurance Policy so that the Trustees can agree amongst themselves to settle the litigation against Levine for the limit of liability provided by the Policy.  However, the circumstance giving rise to the Trustees' stated need for the relief in the Trustees' Lawsuit – the withholding of Levine's consent to a settlement – has since been eliminated.  Several weeks ago, the Parties mediated the dispute with the understanding that Levine had agreed he would consent to a settlement on reasonable terms. The substance of that mediation is confidential, but as the docket publicly reflects, a mediation was conducted, and the case was not settled.  Thus, the entire basis for the filing of the Trustees' Lawsuit as stated in their Complaint and Motion for Preliminary injunction no longer exists. In any event, when the situation *had* been relevant, it was properly addressed by the Bankruptcy Court, which dismissed the Trustees' Lawsuit.

## I. The Bankruptcy Court Properly Found There Was No Imminent Irreparable Harm That Would Justify Imposition of a Mandatory Injunction.

### A. Mandatory Injunctions Are Disfavored

The fact that we are briefing this appeal nearly ten (10) months after the Trustees filed their Complaint and moved for entry of a Preliminary Injunction belies

the Trustees claim that there was any possibility of imminent injury. The parties have continued to litigate and to discuss settlement.

The Trustees in their Complaint and Motion sought entry of a mandatory injunction to change the status quo, rather than to preserve it.   At present, Levine controls his defense in the Geostellar litigation and at present Levine controls the decision to settle that litigation.   The Trustees sought to take that control away from Levine, and give that control to the Trustee in the Levine Bankruptcy.

Typically, the function of a preliminary injunction is to maintain or restore the status quo.   See *Di Biase v. SPX Corp.*, 872 F.3d 224, 231 (4th Cir. 2017); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (explaining that "a preliminary injunction preserves the status quo pending a final trial on the merits[.]").   Accordingly, any preliminary injunction must "be tailored to restrain no more than what is reasonably required to accomplish its ends." *Consolidation Coal Co. v. Disabled Miners of S. W. Va.*, 442 F.2d 1261, 1267 (4th Cir. 1971). Thus, a preliminary injunction usually prevents a change in the status quo instead of changing the status quo to something different.

The Trustees sought a mandatory injunction to change the status quo because they sought to take control of a directors & officers liability insurance Policy issued for the benefit of Levine as an "Individual Insured," and thereby to confer a benefit to the Levine Trustee (which would be improper, as discussed below). Moreover,

6

the Trustees sought to force PIIC to engage in settlement negotiations before its Insured's liability has been determined by a dispositive motion or trial in the Geostellar Lawsuit.

The law strongly disfavors mandatory injunctions.  See, *e.g.*, *Vollette v. Watson*, Civil Action No. 2:12cv231, 2012 U.S. Dist. LEXIS 103322 (E.D. Va. July 24, 2012)  ("… Plaintiffs have the burden to demonstrate that a preliminary injunction should issue in this case.  Furthermore, because Plaintiffs sought a mandatory injunction that would alter the status quo during the pendency of the litigation, the Court's inquiry is even more searching than in a typical case, and entry of the requested mandatory injunction is "disfavored" by governing law."); *Sun Microsystems, Inc. v. Microsoft Corp*. (*In Re Microsoft Corp. Antitrust Litig*.), 333 F.3d 517 (4th Cir. 2003)  ("Our application of this exacting standard of review is even more searching when the preliminary injunctive relief ordered by the district court is mandatory rather than prohibitory in nature.") Thus, the bar for the Trustees to have prevailed on their Motion was quite high, and consequently they failed to meet that requirement. The Bankruptcy Court correctly ruled that the Trustees did not demonstrate any need to change the status quo.

**B.    The Trustees Never Established the Risk of An Imminent Irreparable Injury to Justify a Mandatory Injunction or a Declaration from the Court Concerning Their Rights**

The Trustees alleged nothing in their Complaint that could be deemed an injury at all that would justify the Court entering a declaration. At most the Trustees contended that entry of the requested declaration would change which parties may enter into a settlement in the Geostellar Lawsuit. The Trustees implied that they would then immediately settle the Geostellar Lawsuit should the court enter the declaration which they sought—which of course would be a collusive settlement, which would therefore be subject to further litigation to oppose the completion of the settlement, because it would be the product of collusion. Fundamentally, however, there are no allegations whatsoever that a failure to compel an immediate settlement of the Geostellar Lawsuit  will result in any injury to any party. The Geostellar Lawsuit is ongoing.  There has been no finding of liability against Levine.

