No: 3:22-CV-00050-GMG

# In The
# United States District Court
### For the Northern District of West Virginia

THOMAS FLUHARTY, Trustee of the Bankruptcy Estate of David and Monica Levine, and MARTIN SHEEHAN, Trustee of the Bankruptcy Estate of Geostellar, Inc.

Plaintiffs - Appellants,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY
and DAVID A. LEVINE

Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

### Reply Brief of the Appellants

Thomas H. Fluharty, Esq.
WV Bar No.: 1231
408 Lee Avenue
Clarksburg, WV 26301
(304) 624-7832
THFAAL@aol.com

*for the Trustee of the Bankruptcy Estate*
*of David Levine and Monica Levine*

[00194190.1]

Martin P. Sheehan, Esq.
WV State Bar No. 4812
SHEEHAN & ASSOCIATES, PLLC
1 Community Street, Ste 200
Wheeling, WV  26003
P:  (304) 232-1064
F:  (304) 232-1066
sheehanparalegal@wvdsl.net

and

Patrick S. Cassidy, Esq.
WV State Bar No. 671
Timothy F. Cogan, Esq.
WV State Bar No. 764
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.
C. The First State Capitol
1413 Eoff Street
Wheeling, WV 26003
P: (304) 232-8100
F: (304) 232-8200
pcassidy@walslaw.com
tfc@walslaw.com

*for the Trustee of the Bankruptcy
Estate of Geostellar, Inc.*

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ............................................................................ ii

**Introduction** ................................................................................................. 1

**Tort Litigation in West Virginia** ................................................................ 1

**Standing of Thomas H. Fluharty, Trustee
of the Bankruptcy Estate of David Levine** ................................................. 5

    Relief from the Automatic Stay ................................................................ 8

    Mootness .................................................................................................. 10

**Standing of Martin P. Sheehan, Trustee
of the Bankruptcy Estate of Geostellar, Inc.** ........................................... 11

**Coverage Under Christian v. Sizemore** ..................................................... 13

**The Promise to Mediate Promptly** ........................................................... 14

**First Party Bad Faith v. Third Party Bad Faith** ....................................... 15

**Injunctive Relief** ........................................................................................ 17

**Conclusion** ................................................................................................. 19

**CERTIFICATE OF COMPLIANCE** ........................................................ 22

**CERTIFICATE OF FILING AND SERVICE** ........................................... 23

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

<u>Allstate Ins. Co. v. Watson,</u> 876 S.W.2d 145 (Tex.1994) ................................. 13

<u>Anderson v. Robinson,</u> 186 W.Va. 92, 411 S.E.2d 35 (1991)................ 3, 7, 8, 9

<u>Beckhart v. Newrez LLC,</u> 31 F.4th 274 (4th Cir. 2022).................................... 19

<u>Bonenberger v. Nationwide Mutual Insurance Co.,</u>
791 A.2d 378 (Pa. Super. Ct. 2002)................................................................. 16

<u>Christian v. Sizemore</u>, 181 W.Va. 628, 383 S.E.2d 810 (1989)................. 12, 13

<u>Consumers Gas Utility Co. v. Wright,</u>
130 W.Va. 508, 44 S.E.2d 584 (1947)............................................................. 14

<u>Dorsey v. Progressive Classic Ins. Co.,</u>
232 W. Va. 595, 753 S.E.2d 93 (2013)............................................................ 15

<u>Elk Refining Co., v. Falling Rock Cannel Coal Co.,</u>
92 W.Va. 479, 115 S.E. 431 (1922)................................................................. 14

<u>Gowdy v. Mitchell (In re Ocean Warrior, Inc.)</u>
835 F.3d 1310 (11th Cir. 2016) ....................................................................... 19

<u>Hayseeds, Inc. v. State Farm Fire & Cas.</u>
177 W.Va. 323 352 S.E.2d 73 (1986)............................................................... 12

<u>Loudin v. Natl. Liab. & Fire Ins. Co.,</u>
228 W.Va. 34, 716 S.E.2d 696 (2017).......................................... 12, 13, 14, 16

<u>Marshall v. Saseen,</u> 192 W.Va. 94, 450 S.E.2d 791(1994) .............................. 13