The Trustees asserted in their Complaint and Motion that allowing Levine to continue to assert a right to consent to a settlement would change which party will receive money from the Policy—this is merely a money damage issue and not an irreparable harm that is sufficient to require mandatory injunctive relief. The Supreme Court's "frequently reiterated standard requires [a plaintiff] seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. NRDC, Inc*., 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249

(2008) (internal emphasis omitted).  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of an injunction are not enough."  *Roe v. United States DOD*, 947 F.3d 207, 228 (4th Cir. 2020) (quoting *Di Biase v. SPX Corp*., 872 F.3d 224, 230 (4th Cir. 2017)) (internal quotation marks and alteration omitted).

The Trustees never established a risk of irreparable injury for several reasons. First, their only argument was that if the current state of affairs continues, and a settlement of the Geostellar Lawsuit is not negotiated, a portion of the limit of liability provided by the Policy will be paid for the Defense Costs for Levine, which will reduce the limit of liability available to the Geostellar Estate in settlement.  First of all, the Trustees have not provided anything remotely close to a factual or legal record that indicates the applicable Limit of Liability under the Policy is not sufficient to both fund a defense for Levine and to provide payment for damages, if any, that may have been caused by Levine's alleged misconduct. The Bankruptcy Court found this point persuasive.  Second, the party that seeks to take the right of consent from Levine, the Levine Trustee, cannot in any way be impacted by a settlement, or lack of settlement, of Claims against Levine as an Individual Insured under the Policy, which will not create personal liability for Levine, or the personal bankruptcy estate of Levine and his wife. The impact upon the Levine Trustee in allowing him to approve or block a settlement is zero.  Furthermore, in regard to the

Geostellar Estate, it is already the case that some creditors will not be paid the entirety of debts owed, whether the Limit of Liability would be sufficient,[1] after payment of Levine's defense, or not; the monetary risk does not rise to the level of "irreparable harm" to the Geostellar Trustee.

Moreover, the Geostellar Trustee does not have standing to assert control over Levine's rights under the Policy, in any event. The Geostellar Trustee is adverse to Levine as a claimant in the Geostellar Lawsuit, and as such the Geostellar Trustee cannot coopt Levine's rights under the Policy, as an Individual Insured, when the Geostellar Trustee is acting as any non-Insured plaintiff in a lawsuit on behalf of creditors, against Levine.  In *In Re Allied Digital Technologies Corp.*, 306 B.R. 505, 512-513 (Bankr. D. Del. 2004), the court explained the importance of this distinction, finding:

> Here, the Trustee brought the action against the directors and officers. The policy in question provides direct coverage to the directors and officers for claims and defense costs (which are real), and indemnification coverage to the company for amounts paid to the directors and officers (which is hypothetical).  The Trustee has made no credible showing that the direct coverage of Allied Digital under Clause B(i) for securities claims has any continuing vitality.  The Trustee's real concern is that payment of defense costs may affect his rights as a plaintiff seeking to recover from the D&O Policy rather than as a potential defendant seeking to be protected by the D&O Policy.  In this way, Trustee is no different than any third party plaintiff suing defendants covered by a wasting policy.  No one has suggested that

---

[1] That is, assuming that there would be coverage under the Policy for the liability of Levine, which is not conceded by PIIC, which is defending Levine under a reservation of rights.

such a plaintiff would be entitled to an order limiting the covered defendants' rights to reimbursement of their defense costs.

The bottom line is that the Trustees seeks to protect the amount he may receive in his suit against the directors and officers while limiting coverage for the defense costs of the directors and officers. This is not what the directors and officers bargained for. In bringing the action against the directors and officers, the Trustee knew that the proceeds could be depleted by legal fees and he took that chance. The law does not support the Trustee's request to regulate defense costs.