<u>Real Truth about Obama v. Federal Election Comm'n,</u>
575 F.3d 342 (4th Cir. 2009) vacated __ U.S. __, 130 S.Ct. 2371 (2010)
and on reconsideration, <u>The Real Truth About Obama, Inc. v. Federal Election
Comm'n</u>, 607 F.3d 355 (4th Cir. 2010)............................................................ 18

<u>Shamblin v. Nationwide Mutual Insurance Co.</u>,
183 W.Va. 585, 396 S.E.2d 766 1990) ................................................... 4, 5, 6, 8

<u>Shannon R. Ginn Constr. Co. v. Reliance Ins. Co.</u>,
51 F.Supp.2d 1347 (S.D.Fla.1999) ...................................................... 13

<u>Taddei v. State Farm Indem. Co.</u>,
401 N.J.Super. 449, 951 A.2d 1041, 1047 (App.Div.2008) ............................ 12

<u>Taggart v. Lorenzen,</u> __ U.S. __, 139 S.Ct. 1795 (2019) ................................. 19

<u>Winter v. Natural Resources Defense Council, Inc.</u>,
___ U.S. ___, 129 S.Ct. 365  (2008) ................................................. 18

<u>Wissman v. Pittsburgh National Bank,</u> 942 F.2d 867 (4th Cir. 1991) ................ 9

<h2 style="text-align:center"><u>STATUTES</u></h2>

11 U.S.C. § 362 ................................................................... 8, 19

11 U.S.C. § 541(a) ............................................................... 8

11 U.S.C. § 541(a)(7) ............................................................ 11, 17

11 U.S.C. § 554 .................................................................. 8

<h2 style="text-align:center"><u>RULES</u></h2>

W.Va. C.S.R. § 114-14-2.3 ........................................................ 17

## Introduction

In proceedings before the Bankruptcy Court, a verified complaint was filed by Thomas H. Fluharty, Bankruptcy Trustee of the Bankruptcy Estate of David Levine, and also by Martin P. Sheehan, Bankruptcy Trustee of the Bankruptcy Estate of Geostellar, Inc. A motion for a preliminary injunction was filed shortly thereafter. A hearing was promptly held on the preliminary injunction. That hearing preceded the filing of a responsive pleading. As part of the responsive pleading, Philadelphia Indemnity Insurance Co. (also PIIC here), asked for dismissal of the Complaint on standing grounds.

Sequentially, the Bankruptcy Court denied the preliminary injunction, and then some time later dismissed the complaint for lack of standing. In the main brief filed on this appeal, the Trustees addressed the standing question first. Following that the Appellants addressed the issues relating to the injunction.

Philadelphia Indemnity Insurance Co., has presented the issues in its brief as the issues arose chronologically.  In this reply brief, the Trustees again address standing first, and the injunction issues subsequently.

## Tort Litigation in West Virginia

Sometimes parties in litigation dispute facts. At other times, the contest is over the law. Sometimes both are at issue.

In this appeal from a decision of the Bankruptcy Court, the dispute is primarily about the law. Mostly, the relevant law is the law of West Virginia. But this is an appeal from proceedings in Bankruptcy Court. The law of West Virginia is the primary basis for decision, but some accommodation for the context which bankruptcy proceedings interject is material to the problem.

In ordinary, non-bankruptcy, litigation over tortious behavior in West Virginia, the alleged victim will sue the alleged perpetrator. Liability will be determined and, if appropriate, damages will be assessed. If found liable, the tortfeasor is liable to pay all of the damages.

That's a very simple model. More commonly, because insurance has been widely purchased, potential tortfeasors, including homeowners and vehicle owners, have some form of insurance coverage. Moreover, most the potential damages that can arise in cases, even those involving the simplest of negligence, absent insurance, might easily outstrip an individual's practical ability to pay. Consequently, a great deal of tort litigation, and the resolution of such litigation, focuses on insurance coverage, and the limits of insurance coverage. Not surprisingly, West Virginia law has an extensive body of law regarding insurance in a variety of circumstances that have arisen in this type of context.

Bankruptcy, particularly the bankruptcy of a potential tortfeasor also influences resolution of tort claims. Because the Constitution of the United States

provides for Congress to establish a uniform law on the subject of bankruptcy, United States Constitution, Article I, Section 8, clause 4, most questions of bankruptcy law are resolved in the federal system. The opportunity for West Virginia courts to weigh in on bankruptcy topics is far more limited. However, the effects of bankruptcy on West Virginia law has sometimes been considered.