The court's approach in *In Re Allied Digital Technologies Corp*. has been widely adopted by courts in other jurisdictions. See, *e.g*., *In Re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (D. S.C. 2011) (citing *Allied Digital* in rejecting the plaintiff trustee's argument that defendants should not be able to receive their defense costs paid from the policy because by doing so it would reduce the trustee's recovery as a plaintiff); *Miller v. McDonald* (*In Re World Health Alternatives, Inc.*), 369 B.R. 805, 811 (Bankr. D. Del. 2007) (citing *Allied Digital* for the proposition that the Trustee is no different from any other third party when seeking recovery from an Insured that has a wasting policy); and *In Re Licking River Mining, LLC*, 2016 Bankr. LEXIS 2211 (Bank. E.D. KY. Jun. 6, 2016) ("In looking to preserve a funding source to satisfy a judgment, the Trustee is not seeking to preserve estate assets. As such, there is no reason she should be treated differently than any other third-party plaintiff suing the Movants").

Conversely, Levine faces potential damage to his reputation as a former director and officer of Geostellar if he is not permitted access to the settlement and

litigation process for the Claims being asserted against him.  See, *In Re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005) (finding that if the insured individual is unable to obtain defense costs, "the impact of an adverse judgment will have ramifications beyond the money that will necessarily be involved. There is the damage to reputation, the stress of litigation, and the risk of financial ruin – each of which is an intangible but very real burden.").

## C.   The Trustees Failed to Demonstrate the Need for a Declaration Concerning PIIC

The Trustees' Complaint was defective in the same respects as their Preliminary Injunction Motion had been. The Trustees asserted no factual allegations that were sufficient to give them standing to proceed against PIIC.  The Fourth Circuit in *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019), instructs: "But '[s]tanding is a jurisdictional issue we must consider independently.' The 'irreducible constitutional minimum of standing' requires the petitioner to allege a concrete injury that is 'actual or imminent, not conjectural or hypothetical.'" (Citations omitted.)   In the insurance context, the Fourth Circuit has held that declaratory judgments about matters concerning indemnity are outside of the court's jurisdiction because any injury is hypothetical, pending a finding of liability in a trial court.  *Id.*  ("Thus, suits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains undetermined.")  See also *Lear Corp. v. Elec. Ltd.*, 353 F.3d 580, 583-85 (7th Cir.

2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established.") Thus, there is no basis for standing for the Trustees to pursue PIIC in a declaratory judgment action concerning indemnity under the Policy, when there has been no judgment in underlying litigation that would give rise to any indemnity. The Fourth Circuit has found such a declaration would be purely advisory, and therefore, improper.

## II. The Levine Chapter 7 Trustee Has Not Alleged Facts That Would Establish Standing for Himself

The Levine Trustee is seeking to exercise Levine's contractual right of consent to a potential settlement of the Geostellar Lawsuit, even though a settlement or lack of a settlement of Claims against Levine will not impact the Levine Chapter 7 bankruptcy proceeding.   Crucially, the Geostellar Lawsuit is an adversary proceeding in the Geostellar bankruptcy, not the Levine bankruptcy.  Because all claims against Levine for his personal liability have been discharged in his Chapter 7 bankruptcy proceeding, the Geostellar Lawsuit cannot possibly create any liability for the personal bankruptcy estate of Levine and his wife that would fall within the scope of the Levine Trustee's duties, and the Levine Trustee therefore has no standing to coopt Levine's right of consent. The Geostellar bankruptcy litigation poses zero risk to the Levine estate because all dischargeable claims against Levine, including any claims of the Geostellar Estate, have already been discharged.

In regard to the Levine Trustee's standing, it is not only critical to note that the Geostellar Lawsuit is an adversary proceeding as to the *Geostellar* bankruptcy proceeding, but also to bear in mind the purpose for a determination of Levine's liability in the Geostellar Lawsuit.  Plainly the discharge of a Chapter 7 debtor such as Levine does not serve to shield third parties for their obligations that may arise from the activities of Levine.  A contractually responsible liability insurer must still pay defense costs or indemnity on behalf of a discharged debtor that is an insured in the event that the debtor is liable for loss that falls within the discharged debtor's insurance coverage.  See, *e.g.*, *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3rd Cir. 1993).  It is black letter law that the permanent discharge injunction under 11 U.S.C. § 524(a)(2) does not prevent the filing of a lawsuit against the debtor solely to determine liability in order to collect from the debtor's (or another entity's) insurer.  See generally, *e.g.*, *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3rd Cir. 1993); *Green v. Welsh*, 956 F.2d 30 (2nd Cir. 1992); *In Re Shondel*, 950 F.2d 1301 (7th Cir. 1991); *In Re Walker*, 927 F.2d 1138 (10th Cir. 1991).