In the context of torts, insurance, and bankruptcy, one decision stands out. In Anderson v. Robinson, 186 W.Va. 92, 411 S.E.2d 35 (1991) the alleged tortfeasor in an automobile accident case filed for bankruptcy and received a discharge. The discharge ended the personal liability of the tortfeasor to persons injured in the accident. The tortfeasor's automobile insurance carrier claimed that it had no responsibility to pay anything because the personal liability of the alleged tortfeasor had ended. The West Virginia Supreme Court denied that claim. It held, inter alia, that the bankruptcy of the tortfeasor did not create a windfall defense for the insurer. The Court said that suit could proceed against the named defendant (and not in a direct action against the insurance company), with the recognition that any verdict which would be payable would only be payable by the insurer.

That case did not involve a "consent to settle" feature. Neither did it consider who might hold a bad faith insurance claim if the verdict exceeded available coverage after a limits demand was made.

The instant case involves both of those "extra facts." Before turning to those extra facts, and before making a specific response to the arguments of Appellee, a broad review of what happens, or frequently happens, in a tort case, outside of bankruptcy, where there is insurance coverage for an alleged tortfeasor needs to be reviewed.

Generally, suit is filed by an alleged victim against an alleged tortfeasor. The alleged tortfeasor notifies the relevant insurance carrier. The carrier retains counsel to provide a defense, sometimes with a reservation of rights as to whether coverage under the policy exists or does not exist. Discovery proceeds in that case. Often, at some time before trial, a settlement demand is made. Discussions of settlement ensue.

Where damages reasonably could be expected to exceed available policy limits, a Plaintiff will sometimes make a "limits demand." A limits demand is typically a demand wherein a Plaintiff signals it will accept as a full satisfaction of the claim that has been made for payment of all monies available under a policy. The insurer has the discretion to agree or not agree. Often when a limits demand is made, the alleged tortfeasor will advise the insurer to settle within policy limits to protect any other assets of the alleged tortfeasor.

But under Shamblin v. Nationwide Mutual Insurance Co., 183 W.Va. 585, 396 S.E.2d 766 (1990), the West Virginia Supreme Court has said that where an

insurer declines to settle, and a verdict exceeds the policy, then the insurer maybe liable for the difference, and potentially for punitive damages also. The Court reasoned that while the insurer could act as it saw fit with respect to its own economic risk, the insurer simply could not put at risk assets of the insured.

Where an insurer fails to settle and so puts assets of the alleged tortfeasor at risk, the alleged tortfeasor will have what has now become known as a "first party bad faith claim." These concepts are not really at issue in this case, but they provide a backdrop for the complexities created by this factual pattern.

### Standing of Thomas H. Fluharty, Trustee of the Bankruptcy Estate of David Levine

Here, the Bankruptcy Estate of Geostellar, Inc. is pursuing a claim against David Levine, an alleged tortfeasor. Mr. Levine has received a discharge and is no longer personally liable to the Bankruptcy Estate of Geostellar, Inc. Under Shamblin, suit proceeds against the alleged tortfeasor in name (Mr. Levine), and what is at issue are liability and damages to the extent of coverage.

The current dispute arises because the policy was a "consent" policy, and the Insurer asserted that Mr. Levine held the right to consent. In contrast to that view, the Trustee of the Bankruptcy Estate of Geostellar, Inc., the Trustee, Martin P. Sheehan, believed that the right to consent existed in the Bankruptcy Estate of David Levine. Thomas H. Fluharty is the Trustee of that Bankruptcy Estate of Mr. Levine. Mr. Fluharty agreed and both Trustees were plaintiffs in this case.

The insurer raised standing as issue below. The Bankruptcy Court accepted that view. That decision is on appeal here.

In brief summary, because Mr. Levine has a discharge, he has no personal economic risk.[1] While Mr. Fluharty cannot convert the coverage provided by the insurance policy to cash for distribution to creditors of the Levine Bankruptcy Estate, Mr. Fluharty is still interested in the outcome. That concern arises because the Bankruptcy Estate of Geostellar, Inc. has filed a proof of claim against the Levine Estate.  If a verdict is less than the coverage available, then there will be that claim would be subject to objection and would be disallowed.

---

[1] Although aware of the discharge, the Bankruptcy Court reached a contrary conclusion on economic risk. Appellants demonstrated in the main brief  that that was error.