Thus, the bankruptcy code provides that it is permissible to commence or proceed with prosecution against a debtor, such as Levine, with such litigation taking place outside the debtor's bankruptcy, and with the debtor named as a nominal defendant, if such action is necessary to prove liability as a prerequisite to recovery

against a liability insurer.[2] In such a case it is emphasized, however, that no collection action may be taken against the debtor through the bankruptcy. *Pettibone Corp. v. Hawxhurst*, 163 B.R. 989 (N.D. Ill 1994), aff'd, 40 F.3d 175 (7th Cir. 1994).

Because the Geostellar Lawsuit is being litigated outside of the Levine bankruptcy proceeding and because Levine is involved solely for the purpose of determining his liability, the Levine Trustee has no interest in the litigation or in the Policy. The key point here is that the purpose of the litigation carried on outside the bankruptcy proceeding is to determine what Levine's liability would be on a debt that would be indemnified by another party, notwithstanding Levine's discharge. *In Re Schultz*, 251 B.R. 823, 828 (Bankr. E.D. Tex. 2000) (holding that while the discharge injunction protects a discharged debtor from being adjudged personally liable, it does not "preclude a determination of [a] debtor's liability on the basis of which indemnification would be owed by another party") (quoting *In Re Shondel*, 950 F.2d 1301, 1306 (7th Cir. 1991)); *In Re Gibson*, 172 B.R. 47, 49 (collecting cases) (Bankr. W.D. Ark. 1994).

Consistent with this principle, bankruptcy courts have found that there is no reason to reopen a Chapter 7 bankruptcy to allow a party to proceed against the debtor solely for the purpose of determining indemnity to be paid by a third party.

---

[2] Indeed, many state laws require that the debtor be a named party. See generally, *e.g.*, *In Re Edgeworth,* 993 F.2d 51 (5th Cir. 1993).

Indeed, several courts addressing this issue have determined that it is unnecessary to reopen a bankruptcy case or to enter an order "modifying" the discharge injunction allowing a party to proceed with a lawsuit under § 524(e).  See, *e.g*., *Ruvacalba v. Munoz (In Re Munoz)*, 287 B.R. 546, 550 (B.A.P. 9th Cir. 2002) ("The assumption . . . that a bankruptcy court order is required any time an action is taken nominally against a debtor after discharge is . . . incorrect."); *Patronite v. Beeney (In Re Beeney)*, 142 B.R. 360, 363 (B.A.P. 9th Cir. 1992) (holding that "reopening [a] case is unnecessary because . . . an action naming the debtor solely to establish the debtor's liability in order to collect on an insurance policy is not barred by . . . § 524"); *In Re Christian*, 180 B.R. 548, 550 (Bankr. E.D. Mo. 1995) (denying the creditor's motion to reopen "for the purpose of modifying the injunctive provisions of the Order of Discharge . . . as moot"); *Gibson*, 172 B.R. at 50 (denying creditors' motion to reopen "as it does not present a justiciable issue for the Court").  The Chapter 7 Trustee can have no interest beyond that interest which lies in the bankruptcy proceeding.

Thus, because the Geostellar Lawsuit against Levine is taking place entirely outside of Levine's personal bankruptcy proceeding, and because the Geostellar Trustee sought and was given relief from the automatic stay in the Levine proceeding to seek a recovery limited to the proceeds of the Policy only, and because the sole purpose of the Geostellar Lawsuit is to determine indemnity that would be provided

16

by a third party which is available for that limited purpose only, the Levine Trustee cannot have an interest in the Geostellar Lawsuit or in the Policy as it relates to any liability that is to be determined by the Geostellar Lawsuit.  *In Re David Andrew Levine and Monica Larson Levine, Debtors*, No. 3:19-BK-1048 (Bankr. N.D. W. Va. 2021) (*Motion for Relief from Stay* [Dckt. No. 228]; *Order Granting Motion for Relief from Stay* [Dckt. No. 246]).

The point concerning relief from the automatic stay is most important. The Geostellar Trustee is not permitted by the relief granted to seek anything in the Geostellar suit against Levine that would in any way jeopardize the Levine Bankruptcy estate.  In this case, the Bankruptcy Court found that the Levine Trustee lacked standing precisely because the Geostellar Trustee is proceeding entirely outside the bankruptcy and only to the extent of the Policy's limit of liability. There is no interest of the Levine Estate to be protected by giving the Levine Trustee the control of Levine's defense and the Policy in the Geostellar Lawsuit.  Further, the Policy cannot be used to pay any other claim in the Levine Chapter 7 proceeding.