Appellee PIIC has not contested that position on appeal. It contends only that Mr. Levine, personally, has an interest in protecting his reputation. The West Virginia Supreme Court rejected a similar argument in State ex rel. W. Virginia Mut. Ins. Co. v. Salango, 246 W.Va. 9, 866 S.E.2d 74, 80 (2021), rejecting such reputational damage as a non-Shamblin claim, for lack of exposure to personal liability. "Dr. Covelli impliedly asks the Court to, as Mutual describes, adopt "a new species of tort liability never before recognized under the laws of West Virginia—or that of any other jurisdiction" by permitting recovery for fear of personal liability or harm caused by adverse publicity." Id. By filing for bankruptcy relief, Mr. Levine has consented to adjudication of claims against his bankruptcy estate. That process occurs, except where an objection to discharge has been made (and no such objection was timely filed in this case) without any right of a Debtor to be heard. At best, the Debtor becomes a witness regarding the claim. Reputation has nothing to do with claim adjudication. That process is about liability and dollars and cents. It is hard to fathom how this situation, where a defendant is the defendant in name only, the consequences should be different.

But if there is an "excess verdict" verdict, there will be substance to the claim.[2] That risk dissipates.

Because the Bankruptcy Estate of Mr. Levine is subject to such a claim, the economic risk of the failure to settle within policy limits has a contingent impact on Mr. Fluharty and the Bankruptcy Estate for which he is the Trustee. That is why Mr. Fluharty, and only Mr. Fluharty, must hold the consent rights. He has standing to protect the Levine Bankruptcy Estate from the actual, although contingent, economic risk.

The contrary position, one asserted by Philadelphia Indemnity Insurance Co., is that all that is at risk is the policy. It claims its discretion to settle is unfettered by any consequence to any third party. As a consequence, this insurance company is suggesting that any potential first party bad faith claim would simply disappear into the ether with the discharge of Mr. Levine. This is akin to the insurer's claim in Anderson v. Robinson that all liability disappeared on discharge. Again, it's a claim to a windfall defense!

But, there is a real, albeit contingent, interest of the Bankruptcy Estate of David Levine in the settlement. Adjusting West Virginia law because of the impact

---

[2] In the underlying adversary proceeding, Sheehan v. Levine, neither the Bankruptcy Estate of David Levine, nor Mr. Fluharty are represented. An excess verdict will thus not bind that Estate or Mr. Fluharty.

Still the existence of such a verdict would inform Mr. Fluharty about how he might choose to proceed on the proof of claim.

of bankruptcy, as was done in <u>Anderson v. Robinson,</u> is also required in this circumstance. The adjustment required in this instance is to recognize that not only is an insurer prohibited from "betting Mr. Levine's house[3]" under <u>Shamblin</u> but the insurer is also prohibited from "betting the house of Mr. Levine's Bankruptcy Estate." That is a natural consequence of the language of 11 U.S.C. § 541(a), which defines a bankruptcy estate to "consist" of all legal and equitable rights of a debtor.

Relief from the Automatic Stay

Appellee attempts to claim that when the Bankruptcy Court entered an order granting the motion of Mr. Sheehan, as Trustee of the Bankruptcy Estate of Geostellar, Inc., to "lift the stay" imposed by 11 U.S.C. § 362, that order somehow limited the rights of Mr. Fluharty.

The order does not do that. It only allowed the litigation to proceed. As the motion contemplates, it allows recovery to the extent of insurance proceeds. It did not destroy rights held by Mr. Fluharty to limit contingent adverse economic consequence to the Bankruptcy Estate of David Levine.

Mr. Fluharty has not abandoned any rights he may have under the policy under 11 U.S.C. § 554. He did not take any action to surrender anything. All that

---

[3] Phraseology adapted from concurring opinion of then Chief Justice Neely in <u>Shamblin.</u>

occurred was something that happens routinely as lawyers understand how to implement <u>Anderson v. Robinson</u>. There is unquestionably a claim by the Bankruptcy Estate of Geostellar, Inc. against the Bankruptcy Estate of David Levine for any potential "excess" of damages not covered by insurance.

Effectively, one might say that the cause of action held by Geostellar, Inc., has been bifurcated into two claims, a claim which is insured and a claim which is not. The insured component of the claim is in active litigation status. The uninsured claim is dormant, but is susceptible to separate adjudication in the process for filing and objection to claims. <u>See generally</u>, Bankruptcy Rules 3001-3009.