## III.    The Geostellar Trustee Has Not Alleged Any Facts That Would Give Rise to Standing

The only basis for standing provided by the Geostellar Trustee is that he has filed an adversary proceeding against Levine in connection with the Geostellar bankruptcy.  This is not sufficient to establish that the Geostellar Trustee has standing to assert a right under the Policy. In this case the Geostellar Trustee is

conflating his role as a third-party claimant – by which he is seeking to bring a cause of action on behalf of the Geostellar Estate for the benefit of its creditors – with a role of an Insured under the Policy, for which he asserts the coverage is "first party" insurance.  While Geostellar itself is indeed an "Insured" under the Policy, as the "Private Company," it is not acting as an Insured when it sues its own directors or officers such as Levine.  *In Re Allied Digital Technologies Corp.,* 306 B.R. 505, 512-513 (Bankr. D. Del. 2004), which is discussed above, clearly explains the distinction in roles.  As also discussed above, the court's approach in *In Re Allied Digital Technologies Corp.* has been widely adopted by courts in other jurisdictions. See, *e.g., In Re Beach First Nat'l Bancshares, Inc*., 451 B.R. 406, 411 (D. S.C. 2011) (citing *Allied Digital* in rejecting the plaintiff trustee's argument that defendants should not be able to receive their defense costs paid from the policy because by doing so it would reduce the trustee's recovery as a plaintiff); *In Re Laminate Kingdom LLC*, 2008 Bankr. LEXIS 1594, \*\*10-\*\*11 (Bankr. S.D. Fla. Mar. 13, 2008) (following *Allied Digital* in another matter involving a trustee seeking to prevent the payment of defense costs for an individual insured's defense in a lawsuit filed by the trustee); *Miller v. McDonald (In Re World Health Alternatives, Inc.)*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (citing *Allied Digital* for the proposition that the Trustee is no different from any other third party when seeking recovery from an Insured that has a wasting policy); and *In Re Licking River Mining, LLC*,

2016 Bankr. LEXIS 2211 (Bank. E.D. KY. Jun. 6, 2016) ("In looking to preserve a funding source to satisfy a judgment, the Trustee is not seeking to preserve estate assets.  As such, there is no reason she should be treated differently than any other third-party plaintiff suing the Movants"). In this case, Geostellar is not a first party claimant when it is suing Levine and seeking indemnity from PIIC for any judgment entered against Levine.

Once it is understood that the Geostellar Trustee's role in the Geostellar Lawsuit is that of a third-party claimant, and that the rights he is seeking to assert in the Geostellar Lawsuit are not rights possessed by Geostellar as an "Insured" under the Policy, it then becomes clear that the Geostellar Trustee is improperly seeking to assert a direct action against PIIC, which would be contrary to West Virginia law. West Virginia is not a direct-action state, and a claimant that has brought a lawsuit against an insured under a liability policy under West Virginia law may not bring an action against an insurance company until it obtains a judgment against the insured. The Geostellar Trustee, as a mere claimant against Levine, has no right to bring a direct action against PIIC. He is not yet a judgment creditor and liability of Levine is not established, as is a prerequisite for a claimant – not suing as an Insured – to bring a claim directly against PIIC.

The coverage afforded to Geostellar as an Insured "Private Company" under the Policy is coverage either for its own liability, which it certainly is not seeking to

establish in its own lawsuit, or coverage for Geostellar's indemnification of its directors' or officers' liability, which Geostellar is certainly not providing to Levine for the Geostellar Lawsuit. Geostellar is not making a "first-party" insurance claim; it is asserting liability as a claimant allegedly damaged by Levine's alleged "Wrongful Acts." The Policy affords only third-party liability coverage, and not first-party coverage (such as life or property insurance) for Geostellar.