On page 17 of the Brief filed by Appellee, the Appellee says "The Geostellar Trustee is not permitted by the relief granted [in the order lifting the automatic stay] to seek anything <u>in the Geostellar suit against Levine</u> that would in any way jeopardize the Levine Bankruptcy Estate." (Emphasis added.)  That's true as far as it goes. But the Geostellar Trustee can, and has, filed a proof of claim against the Levine Estate. The statement simply fails to appreciate the proper context and relevance of the proof of claim process.

The notion that a cause of action has been somehow bifurcated does some violence to traditional notions that claims may not be bifurcated.  <u>Wissman v. Pittsburgh National Bank,</u> 942 F.2d 867 (4th Cir. 1991) specifically authorized this

process. There the Court of Appeals approved a division of a claim between a Debtor, to the extent the claim was exempt, and the Bankruptcy Estate to the extent such a claim was not exempt. A similar division between insured and covered by insurance, and not insured and subject to a proof of claim process is not significantly different, particularly where a fundamentally different, and inherently inconsistent, process for adjudication exists.

Mootness

This is also why this case is not moot.[4] As the Court has been made aware, at the first mediation session before Magistrate Judge Aloi, negotiations broke down over the issue of who held the right to consent to settle. More recently, Mr. Levine changed his position and consented to settlement. With this change, Mr. Fluharty also consented.

Another mediation was conducted. Those negotiations were unsuccessful. But as long as the underlying tort case has not been resolved, additional negotiations remain likely. It is essential to identify that Mr. Fluharty, and only Mr. Fluharty, as the holder of the power to consent to settle.

Because Mr. Levine might well revert to his previous non-consenting position, this issue is not moot.

---

[4] Appellees have suggested that this matter may have become moot. Page 5. It does so in a single sentence.  To forestall any such concern the Court may have, this matter is briefly addressed.

The parties have also recognized that a first party bad faith case that exists in the Bankruptcy Estate of David Levine should the underlying action not settle is affected by the standing determination made below. Should there be an excess verdict the same considerations of standing will be at issue. That consequence prevents this matter from being moot at this time.

### Standing of Martin P. Sheehan, Trustee of the Bankruptcy Estate of Geostellar, Inc.

Mr. Sheehan has asserted that the promise to "promptly mediate" given by PIIC became property of the Bankruptcy Estate of Geostellar, Inc., under 11 U.S.C. § 541(a)(7).

This is not contested in the brief of Appellee. It does not seem to have been addressed at all. Mr. Sheehan has the right to insist on mediation, and as part of that promise, "good faith" mediation efforts.

Instead, Philadelphia Indemnity Insurance Co., insists that the Bankruptcy Estate of Geostellar, Inc., is pursing claims that are not ripe, and attempting to obtain advantages not available to a "third party." In this regard, the Insurer claims that all Mr. Sheehan possesses is a "third party bad faith" claim, noting that amendments to the West Virginia Code now prohibit such claims.

Geostellar, Inc. clearly articulated in its opening brief the specific source of standing on which Trustee Sheehan relies. Nothing suggested by Appellee

addresses that position as a matter of bankruptcy law. Rather the Insurer asserts that what was filed below is a prohibited third party bad faith case.

In response, Mr. Sheehan asserts:

1) the Complaint filed is sufficiently akin to a coverage question which may be litigated before verdict as set forth in <u>Christian v. Sizemore</u>, 181 W.Va. 628, 383 S.E.2d 810 (1989);

2) the Complaint alleges breach of a promise to mediate and to mediate promptly; and,

3) The crucial factor is that, undisputedly, Trustee Sheehan purchased an extension of the liability policy on behalf of Geostellar. A strong West Virginia presumption operates to hold that the claim by the purchaser of the insurance is a first party claim.