While the Geostellar Lawsuit may give rise to coverage for Levine, it is not a "Claim" against Geostellar falling within any of the Policy's Insuring Agreements that insure Geostellar, as opposed to Levine. The Policy provides coverage for Claims *against* the Insureds for their "Wrongful Acts." See definition of "Claim" under Part 4, COMMON POLICY DEFINITIONS, Item B. (defining "Claim," in pertinent part, to be "*against* an Insured for a Wrongful Act") (emphasis added) and the Insuring Agreements under Part 1 (insuring "Individual Insureds," such as Levine, for Claims *against* them under Part 1, Section I., INSURING AGREEMENTS, Subsection A., while insuring Geostellar, as the "Private Company," either under Part l, Section I., Subsection B. for its indemnification of an Individual Insured's "Loss" (which Geostellar is *not* providing for Levine) or under Section I., Subsection C., for Claims *against* Geostellar itself for its own conduct (which are not involved in the Geostellar Lawsuit); or under Part 2, which likewise provides coverage for Geostellar solely for Claims *against* it, for its own

conduct (which are not involved in the Geostellar Lawsuit). Dckt. No. 1, Ex. 1, pp. 48, 42, 44-45.

The West Virginia Supreme Court of Appeals held in *Robinson* v. *Cabell Huntington Hosp., Inc.*, 201 W.Va. 455, 460, 498 S.E.2d 27 (1997), that an injured party suing an insured tortfeasor has no standing to bring a direct action against the defendant's insurance company, with two narrow exceptions. *Robinson v. Cabell Huntington Hosp., Inc.*, 201 W.Va. 455, 460, 498 S.E.2d 27 (1997), quoting *Mazon v. Camden Fire Ins. Ass'n*, 182 W.Va. 532, 533, 389 S.E.2d 743 (1990). Those exceptions are: (1) where the insured fails to pay a judgment entered in a personal injury action (*see Broy v. Inland Mut. Ins. Co.*, 160 W.Va. 138, 233 S.E.2d 131 (1977)), and (2) "where the defendant's insurer has denied coverage" (see *Christian v. Sizemore*, 181 W.Va. 628, 383 S.E.2d 810 (1989)). *Robinson*, *supra*, 201 W.Va. at 460.[3] The court in *Robinson* expressly held that such claimants are not "third-party beneficiar[ies]" of the insurance contract. *Id.*

The first exception obviously is not relevant in this case – as there is no unpaid judgment on behalf of Geostellar against Levine. Moreover, there has been no "denial of coverage." In *Christian v. Sizemore*, 181 W.Va. 628 (1989), the court

---

[3]     *Robinson* identified a third exception, involving third party bad faith claims. However, such claims were eliminated with the enactment of W.Va. Code § 33-11-4a in 2005, such that the third exception identified in *Robinson* no longer exists. *Whittaker, LLC v. Nationwide Mut. Ins. Co.*, No. CIV. A. 2:07-963, 2008 WL 2063548, at *3 (S.D. W.Va. May 13, 2008).

held, in Syllabus Point 3, that "[a]n injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage before obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has *denied* coverage." (Emphasis added.) In *Christian*, the plaintiff brought an action for injuries she suffered in an automobile accident. The defendants' insurance carrier denied coverage on the ground that the policy had lapsed before the accident occurred. *Id.* at 629. Under these circumstances, the court found that a declaratory judgment count against the insurance company could properly be joined with the action against the policyholders. The court acknowledged the principle that, in general, an action against a defendant's insurance carrier should not be joined in an action against the insured, so as to avoid the prejudice inherent in the possible mention of insurance coverage at trial. *Id.* at 630. However, because in the case before it the insurance carrier had *denied* any obligation to pay a judgment against the defendant, the court found it appropriate to seek early resolution of the coverage dispute:

> Declaratory judgment . . . provides a prompt means of resolving policy coverage disputes so that the parties may know in advance of the personal injury trial whether coverage exists. This facilitates the possibility of settlements and avoids potential future litigation as to whether the insurer was acting improperly in denying coverage. Moreover, as this case demonstrates, the use of declaratory judgment protects the plaintiff from an insured who has no independent assets and is not concerned about insurance coverage.

*Id.* at 632.

These concerns are not present here.  The *Christian* court noted that where "the coverage question" is separable from the issues in the underlying action, "it should ordinarily be decided first."  *Id.* at 632-633.  This action to coopt Levine's right to consent is not a "coverage question" for the Geostellar Trustee, who is not entitled to coverage under the Policy for liability in the Geostellar Lawsuit as an Insured.  The Geostellar Trustee does not allege that PIIC has denied coverage for the Geostellar Lawsuit for the Insured defendant – Levine. Coverage issues may ultimately exist in regard to the Damages sought in the underlying Geostellar Lawsuit, if liability is determined, but this Adversary Proceeding is not seeking to resolve such a coverage question, which would be premature in the absence of any showing of liability.