> The observations expressed in *Miller* and *Hayseeds* echo a firm public policy of this State to hold insurers accountable in a court of law when they wrongfully deny coverage **\*41** **\*\*703** to premium-paying insureds…. *See Taddei v. State Farm Indem. Co.,* 401 N.J.Super. 449, 951 A.2d 1041, 1047 (App.Div.2008) (noting that "insureds should have a remedy under first-party policies in which the insurer breaches its duty to its insured by acting in bad faith")….The insurance policy submitted in the record of this case shows only the name of Mr. Thomas Loudin as the party procuring the policy. This is the central and controlling point that the trial court failed to consider when the court decided whether to apply the label third-party or first-party to the Loudins. As pointed out by another court with respect to a third-party claimant:

> A third party claimant has no contract with the insurer ...,
> has not paid any premiums, has no legal relationship to
> the insurer or special relationship of trust with the
> insurer, and in short, has no basis upon which to expect
> or demand the benefit of the extra-contractual obligations
> imposed on insurers ... with regard to their insureds.

*Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 149 (Tex.1994). It is fundamentally unfair to hold that when Mr. Thomas Loudin filed his administrative claim with National, he was not owed a duty of good faith and fair dealing in resolving that claim as a first-party claimant. Such an outcome essentially treats Mr. Thomas Loudin as a nonpremium paying claimant seeking coverage under a third-party's policy, when he, in fact, paid the premiums for the policy in question. Compare *Marshall v. Saseen,* 192 W.Va. 94, 100, 450 S.E.2d 791, 797 (1994) ("First party insurance means that the insurance carrier has directly contracted with the insured to provide coverage and to reimburse the insured for his or her damages up to the policy limits."), with *Shannon R. Ginn Constr. Co. v. Reliance Ins. Co.,* 51 F.Supp.2d 1347, 1351 n. 6 (S.D.Fla.1999) ("A third-party action is a claim by a non-insured against the insurer of another, often a tortfeasor.").

Loudin v. Natl. Liab. & Fire Ins. Co., 228 W.Va. 34, 40–41, 716 S.E.2d 696, 702–03 (2017)

## Coverage Under Christian v. Sizemore

As set forth in the earlier brief, Mr. Sheehan, as Trustee of the Bankruptcy Estate of Geostellar, Inc., and as the victim of a tort, can litigate and seek a declaratory judgment concerning rights under an insurance policy that he purchased. See Christian v. Sizemore, 181 W.Va. 628, 383 S.E.2d 810 (1989). That case considered whether the "scope of coverage" could be litigated. This case controls another incident of the scope of a policy, who holds the right to consent.

### The Promise to Mediate Promptly

The Bankruptcy Estate of Geostellar, Inc. is the beneficiary of a promise to "mediate promptly." The promise to do so includes an obligation to do so in good faith.

More of the Appellee argument concerns its efforts to recast the complaint as a third party bad faith claim. That is a "red herring." This is not such claim.  See *supra*, *citing* Loudin Such a promise given is enforceable.

To repeat, the Bankruptcy Estate of Geostellar, Inc., is the beneficiary of a promise to "mediate promptly." The promise to do so also includes an obligation to do so promptly. Clearly, the reason for seeking and obtaining such a promise is to counter the potential erosion of the policy by increased defense costs.

Enforcement of such a promise is a proper subject of injunctive relief. Elk Refining Co., v. Falling Rock Cannel Coal Co., 92 W.Va. 479, 115 S.E. 431 (1922) and Consumers Gas Utility Co. v. Wright, 130 W.Va. 508, 44 S.E.2d 584 (1947).

Philadelphia Indemnity Insurance Co. ignores that promise by arguing that a policy will not be fully eroded by defense costs. It contends that such a circumstance is not actionable under the contract of insurance. But breach of a

separate contract, a promise to mediate promptly, is a proper subject of injunctive relief.

### First Party Bad Faith v. Third Party Bad Faith

That does not mean that failure to reasonably settle, when given the opportunity to do so within policy limits, with monies then available (that is prior to erosion)[5], is without risk to PIIC, under other applicable principles of West Virginia law. Litigating when liability becomes clear, and damages are clear and in doing so limiting a recovery, may be problematic. This potential issue has become enmeshed with the standing issue now before the Court. The standing of Mr. Sheehan has not become a moot issue either.