A tort claimant such as the Geostellar Trustee does not have a right to file a direct action under West Virginia law in the circumstances for this case.  Post *Christian*, the West Virginia Supreme Court of Appeals in *Anderson v. Robinson*, 186 W. Va. 92, 411 S.E.2d 35 (1991), permitted the plaintiff to proceed in a direct action against the tortfeasor's insurer to satisfy a judgment, which had already been obtained, where the bankruptcy court modified the automatic stay in order for the plaintiff's lawsuit to proceed to the extent of available insurance coverage. The critical factor in *Anderson*, however, was that a judgment had already been obtained by the plaintiff. In rendering its ruling, the Court noted it was only in certain

23

circumstances that an injured plaintiff may proceed against the tortfeasor's insurer. In this case, not only has a judgment not yet been obtained, but the status of the Geostellar Trustee's operative complaint remains the subject of an objection asserted by Levine, such that neither PIIC nor Levine even know at this time what the allegations in the Geostellar Lawsuit are going be.  (*Sheehan v. Levine*, 3:19-ap-00024, Dckt. Nos. 57-66).

The Geostellar Trustee's concern in this case is that because the Policy insuring Levine is an eroding Policy, the provision of a defense for Levine will reduce the Limit of Liability available to satisfy a judgment at some point if a judgment is at some point rendered in favor of the Geostellar Estate in the Geostellar Lawsuit. However, Geostellar is only entitled to the coverage that Geostellar purchased. The Policy that Geostellar purchased from PIIC is written as an eroding policy, by which the payment of Defense Costs for insured directors and officers serves to reduce the Limit of ability. Dckt. No. 1, Ex. 1, p. 54, Part 6, COMMON POLICY CONDITIONS, Section 1, LIMITS OF LIABILITY, Subsection D. Such a policy is less expensive than a non-eroding policy, which would maintain a separate source of funds for defense versus liability. See *West Virginia Mutual Insurance Co. v. Vargas*, 933 F. Supp. 2d 847, 858 (N.D. W.Va. 2013) ("To adopt Vargas's argument and foreclose carriers of tail insurance from including defense costs within the available liability limits upon an insured's default, would, by judicial

dictate, increase the cost of tail insurance in West Virginia and run afoul of the legislature's stated goal of promoting stable and affordable tail insurance premiums. This the Court declines to do. The defense within limits provision in West Virginia Mutual's tail policy therefore does not violate the public policy of West Virginia.").

Because the Policy on its face is an eroding policy that entitles Levine to his Defense Costs without regard to the impact upon the Limit of Liability, the "predicament" giving rise to the Geostellar Trustee's filing of this proceeding does not give rise to a valid cause of action by the Geostellar Trustee. Moreover, even the "predicament" is itself a completely speculative scenario, and not a circumstance validly subject to a declaratory judgment. The Limit of Liability provided by the Policy is a significant amount of funds, either $3 million or $1 million, depending upon the Insuring Agreement that would apply, and although the total amount may be impacted by its use for the defense of Levine, using this Limit of Liability for his defense is not at all likely to eliminate the entire Limit of Liability, which may nevertheless be sufficient to address potentially insured liability (if any). Creditors who ultimately stand to recover in a lawsuit against Levine for alleged conduct as a director or officer of Geostellar may, *if* they establish liability, then be entitled to a recovery for such liability from the balance available under the Policy, if there would be coverage afforded by the Policy for such liability.

Purchasers of an eroding Policy – or their successors such as the Geostellar Trustee – cannot rewrite the insurance contract, either to eliminate the provisions of the Policy that allow directors and officers to obtain their defense, or to give creditors a right to recover any amount of the Limit of Liability without first actually establishing liability of an Insured under the Policy. If Geostellar had wanted to purchase a policy providing for the defense of its directors and officers on top of the Limit of Liability available to satisfy a judgment, Geostellar could have done so, but it would have then needed to pay a higher premium for such a product. See *West Virginia Mutual Insurance Co. v. Vargas*, 933 F. Supp. 2d 847, 858 (N.D. W.Va. 2013); see also, *e.g.*, *Fed. Ins. Co. v. Singing River Health Sys.*, 850 F.3d 187, 202 (5th Cir. 2017) (noting generally an insured's option to purchase coverage providing for defense costs in addition to the limit of liability).