Characterizing Mr. Sheehan and the Bankruptcy Estate of Geostellar, Inc., as the potential holder of a "third party bad faith" claim, is, as we have shown *supra,* erroneous

Claims by persons other than the named insured have been described as first party claims. Trustee Sheehan asserts that as the owner, he too would have a first party claim and subsequent "bad faith" claim. For example, in <u>Dorsey v. Progressive Classic Ins. Co.</u>, 232 W. Va. 595, 753 S.E.2d 93 (2013) the Court considered a

---

[5] Erosion may work to reduce monies that can be recovered under a policy. However, should Philadelphia Indemnity Insurance Co., cause such erosion by needlessly contesting what is its only in its own economic interest to the detriment of a legitimate claim holder, the erosion that would occur may legitimately be

claim made by a guest passenger in a vehicle which was rear ended. The guest passenger was characterized as the holder of a first party claim. As a first party claim holder, the guest passenger could pursue a first party bad faith claim at common law and pursuant to statutory rights where the insurance company refused to reduce its subrogation lien by the amount of attorney's fees incurred by the guest passenger to obtain a recovery.

Perhaps more importantly in <u>Loudin v. National Liability & Fire Insurance Co.</u>, *supra,* the owner of a vehicle was run over by a person who had been given permission to drive the vehicle. The owner was the injured victim. Again, as the victim of alleged tortfeasor misconduct, the owner would ordinarily be a rather typical third party claimant. Yet, this claim was characterized as a first party claim. Syllabus point 2 provides: "A first party bad faith action is one where the insured sues his/her own insurer for failing to use good faith in settling a claim filed by the insured." <u>See also,</u> Syllabus Point 3.[6] This result followed the decision in <u>Bonenberger v. Nationwide Mutual Insurance Co.</u>, 791 A.2d 378 (Pa. Super. Ct.

---

disregarded, or recovered as part of a bad faith claim by any party with standing to assert that bad faith claim, including an unfair settlement practice.

> [6]That Syllabus point provides:
>> When a named policyholder files a claim with his/her insurer, alleging that a nonnamed insured under the same policy caused him/her injury, the policyholder is a first-party claimant in any subsequent bad faith action against the insurer arising from the handling of the policyholder's claim.

2002)(holding that where a claim has characteristics of being both a first party claim, and a third party claim, the proper analysis is to consider the matter a first party claim).

Because the Bankruptcy Estate of Geostellar, Inc., owns the policy, the claim filed against David Levine by Geostellar, Inc., is a claim made by a policy holder against its own insurer under that policy. It is within the rubric of this syllabus point. West Virginia Regulations concerning claims for bad faith define a first party claim as follows:

> A first party claimant has been defined by West Virginia law as "an individual, corporation, association, partnership or other legal entity asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract."

(W.Va. C.S.R. § 114-14-2.3). The Bankruptcy Estate of Geostellar, Inc., meets that definition in this situation.

## Injunctive Relief

PIIC complains that the Trustees sought a "mandatory injunction," that is an injunction that would change the status quo. That claim mischaracterizes what was the status quo. It is another "red herring" claim.

As set forth extensively in the main brief, what is property of any Bankruptcy Estate is all the legal and equitable pre-petition property of a given Debtor and any property subsequently obtained by a Bankruptcy Estate. 11 U.S.C.

§ 541(a)(1) and (7). Mr. Fluharty claimed the "consent to settle" in the contract of insurance was such an attribute held by Mr. Levine when he filed for bankruptcy relief with the claim of Mr. Sheehan pending against him. Certainly when Mr. Levine received a discharge that conclusion should have been obvious.

The status quo was that the Bankruptcy Estate of David Levine possessed the sole power to consent to settle. Vindicating that right was an effort not to change, but to restore, the status quo.

Likewise, Mr. Sheehan had the right to seek an injunction to require what he had bargained for and obtained, "prompt mediation." By claiming that Mr. Levine controlled the "consent to settle," and not Mr. Fluharty, Mr. Sheehan also sought to restore the proper status quo.

Similarly, the main brief of the Trustees addresses the standards for issuance of an injunction. Among those standards are:

(a) the likelihood of success on the merits by the Plaintiff;
(b) likelihood of irreparable harm to the Plaintiff;
(c) that the balance of equities tips in favor of the Plaintiff; and,
(d) that an injunction is in the public interest.[7]

---

[7]Winter v. Natural Resources Defense Council, Inc., ___ U.S. ___, 129 S.Ct. 365, 374-76, 172 L.Ed.2d 249 (2008) and by the Court of Appeals for the Fourth Circuit in Real Truth about Obama v. Federal Election Comm'n, 575 F.3d 342 (4th Cir. 2009) vacated __ U.S. __, 130 S.Ct. 2371 (2010) and on reconsideration, The Real Truth About Obama, Inc. v. Federal Election Comm'n, 607 F.3d 355 (4th Cir. 2010).