The Geostellar Trustee, and Geostellar's creditors, may not like that Levine has access to the limit of liability for his defense, but that is the contract that was purchased – a contract that incentivizes a claimant to take into consideration that protracted litigation will eliminate the source of funds available to satisfy a judgment.  See *In Re Allied Digital Technologies Corp.,* 306 B.R. 505, 512-513 (Bankr. D. Del. 2004) (noting that risk of reduction of settlement funds is a risk that any plaintiff seeking recovery from an insured with an eroding policy must contend with).

## CONCLUSION

For the reasons argued above, PIIC asks this Court to affirm the Bankruptcy Court's dismissal of the Trustees' Complaint with Prejudice, and to affirm the Bankruptcy Court's denial of the Trustees motion seeking entry of a preliminary injunction.

## REQUEST FOR ORAL ARGUMENT

Oral argument has not yet been scheduled. Defendant/Appellee PIIC respectfully requests oral argument in this matter before the Court.

Respectfully submitted the 21st day of June, 2022.

**Defendant/Appellee,
PHILADELPHIA INDEMNITY
INSURANCE COMPANY,
By Counsel:**

*/s/ Debra Tedeschi Varner*

Debra Tedeschi Varner (WVSB #6501)
Varner & Van Volkenburg PLLC
360 Washington Avenue
Clarksburg, WV 26301
Tel: (304) 918-2840
Fax: (304) 566-1161
Email: dtvarner@vv-wvlaw.com

David Grassmick (*pro hac vice* admission pending)
Cope Ehlers PC
135 S. LaSalle Street, Suite 3050
Chicago, IL 60603
Tel: (312) 549-9384
Fax: (312) 549-9389
Email: dgrassmick@copeehlers.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or Fed. R. App. P. 32(a)(7)(B) because this brief contains <u>6,732</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) (cover page, disclosure statement, table of contents, table of citations, certificate of compliance, and certificate of service).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated the 21st day of June, 2022.

**Defendant/Appellee,
PHILADELPHIA INDEMNITY
INSURANCE COMPANY,
By Counsel:**

*/s/ Debra Tedeschi Varner*

Debra Tedeschi Varner (WVSB #6501)
Varner & Van Volkenburg PLLC
360 Washington Avenue
Clarksburg, WV 26301
Tel: (304) 918-2840
Fax: (304) 566-1161
Email: dtvarner@vv-wvlaw.com

David Grassmick (*pro hac vice* admission pending)
Cope Ehlers PC
135 S. LaSalle Street, Suite 3050
Chicago, IL 60603
Tel: (312) 549-9384
Fax: (312) 549-9389
Email: dgrassmick@copeehlers.com

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 21st day of June, 2022, I caused this ***BRIEF OF APPELLEE, PHILADELPHIA INDEMNITY INSURANCE COMPANY*** to be filed electronically with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Thomas H. Fluharty, Esquire
408 Lee Avenue
Clarksburg, WV 26301
***Counsel for Trustee of the Bankruptcy Estate of David Levine and Monica Levine, Plaintiff/Appellant***

(Via U.S. Mail and E-Mail)
George N. Stewart, Esquire
Zimmer Kunz PLLC
132 South Main Street, Suite 400
Greensburg, PA 15601
***Co-Counsel for Defendant/Appellee, David A. Levine***

(Via U.S. Mail and E-Mail)
Joseph F. Butcher, Esquire
Zimmer Kunz PLLC
310 Grant Street, Suite 3000
Pittsburgh, PA 15219
***Co-Counsel for Defendant/Appellee, David A. Levine***

Martin P. Sheehan, Esquire
Sheehan & Associates PLLC
1 Community Street, Suite 200
Wheeling, WV 26003
***Trustee of the Bankruptcy Estate of Geostellar, Inc., Plaintiff/Appellant***

Patrick S. Cassidy, Esquire
Timothy F. Cogan, Esquire
Cassidy, Cogan, Shapell & Voegelin, L.C.
1413 Eoff Street
Wheeling, WV 26003
***Counsel for Trustee of the Bankruptcy Estate of Geostellar, Inc., Plaintiff/Appellant***

*/s/ Debra Tedeschi Varner*