Likelihood of success on the merits has been thoroughly reviewed as part of the analysis of standing, above, and in the main brief.

Philadelphia Indemnity Insurance Co., complains in its brief to this Court that there has been no showing of irreparable harm. Interfering with property of the bankruptcy estate is harm.[8] The interference has made litigation to vindicate that position necessary.

The equities have always favored the Trustees. Following the law is always in the public interest.

## Conclusion

The Bankruptcy Court erroneously concluded that Mr. Levine somehow remained at economic risk after he had been discharged. The Trustees have demonstrated that position was wrong in their main brief. PIIC has made no effort to defend that conclusion in its brief.  That finding must be reversed.

This erroneous finding colored the remaining analysis by the Bankruptcy Court. Both Mr. Fluharty and Mr. Sheehan, and the Bankruptcy Estates for which

---

[8] In 11 U.S.C. § 362(a)(3), the Bankruptcy Code creates an "automatic stay" that protects, inter alia, property of a Bankruptcy Estate from "any act to obtain possession of the estate or to exercise control over property of the estate." Interference is subject to sanction through contempt  of Court proceedings. See generally, Taggart v. Lorenzen, __ U.S. __, 139 S.Ct. 1795 (2019);  Beckhart v. Newrez LLC, 31 F.4th 274 (4th Cir. 2022) and Gowdy v. Mitchell (In re Ocean Warrior, Inc.), 835 F.3d 1310 (11th Cir. 2016). The existence of such a remedy is a recognition of the importance of adhering to the status quo created by the Bankruptcy Code and a Bankruptcy Court. It is the sine quo non of irreparable

each serves as a Trustee, had and have standing to pursue the instant complaint. The right to consent under the policy is property of the Bankruptcy Estate of David Levine.

There was a contractual promise to engage in prompt mediation that became property of the Bankruptcy Estate of David Levine.

The case should not have been dismissed. A preliminary injunction should have issued.

The Trustees ask that the decisions of the Bankruptcy Court be reversed and this matter remanded for entry of the requested preliminary injunction and for such other relief as is appropriate.

Respectfully submitted,

/s/ Timothy F. Cogan
Patrick S. Cassidy, Esq.
WV State Bar No. 671
Timothy F. Cogan, Esq.
WV State Bar No. 764
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.C.
The First State Capitol
1413 Eoff Street
Wheeling, WV 26003
P: (304) 232-8100
F: (304) 232-8200
pcassidy@walslaw.com
tfc@walslaw.com

harm.

and

Martin P. Sheehan, Esq.
WV State Bar No. 4812
SHEEHAN & ASSOCIATES, PLLC
1 Community Street, Ste 200
Wheeling, WV  26003
P:  (304) 232-1064
F:  (304) 232-1066
sheehanparalegal@wvdsl.net

*for the Trustee of the Bankruptcy Estate of Geostellar, Inc.*

Thomas H. Fluharty, Esq.
WV Bar No.: 1231
408 Lee Avenue
Clarksburg, WV 26301
(304) 624-7832
THFAAL@aol.com

*for the Trustee of the Bankruptcy Estate of David Levine and Monica Levine*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(C) or Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 4,944 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) (cover page, disclosure statement, table of contents, table of citations, certificate of compliance, and certificate of service).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: July 5, 2022

By: /s/ Timothy F. Cogan
Patrick S. Cassidy, Esq.
WV State Bar No. 671
Timothy F. Cogan, Esq.
WV State Bar No. 764
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.C.
The First State Capitol
1413 Eoff Street
Wheeling, WV 26003
P: (304) 232-8100
F: (304) 232-8200
pcassidy@walslaw.com
tfc@walslaw.com

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 5th day of July, 2022, I caused this **Reply Brief of the**

**Appellants** to be filed electronically with the Clerk of Court using the CM/ECF

System, which will send notice of such filing to all counsel of record.

By: <u>/s/ Timothy F. Cogan</u>
Patrick S. Cassidy, Esq.
WV State Bar No. 671
Timothy F. Cogan, Esq.
WV State Bar No. 764
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.C.
The First State Capitol
1413 Eoff Street
Wheeling, WV 26003
P: (304) 232-8100
F: (304) 232-8200
pcassidy@walslaw.com
tfc@walslaw.com